1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PORTNOY LAW FIRM
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Counsel for Co-Lead Plaintiff Movants
Strategic Capital Investments, LLC
and McCadden Investments, LLC and
Proposed Liaison Counsel for the
Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>Defendants. | Case No.: 3:23-cv-02940-AMO<br><br>NOTICE OF MOTION AND MOTION OF STRATEGIC CAPITAL INVESTMENTS, LLC AND MCCADDEN INVESTMENTS, LLC FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT<br><br><u>CLASS ACTION</u><br><br>Date:  October 12, 2023<br>Time:  2:00 p.m.<br>Judge:  Hon. Araceli Martinez-Olguin<br>Courtroom:  10 – 19th Floor |

1
2

| ROY H. ALCORN, individually on behalf of all others similarly situated, | Case No.: 3:23-cv-03013-JSC |
|---|---|
| Plaintiff, | CLASS ACTION |
| v. | |
| JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP, | |
| Defendants. | |

3

4

5
6
7

8
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION...................................................................................................1

SUMMARY OF ARGUMENT .......................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................3

I.      PRELIMINARY STATEMENT ........................................................................3

II.     STATEMENT OF FACTS ................................................................................5

III.    ARGUMENT ....................................................................................................9

        A.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ..........................9

        B.      THE STRATEGIC CAPITAL AND MCCADDEN SHOULD BE APPOINTED
                LEAD PLAINTIFF ................................................................................10

                1.      The Strategic Capital and McCadden Is Willing to Serve as Class
                        Representative .........................................................................11

                2.      The Strategic Capital and McCadden Is the Most Adequate Plaintiff
                        Within the Meaning of the PSLRA .........................................12

                        a.      The Strategic Capital and McCadden Has the Largest Financial
                                Interest in the Related Actions ...................................12

                        b.      The Strategic Capital and McCadden Otherwise Satisfies the
                                Requirements of Rule 23 ...........................................13

        C.      LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
                APPROVED ..........................................................................................17

IV.     CONCLUSION...............................................................................................18

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK,
   2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ........................................................................ 2, 12

6

7
*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................................... 14

8
*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ........................................................................... 14

9

10
*In re Solar City Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
   2017 WL 363274 (N.D. Cal. Jan. 25, 2017) .................................................................... 14

11

12
*Knox v. Yingli Green Energy Holding Co.*,
   136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................................... 2, 12

13
*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
   1997 WL 461036 (N.D. Ill. Aug. 6, 1997) ................................................................... 2, 12

14

15
*Mulligan v. Impax Lab'ys, Inc.*, No. C-13-1037 EMC,
   2013 WL 3354420 (N.D. Cal. July 2, 2013) .................................................................. 2, 9

16

17
*Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB,
   2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .................................................................. 2, 12

18

19
*Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX),
   2001 WL 861694 (C.D. Cal. Apr. 26, 2001) ..................................................................... 17

20

21
*Richardson v. TVIA, Inc.*, No. C 06 06304 RMW,
   2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ............................................................ 2, 9, 14

22
*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................... 15

23

24
*Tai Jan Bao v. SolarCity Corp.*, No. 14-CV-01435-BLF,
   2014 WL 3945879 (N.D. Cal. Aug. 11, 2014) .................................................................. 14

25
*Woburn Ret. Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW,
   2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012) ................................................ 2, 9

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

15 U.S.C. § 77z-1 .................................................................................................................. 2

15 U.S.C. § 78u-4 .......................................................................................................... 4, 17

15 U.S.C. § 78j .................................................................................................................... 3

15 U.S.C. § 78t .................................................................................................................... 3

Private Securities Litigation Reform Act of 1995 ............................................................. 1

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 3

Fed. R. Civ. P. 42 ................................................................................................... 1, 3, 9, 10

**NOTICE OF MOTION**

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on October 12, 2023, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Araceli Martinez-Olguin in Courtroom 10, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, Strategic Capital Investments, LLC and McCadden Investments, LLC (together, "Strategic Capital and McCadden") will and hereby do respectfully move this Court, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42"), and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Strategic Capital and McCadden as Co-Lead Plaintiffs on behalf of a class consisting of all persons and entities, other than the above-captioned defendants ("Defendants") and their affiliates, who purchased First Republic Bank ("First Republic" or the "Company") securities between January 14, 2021 and May 1, 2023, inclusive (the "Class Period"), and who were damaged thereby (the "Class"); and (3) approving Strategic Capital and McCadden's selection of Bronstein, Gewirtz & Grossman, LLC ("Bronstein") as Lead Counsel for the Class, and the Portnoy Law Firm ("Portnoy Law") as Liaison Counsel for the Class.[1]

**SUMMARY OF ARGUMENT**

To the extent that this motion seeks consolidation, it is made on the grounds that the Related Actions are putative class actions alleging violations of the federal securities laws by the

---

[1] The complaint in the first-filed of the Related Actions, styled *Kusen v. Herbert, II et al*, No. 3:23-cv-02940 (the "*Kusen* Action"), filed in this Court on June 14, 2023, alleges a class period extending from January 14, 2021 through April 27, 2023, inclusive. *See Kusen* Action, Dkt. No. 1 ¶ 1.  On June 20, 2023, the second-filed of the Related Actions, styled *Alcorn v. First Republic Bank et al*, No. 3:23-cv-03013 (the "*Alcorn* Action") was filed in this Court, alleging substantially the same wrongdoing against overlapping defendants, and alleging a larger class period extending from January 14, 2021 through May 1, 2023, inclusive.  *See Alcorn* Action, Dkt. No. 1 ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Alcorn* Action.

same defendants and arising from the same alleged fraudulent misconduct.  As such, the Related

Actions involve common questions of both law and fact, and their consolidation pursuant to Rule

42(a) is appropriate and warranted.  Fed. R. Civ. P. 42(a); *see also Richardson v. TVIA, Inc.*, No.

C 06 06304 RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007); *Mulligan v. Impax Lab'ys,

Inc.*, No. C-13-1037 EMC, 2013 WL 3354420, at *2-*3 (N.D. Cal. July 2, 2013); *Woburn Ret.

Sys. v. Omnivision Techs., Inc.*, No. 5:11-CV-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at *9

(N.D. Cal. Feb. 21, 2012).

To the extent that this motion seeks appointment of Strategic Capital and McCadden as

Co-Lead Plaintiffs, this motion is made on the grounds that Strategic Capital and McCadden are

the "most adequate plaintiff[s]" to lead the Class within the meaning of the PSLRA and that the

PSLRA therefore mandates Strategic Capital and McCadden's appointment as Co-Lead Plaintiffs.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Strategic Capital and McCadden believe that they are entitled

to a rebuttable presumption favoring their appointment, since they have the "largest financial

interest" in the relief sought by the Class in the Related Actions by virtue of, *inter alia*, their losses

of approximately $2,605,845, which were suffered as a result of Defendants' wrongful conduct

as alleged in the Related Actions.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Lax v. First

Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997)

(determining financial interest by (1) the number of shares purchased during the class period; (2)

the number of net shares purchased during the class period; (3) the total net funds expended during

the class period; and (4) the approximate losses suffered); *Nicolow v. Hewlett Packard Co.*, No.

12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) ("District courts commonly

refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares

purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret.

Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan.

9, 2012) (same); *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D.

Cal. 2015) (same).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss

in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Nicolow*, 2013 WL 792642, at *4; *Knox*, 135 F. Supp. 3d. at 1163.  As the movants, to their knowledge, with the largest financial interest in the Related Actions, Strategic Capital and McCadden believe they are presumptively the most adequate lead plaintiffs within the meaning of the PSLRA.

Strategic Capital and McCadden also satisfy the requirements of Federal Rule of Civil Procedure 23 ("Rule 23") because their claims are typical of the claims of other putative Class members and because they will fairly and adequately represent their interests.

In addition, the PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court.  Strategic Capital and McCadden's choice of counsel, Bronstein, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously under Strategic Capital and McCadden's direction.

This motion is supported by the memorandum of points and authorities submitted herewith, the Declaration of Lesley F. Portnoy ("Portnoy Decl."), and all exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

Presently pending in this District are two actions (the Related Actions) alleging violations of Section 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder by the United States ("U.S.") Securities and Exchange Commission ("SEC") (17 C.F.R. § 240.10b-5), on behalf of a class consisting of all persons and entities, other than the Defendants and their affiliates, who purchased First Republic securities during the Class Period, against Defendants.  Strategic Capital and McCadden hereby move for these two actions to be consolidated pursuant to Rule 42(a) because they involve common questions of law and fact and because consolidation here would promote judicial economy.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that is shown to be the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA creates a rebuttable presumption that the "most adequate plaintiff" is the one that possess the "largest financial interest" in the outcome of the litigation and that satisfies the requirements of Rule 23. *Id.* Strategic Capital and McCadden believe that they should benefit from a rebuttable presumption arising from their having the largest financial interest in this litigation. Strategic Capital and McCadden purchased 508,200 shares of First Republic and 13,577 First Republic options contracts stock during the Class Period, expended $3,873,894 on their purchases, retained 411,800 shares of their First Republic stock, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $2,605,845 in connection with their purchases of First Republic stock. *See* Portnoy Decl., Ex. A.

Beyond their significant financial interest, Strategic Capital and McCadden also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their responsibilities as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Strategic Capital and McCadden have selected Bronstein as Lead Counsel for the Class. Bronstein has served as co-lead or executive positions in: *Lerman v. Apple, Inc.*, No. 15-CV07381 (E.D.N.Y.) (co-lead counsel; $20 million settlement of class action by New York and New Jersey iPhone 4S owners); *In re Flint, Mich. Water Crisis Litigation*, No. 16-CV-10444 (E.D. Mich.) (Plaintiff Exec. Comm. Member; global settlement with State of Michigan for approx. $600 million); *In re Spectrum Pharm., Inc. Sec. Litigation*, No. 16-CV-02279 (D. Nev.) (colead counsel; case settled for approx. $3 million); *M&M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc.*, No. 17-cv-1479-PA (C.D. Cal.) (co-lead counsel in securities class action); *Duncan et. al v. Joy Global Inc.*, No. 2:16-cv-1229-pp (E.D. Wis.) (co-lead counsel in securities class action; $20 million settlement for the class); *In re CBD Energy Limited*

*Securities Litigation*, No. 4:15-cv-01668 (S.D. Tex.) (co-lead counsel in securities class action). *See* Portnoy Decl., Ex. E.

Based on their being the "most adequate plaintiff," their significant financial interest, their satisfaction of Rule 23 requirements, and their commitment to overseeing the Related Actions, Strategic Capital and McCadden respectfully request that the Court enter an order appointing them as Co-Lead Plaintiffs for the Class and approving Bronstein as Lead Counsel for the Class.

## II.   STATEMENT OF FACTS

As alleged in the Complaints of the Related Actions, First Republic was a California state-chartered bank and trust company that provided private banking, private business banking, and private wealth management.  Specifically, First Republic provided its clients with a wide range of financial products, including residential, commercial, and personal loans, deposit services, and private wealth management, including investment, brokerage, insurance, trust, and foreign exchange services.  First Republic targeted high-net worth households and businesses, with a particular focus on sustained client relationships and single-family mortgage lending.  During the Class Period, First Republic's common stock traded on the New York Stock Exchange ("NYSE") under the ticker symbol "FRC," and First Republic's preferred stock traded on the NYSE under the ticker symbols "FRC-PrH," "FRC-PrI," "FRC-PrJ," "FRC-PrK," "FRC-PrL," "FRC-PrM," and "FRC-PrN."

Throughout the Class Period, Defendants emphasized the Company's "safe and sound" business model, assuring investors that First Republic was strongly-positioned— particularly due to its purportedly "diversified deposit base"—to weather a variety of economic conditions, and downplayed the risks that rising interest rates posed to the Company's net interest income ("NII") and net interest margin ("NIM")—critical financial metrics that calculated the income generated on the Company's interest-earning assets—and the value of the Company's mortgage loan portfolio.

In Federal Deposit Insurance Corporation ("FDIC") filings and multiple public statements throughout the Class Period, Defendants misrepresented the strength of the Company's balance sheet, liquidity, and position in the market.  Among other things, Defendants understated and concealed the magnitude of the risks facing the Company's business model that would result from any decision by the Federal Reserve System (the "Fed") raising the federal funds rate, thereby undermining the value of the Company's loan and securities portfolios and liquidity.

On October 14, 2022, Plaintiff and other members of the Class began to learn the truth about the risks the Company faced from the Fed increasing the federal funds rate when the Company announced disappointing third quarter 2022 financial results, reporting that First Republic's NII growth had slowed to 20.6% year-over-year (down from 24.1% year-over-year growth the prior quarter) and its NIM had plummeted to 2.71% (down from 2.80% the prior quarter).  Defendants attributed the decrease in the Company's NIM to "average funding costs increasing more rapidly than the offsetting increase in the average yields on interest-earning assets."

On this news, the price of First Republic common stock declined by $22.14 per share, or more than 16%, from a closing price of $134.73 per share on October 13, 2022, to a closing price of $112.59 per share on October 14, 2022.

Notwithstanding assurances from Defendants about the Company's operating strength and ability to withstand a rising interest rate environment, additional corrective disclosures surfaced on March 8, 2023, when SVB Financial Group ("SVB"), the parent company of Silicon Valley Bank (considered by many analysts to be a peer bank of First Republic) announced that it was seeking to raise approximately $2.25 billion in capital due to continued higher interest rates, pressured public and private markets, and elevated levels of deposit attrition.  SVB also disclosed that it had sold "substantially all of its available for sale securities portfolio," incurring a loss of approximately $1.8 billion on the sale.  In response, SVB's depositors rushed to withdraw their funds out of fear over SVB's solvency.  On March 10, 2023, SVB collapsed, and regulators seized

control of the bank, placing SVB in FDIC receivership.  Investors immediately began to question First Republic's ability to withstand the interest rate environment and remain solvent.

On this news, the price of First Republic common stock declined by $83.79 per share, or more than 72% over three trading sessions, from a closing price of $115.00 per share on March 8, 2023, to a closing price of $31.21 per share on March 13, 2023.

Despite statements from Defendants confirming the stability of the Company's business model, investors learned more about First Republic's vulnerability on March 15, 2023, when S&P Global Ratings ("S&P") downgraded its long-term issuer credit rating and preferred stock issue rating for First Republic due to the risks of deposit outflows leading to increased funding costs. That same day, Fitch Ratings announced that it had also downgraded First Republic's credit rating, observing that "FRC's funding and liquidity profile has changed and represents a 'weakest link.'"

On the news of the downgrades, the price of First Republic common stock declined by $8.47 per share, or more than 21%, from a closing price of $39.63 per share on March 14, 2023, to a closing price of $31.16 per share on March 15, 2023.

On March 16, 2023, Defendants disclosed that First Republic would be receiving $30 billion in uninsured deposits from 11 of the country's largest banks over the next 120 days, which the Company characterized as "a vote of confidence for First Republic and the entire U.S. banking system."  However, due to other information the Company concurrently disclosed concerning its liquidity, the $30 billion capital injection failed to quell investor concern.  Specifically, First Republic announced that it was suspending its dividend payments, that between March 10 and March 15, 2023 the Company had accessed Federal Reserve borrowings of between $20 billion and $109 billion, borrowings from the Federal Home Loan Bank (FHLB) increased by $10 billion, and that its cash position had dwindled to about $34 billion in cash through March 15, 2023 not counting the new deposits.

Securities analysts and credit rating agencies responded negatively to these disclosures. For example, in a March 17, 2023 report analysts at KBW stated, "The significance of the changes in FRC's balance sheet in just one week are staggering, in our view, and along with the suspension of the common stock dividend, paints a very dire outlook for the company and shareholders, in our view."  Likewise, Wedbush analysts downgraded First Republic's stock to "neutral" from "outperform" based on the anticipation of higher interest rate costs from borrowing to shore up its liquidity position.  Further, in a March 19, 2023 note to investors S&P further reduced its credit rating for First Republic to B+ from BB+, noting First Republic's rating remains on "CreditWatch Negative." S&P stated, "The deposit infusion from 11 U.S. banks, the company's disclosure that borrowings from the Fed range from $20 billion to $109 billion and borrowings from the Federal Home Loan Bank (FHLB) increased by $10 billion, and the suspension of its common stock dividend collectively lead us to the view that the bank was likely under high liquidity stress with substantial deposit outflows over the past week."

On this news, the price of First Republic common stock declined by $22.09 per share, or more than 64%, from a closing price of $34.27 per share on March 16, 2023, to a closing price of $12.18 per share on March 20, 2023.

On April 24, 2023, after the close of market, First Republic released its much anticipated first quarter 2023 financial results.  The Company stunned Wall Street when it disclosed that its total deposits had declined 41% in the first quarter, to $104.5 billion, even after a consortium of banks stepped in with $30 billion to prevent the regional lender from failing.  Without that cash infusion, deposits would have fallen by over 50%.  On an earnings call, Defendant Chief Financial Officer Neal Holland called those deposit outflows "unprecedented."

On this news, the price of First Republic common stock declined by $10.31 per share, or more than 64%, from a closing price of $16.00 per share on April 24, 2023, to a closing price of $5.69 per share on April 26, 2023.

On April 28, 2023, various media outlets reported that the FDIC was in talks with several banks for bids on First Republic in the event it goes into receivership.  This news caused the price of First Republic common stock to decline $2.68 per share, or more than 43%, from a closing price of $6.19 per share on April 27, 2023, to a closing price of $3.51 per share on April 28, 2023.

On May 1, 2023, after being seized by the FDIC, First Republic was taken over by JPMorgan Chase.

Then, on May 2, 2023, during pre-market hours, the NYSE announced that it was immediately suspending trading in First Republic shares and commencing proceedings to delist those shares.

On this news, the price of First Republic's common stock declined by $3.18 per share, or 90.6%, from a closing price of $3.51 per share on March 1, 2023 and March 2, 2023 (when trading was suspended pre-market), to a closing price of $0.33 per share on May 3, 2023, when trading of First Republic shares resumed on the over-the-counter market after being delisted from the NYSE.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs in the Related Actions and other Class Members have suffered significant losses and damages.

## III.  ARGUMENT

### A.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.  Fed. R. Civ. P. 42(a); *see also Richardson*, 2007 WL 1129344, at *2; *Mulligan*, 2013 WL 3354420, at *2-*3; *Woburn*, 2012 U.S. Dist. LEXIS 21590, at *9.

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this title is filed." 15 U.S.C. 78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Rule 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the SEC, by the Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Rule 42(a) for all purposes.

## B. STRATEGIC CAPITAL AND MCCADDEN SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of notice of the action, which in this case was published on April 24, 2023 when the action styled *City of Hollywood Police Officers Retirement System v. First Republic Bank et al*, No. 4:23-cv-01993 (the "*City of Hollywood* Action") was filed in this Court (*see* Portnoy Decl., Ex. B).[2] *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii). Strategic Capital and McCadden's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Strategic Capital and McCadden are the "most adequate plaintiff[s]" within the meaning of the PSLRA and should therefore be appointed as Co-Lead Plaintiffs.

---

[2] On June 16, 2023, i.e. two days after the *Kusen* Action was filed, the *City of Hollywood* Action was voluntarily dismissed. *See City of Hollywood* Action, Dkt. No. 17.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a motion for appointment as lead plaintiff; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  As set forth below, Strategic Capital and McCadden satisfy all three of these criteria and thus believe that they are entitled to the rebuttable presumption that they are the most adequate plaintiffs within the meaning of the PSLRA.  Specifically, Strategic Capital and McCadden are willing to serve as Co-Lead Plaintiffs, have the largest financial interest in the Related Actions to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

For all these reasons, as set forth in greater detail below, Strategic Capital and McCadden respectfully urge the Court to appoint them to serve as Co-Lead Plaintiffs overseeing the Related Actions.

### 1.    Strategic Capital and McCadden Are Willing to Serve as Class Representatives

On April 24, 2023, counsel for the plaintiff in the *City of Hollywood* Action caused a notice (the "Notice") to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against Defendants, and which advised investors in First Republic securities that they had until June 23, 2023—*i.e.*, 60 days from the date of the Notice—to file a motion to be appointed as lead plaintiff.  *See* Portnoy Decl., Ex. B.  Strategic Capital and McCadden has filed the instant motion pursuant to the Notice, and have attached Certifications executed on their behalf attesting they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Under the PSLRA, Strategic Capital and McCadden's actions were timely and legally sufficient.  Accordingly, Strategic Capital and McCadden readily satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**2.      Strategic Capital and McCadden Are the Most Adequate Plaintiffs Within the Meaning of the PSLRA**

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).   Strategic Capital and McCadden are the "most adequate plaintiff[s]" within the meaning of the PSLRA and should therefore be appointed as Co-Lead Plaintiffs.

**a.      Strategic Capital and McCadden Have the Largest Financial Interest in the Related Actions**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).   To the best of their knowledge, Strategic Capital and McCadden have the largest financial interest of any First Republic investor or investor group seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered.  1997 WL 461036, at *5.  In accord with courts nationwide, these so-called *Lax* factors have been adopted by courts in the Ninth Circuit, including in this District.  *See, e.g.*, *Nicolow*, 2013 WL 792642, at *4 ("District courts commonly refer to the four-factor [*Lax*] test, which considers (1) total shares purchased, (2) net shares purchased, (3) net funds expended, and (4) approximate losses suffered."); *City of Royal Oak Ret. Sys.*, 2012 WL 78780, at *4 (same); *Knox*, 136 F. Supp. 3d at 1163 (same).  Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA.  *See, e.g.*, *Nicolow*, 2013 WL 792642, at *4; *Knox*, 135 F. Supp. 3d. at 1163.

During the Class Period, Strategic Capital and McCadden collectively: (1) purchased 508,200 shares of First Republic stock and 13,577 First Republic options contracts; (2) expended $3,873,894 on their purchases of First Republic stock; (3) retained 411,800 of their shares of First Republic stock; and (4) as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $2,605,845 in connection with their purchases of First Republic stock. *See* Portnoy Decl., Ex. A. Thus, under the *Lax* factors, Strategic Capital and McCadden believe that they have the largest financial interest among any potential lead plaintiff movants in the Related Actions, thereby entitling Strategic Capital and McCadden to a rebuttable presumption that they are the "most adequate plaintiff[s]" within the PSLRA's meaning (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), given that it also satisfies the requirements of Rule 23.

### b. Strategic Capital and McCadden Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient.

*See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018); *Tai Jan Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014).   Moreover, "[t]his showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy."  *In re SolarCity Corp. Sec. Litig.*, Nos. 16-CV-04686-LHK *et al.*, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Strategic Capital and McCadden's claims are typical of those of the Class.  Strategic Capital and McCadden allege, like all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning First Republic.  Strategic Capital and McCadden, like other Class members, purchased First Republic stock during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove First Republic's stock price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts

NOTICE OF MOTION AND MOTION OF STRATEGIC CAPITAL INVESTMENTS, LLC AND MCCADDEN INVESTMENTS, LLC FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-02940-AMO; 3:23-cv-03013-JSC

of interest with other class members," and "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

Strategic Capital and McCadden are adequate representatives for the Class. Here, Strategic Capital and McCadden have submitted Certifications executed on their behalf declaring their commitment to protect the interests of the Class. *See* Portnoy Decl., Ex. C. There is no evidence of antagonism or conflict between Strategic Capital and McCadden's interests and those of the Class, and the significant losses incurred by Strategic Capital and McCadden demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy. Indeed, Strategic Capital and McCadden have already demonstrated their ability to pursue securities claims through their choice of counsel, Bronstein. Bronstein is one of the nation's leading plaintiff-side securities litigation firms, as discussed in greater detail in Section C, *infra*. Strategic Capital and McCadden's and Bronstein's willingness and ability to zealously litigate the claims in this Action on behalf of the Class cannot reasonably be questioned.

Further, Strategic Capital and McCadden constitute an appropriate group of the type routinely appointed to serve as Co-Lead Plaintiffs. *See, e.g.*, *Perrin v. Southwest Water Co.*, No. 2:08-cv-7844-FMC-AGRx, 2009 U.S. Dist. LEXIS 134154, at *13 (C.D. Cal. Feb. 12, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation."); *Robb v. Fitbit Inc.*, No. 16-cv-00151-SI, 2016 U.S. Dist. LEXIS 62457, at *13-*14 (N.D. Cal. May 10, 2016) (appointing five-person investor group as lead plaintiff); *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d. Cir. 2001) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff") (citation omitted); *In re Blue Apron Holdings, Inc. Sec. Litig.,*,

No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding that a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding that "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiff).

Strategic Capital and McCadden likewise have demonstrated their adequacy because they are a small and cohesive group of two investors who have submitted a Joint Declaration executed on their behalf by their respective managing members, attesting to, *inter alia*, their managing members' backgrounds, investing experience, experience working with counsel, understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take on behalf of Strategic Capital and McCadden to cooperatively prosecute this litigation on behalf of the Class. *See* Portnoy Decl., Ex. D. Courts routinely appoint Co-Lead Plaintiffs under such circumstances. *See, e.g.*, *Fitbit*, 2016 U.S. Dist. LEXIS 62457, at *13-*14 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus, using a majority vote as a back-stop"); *Bruce v. Suntech Power Holdings Co., Ltd.*, No. CV 12-04061 RS, 2012 U.S. Dist. LEXIS 167702, at *9 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about

the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

## C.   CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV01-00871LGB(RNBX), 2001 WL 861694, at *4 (C.D. Cal. Apr. 26, 2001). The Court should not interfere with the Lead Plaintiff's selection unless it is necessary to do so to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Strategic Capital and McCadden have selected Bronstein to serve as Lead Counsel for the Class. Bronstein has served as co-lead or executive positions in: *Lerman v. Apple, Inc.,* No. 15-CV07381 (E.D.N.Y.) (co-lead counsel; $20 million settlement of class action by New York and New Jersey iPhone 4S owners); *In re Flint, Mich. Water Crisis Litigation*, No. 16-CV-10444 (E.D. Mich.) (Plaintiff Exec. Comm. Member; global settlement with State of Michigan for approx. $600 million); *In re Spectrum Pharm., Inc. Inc. Sec. Litigation*, No. 16-CV-02279 (D. Nev.) (colead counsel; case settled for approx. $3 million); *M&M Hart Living Trust, et al. v. Global Eagle Entertainment, Inc.*, No. 17-cv-1479-PA (C.D. Cal.) (co-lead counsel in securities class action); *Duncan et. al v. Joy Global Inc.*, No. 2:16-cv-1229-pp (E.D. Wis.) (co-lead counsel in securities class action; $20 million settlement for the class); *In re CBD Energy Limited Securities Litigation*, No. 4:15-cv-01668 (S.D. Tex.) (co-lead counsel in securities class action). *See* Portnoy Decl., Ex. E.

As a result of its extensive experience in similar litigation, Strategic Capital and McCadden's choice of counsel, Bronstein, has the skill, knowledge, expertise, resources, and experience that will enable the firm to prosecute the Related Actions effectively and expeditiously. The Court may be assured that by approving Strategic Capital and McCadden's selection of Bronstein as Lead Counsel, the Class members will receive the best legal

representation available.  Thus, Strategic Capital and McCadden respectfully urge the Court to appoint Bronstein to serve as Lead Counsel.

## IV.   CONCLUSION

For the foregoing reasons, Strategic Capital and McCadden respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Strategic Capital and McCadden as Co-Lead Plaintiffs for the Class; and (3) approving Strategic Capital and McCadden's selection of Bronstein as Lead Counsel for the Class.

Dated:  June 23, 2023                         Respectfully submitted,

PORTNOY LAW FIRM

*/s/ Lesley F. Portnoy*
Lesley F. Portnoy, Esq.
1800 Century Park East, Suite 600
Los Angeles, California 90067
Telephone: (310) 692-8883
lesley@portnoylaw.com

*Counsel for Co-Lead Plaintiff Movants Strategic Capital Investments, LLC and McCadden Investments, LLC and Proposed Liaison Counsel for the Class*

BRONSTEIN, GEWIRTZ & GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Counsel for Co-Lead Plaintiff Movants Strategic Capital Investments, LLC and McCadden Investments, LLC and Proposed Lead Counsel for the Class*

1

## **PROOF OF SERVICE**

2          I hereby certify that on June 23, 2023, a copy of the foregoing was filed electronically and

3   served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by

4   e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone

5   unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may

6   access this filing through the Court's CM/ECF System.

7

8                                              */s/ Lesley F. Portnoy*
                                              Lesley F. Portnoy

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION OF STRATEGIC CAPITAL INVESTMENTS, LLC AND MCCADDEN
INVESTMENTS, LLC FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF
LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT - 3:23-cv-02940-AMO; 3:23-cv-
03013-JSC