Lisa T. Omoto SBN 303830
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: lomoto@faruqilaw.com

James M. Wilson, Jr. *(pro hac vice* forthcoming)
Robert W. Killorin *(pro hac vice* forthcoming)
Email: jwilson@faruqilaw.com
Email: rkillorin@faruqilaw.com
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331

*Attorneys for Proposed Lead Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>Defendants.<br><br>(captions continue on next page) | Case No. 3:23-cv-02940-AMO<br><br>**NOTICE OF MOTION AND MOTION OF THE INVESTOR GROUP FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**CLASS ACTION**<br><br>Judge:  Hon. Araceli Martinez-Olguin<br>Date:    August 3, 2023<br>Time:   2:00 p.m.<br>Courtroom:   10 |

| | |
|---|---|
| ROY H. ALCORN, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>          Defendants. | Case No. 3:23-cv-03013-JSC<br><br>**NOTICE OF MOTION AND MOTION OF THE INVESTOR GROUP FOR: (1) CONSOLIDATION OF THE RELATED CASES; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>**CLASS ACTION**</u><br><br>Judge: Hon. Jacqueline Scott Corley<br>Date:   August 3, 2023<br>Time:   10:00 a.m.<br>Courtroom:  8 |
| HAL COLLIER, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>    v.<br><br>FIRST REPUBLIC BANK, JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>          Defendants. | Case No. 5:23-cv-03096-BLF<br><br>**NOTICE OF MOTION AND MOTION OF THE INVESTOR GROUP FOR: (1) CONSOLIDATION OF THE RELATED CASES; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>**CLASS ACTION**</u><br><br>Judge: Hon. Beth Labson Freeman<br>Date:   August 3, 2023<br>Time:   9:00 a.m.<br>Courtroom:  3 – 5th Floor |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ........................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 2

INTRODUCTION ..................................................................... 2

FACTUAL BACKGROUND ............................................................... 4

ARGUMENT ......................................................................... 7

I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ...................... 7

II.     MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS ........ 9

      A.     The PSLRA's Standard For Appointing Lead Plaintiffs ......................... 9

      B.     Under the PSLRA, Movants Are Entitled To Be Appointed Lead Plaintiffs ....... 10

            1.     Movants Filed a Timely Motion ............................................... 10

            2.     Movants Have the Largest Financial Interest in the Relief Sought by the Class .................................................................... 11

            3.     Movants Meet Rule 23's Typicality and Adequacy Requirements .......... 11

III.    The Court Should Approve Movants's Selection Of The Faruqi Firm As Lead Counsel ....................................................................... 14

CONCLUSION ...................................................................... 17

NOTICE OF MOTION AND MOTION OF THE INVESTOR GROUP FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
No. 3:23-cv-02940-AMO

## TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*In re Aqua Metals Sec. Litig.*,
No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ................................10

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...................................................................................3, 9, 10, 11

*In re Century Aluminum Co. Sec. Litig.*,
No. C 09-1001 SI, 2009 WL 2905962 (N.D. Cal. Sept. 8, 2009)................................................3

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ....................................11

*In re Diamond Foods, Inc., Sec. Litig.*,
281 F.R.D. 405 (N.D. Cal. 2012) ...........................................................................................11

*Ferrari v. Gisch*,
225 F.R.D. 599 (C.D. Cal. 2004) ...........................................................................................10

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ..............................................................................................2

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...............................................................................................11

*In re Heritage Bond Litig.*,
No. MDL 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004) ...........................12

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009)............................................................................................11

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................................................11

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021) ......................................................................................................9

*Miller v. Ventro Corp.*,
No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) .........................................13

*Query v. Maxim Integrated Prods.*,
558 F. Supp. 2d 969 (N.D. Cal. 2008) ...................................................................................11

*Reitan v. China Mobile Games & Ent. Grp.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014).......................................................................................14

ii

*Takeda v. Turbodyne Techs., Inc.*,
   67 F. Supp. 2d 1129 (C.D. Cal. 1999) ...........................................................................8

*Tanne v. Autobytel, Inc.*,
   226 F.R.D. 659 (C.D. Cal. 2005) ...................................................................................11

*Weisz v. Calpine Corp.*,
   No. 4:02-CV-1200, 2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .................................8, 12

*Yanek v. Staar Surgical Co.*,
   No. CV 04-8007 SJO (CWx), 2004 WL 5574358 (C.D. Cal. Dec. 15, 2004)...........................8

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
   780 F.3d 597 (4th Cir. 2015) ........................................................................................15

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................. *passim*

Fed. R. Civ. P. 23(a)(4)..............................................................................................12

Fed. R. Civ. P. 42(a)(2)............................................................................................3, 8

Anne Cullen,
   *More Judges Are Demanding Diversity Among Class Counsel*,
   Law360 (July 16, 2020) ...............................................................................................16

Ralph Chapoco,
   *Calls for Lawyer Diversity Spread to Complex Class Litigation*,
   Bloomberg Law (July 30, 2020) ....................................................................................16

iii

**NOTICE OF MOTION AND MOTION**

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on a date and time as may be set by the Court, at the United States District Court for the Northern District of California, Chaim Weiss and Sophie Shutze (together the "Movants" or the "Investor Group") will respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order: (1) consolidating the above-captioned actions; (2) appointing Movants as Lead Plaintiffs in the above-captioned actions; (3) approving Movants' selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.[1]

Movants has timely filed its Motion and is the "most adequate plaintiff" under the rules of the PSLRA.  Moreover, Movants meet the requirements of Rule 23 of the Federal Rules of Civil Procedure for the purposes of this Motion as their claims are typical of the other purported class members' claims and they will fairly and adequately represent the putative class.  Movants also seek the Court's approval of their selection of the Faruqi Firm, a law firm with substantial experience in prosecuting securities fraud class actions, as Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

In support of their motion, Movants respectfully submit a Memorandum of Points and Authorities and the Declaration of Lisa T. Omoto.

---

[1]     Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of Lisa T. Omoto filed herewith.

**NOTICE OF MOTION AND MOTION OF THE INVESTOR GROUP FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFFS; AND (3) APPROVAL OF LEAD COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
No. 3:23-cv-02940-AMO

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The above-captioned securities class actions (the "Actions")[2] presently pending in this District is brought on behalf of a putative class (the "Class") of persons other than defendants First Republic Bank, James H. Herbert, II, Hafize Gaye Erkan, Michael J. Roffler, Olga Tsokova, Michael D. Selfridge, Neal Holland, and KPMG, LLP (collectively, "Defendants") who purchased or otherwise acquired First Republic Bank ("First Republic" or the "Company") securities between January 14, 2021 and May 1, 2023, inclusive (the "Class Period") seeking to pursue remedies under Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder.[3]  In

---

[2]     The following three Actions are pending before this Court: (1) *Kusen v. Herbert, et al.*, No. 3:23-cv-02940-AMO ("*Kusen*"), which was filed on June 14, 2023; (2) *Alcorn v. First Republic Bank, et al.*, No. 3:23-cv-03013-JSC ("*Alcorn*"), which was filed on June 20, 2023; and (3) *Collier v. First Republic Bank, et al.*, No. 3:23-cv-03096 ("*Collier*"), which was filed on June 22, 2023. The *Kusen* Action is brought "on behalf of all persons and entities who purchased or otherwise acquired First Republic securities between January 14, 2021, and April 27, 2023, inclusive . . . . seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 . . . and SEC Rule 10b-5 promulgated thereunder."  *Kusen*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Kusen* Compl."). The *Alcorn* Action is brought "on behalf of all persons and entities who purchased or otherwise acquired First Republic securities between January 14, 2021, and May 1, 2023, inclusive . . .  seeking to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 . . . and U.S. Securities and Exchange Commission . . . Rule 10b-5 promulgated thereunder."  *Alcorn*, Amended Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 4 ("*Alcorn* Compl."). The *Collier* Action is brought "on behalf of persons and entities that purchased or otherwise acquired First Republic securities, or sold put options, between January 14, 2021 and April 27, 2023, inclusive . . . . pursu[ing] claims against Defendants under the Securities Exchange Act of 1934[.]"  *Collier*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Collier* Complaint").

[3]     For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]"  *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Ferreria v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *2 n. 2. (C.D. Cal. June 11, 2020) (quoting *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) (finding the "use [of] the most inclusive class period" proper for the purpose of a lead plaintiff motion).  Accordingly, the class period in the *Alcorn* Complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

connection therewith, various movants may seek to be appointed Lead Plaintiffs and seek approval

their selection of Lead Counsel.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15

U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the

Court may consolidate the actions before it that involve a common question of law or fact. Fed. R.

Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a)

of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated

thereunder. The Actions also allege substantially similar misconduct by the Company and its

officers. As the Actions raise common issues of fact and law, and consolidation will be more

efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress

established a presumption in the PSLRA that requires the Court to appoint the movant who

demonstrates the "largest financial interest" in the litigation and who also satisfies Rule 23's

typicality and adequacy requirements for class representatives. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I);

*In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002).

With total losses of $825,457.76, Movants, to the best of counsel's knowledge, have the

largest financial interest in the litigation of any movant. Movants also satisfy Rule 23's typicality

and adequacy requirements. Movants' claims are typical of the Class's claims because they

suffered losses in their First Republic investment as a result of Defendants' false and misleading

statements. Further, Movants have no conflict with the Class and will adequately protect the

Class's interests given their significant financial stake in the litigation and their conduct to date in

prosecuting the litigation, including their submission of the requisite certifications and their

selection of experienced class counsel. Accordingly, Movants are the presumptive Lead Plaintiffs.

Lastly, if appointed Lead Plaintiff, Movants are entitled to select, subject to the Court's

approval, Lead Counsel to represent the putative Class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants

have engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve

as Lead Counsel because it is a highly experienced plaintiffs' firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movants' motion should be granted in its entirety.

## FACTUAL BACKGROUND[4]

First Republic is a California state-chartered bank and trust company that provides private banking, business banking, and private wealth management. ¶ 31. The Company provides its clients with a wide range of financial products. *Id.* Much of the Company's customer base consists of wealthy households living in U.S. coastal cities, and a key component of the Company's lending strategy has been to provide these wealthy households with residential mortgages at low interest rates. *Id.*

On January 14, 2021, the Company issued a press release reporting the Company's fourth quarter and full-year 2020 financial results. ¶ 32. The press release reported that the Company's net interest income ("NII") had increased to $892.7 million, and its net margin income ("NIM") had increased to 2.73%. *Id.* In an accompanying earnings call, Defendant James H. Herbert II ("Herbert"), the Company's CEO, touted the Company's "continuing consistent performance under a wide range of economic conditions[.]" ¶ 33. On February 26, 2021, the Company filed its 2020 Annual Report on Form 10-K (the "2020 10-K"). ¶ 34. The 10-K reported that as of December 31, 2020, the Company had total assets of $143.5 billion and total deposits of $114.9 billion. *Id.* Additionally, the 10-K represented that the Company used a variety of interest rate risk management tools to evaluate interest rate risk. ¶ 35.

On April 14, 2021, the Company issued a press release announcing its first quarter 2021 financial results. ¶ 38. The Company reported NII had increased to $938.8 million and NIM had declined to 2.67%. *Id.* The Company attributed the decline in NIM to "higher average cash

---

[4]    This information comes from the *Alcorn* Complaint, but the *Kusen* Complaint and the *Collier* Complaint contain substantially similar information.

balances during the quarter." *Id*. During a related conference call the same day, Herbert stated that the Company's "strength, safety and soundness continue to be reflected in strong capital, liquidity and credit quality." ¶ 39.

On July 13, 2021, the Company issued a press release announcing its second quarter 2021 financial results. ¶ 41. The press release reported that the Company's NII had increased to $1.0 billion and NIM had increased to 2.68%. *Id*. During a related conference call, Herbert downplayed the risks posed by short-term interest rate increases on the Company. ¶ 43.

On October 13, 2021, the Company issued a press release announcing its third quarter 2021 financial results. ¶ 44. The press release reported that the Company's NII had increased to $1.1 billion and its NIM had decreased to 2.65%. *Id*. The Company attributed the decline in NIM to "higher average cash balances during the quarter." *Id*.

On January 14, 2022, the Company issued a press release announcing its fourth quarter and full-year 2021 financial results. ¶ 48. The press release reported that in the fourth quarter, the Company had NII of $1.1 billion and NIM of 2.68%. On February 28, 2022, the Company filed its 2021 Annual Report on Form 10-K (the "2021 10-K"). ¶ 51. The 2021 10-K reported that the Company had total assets of $181.1 billion and total deposits of $156.3 billion. *Id*. The 2021 10-K again represented that the Company used a variety of interest rate risk management tools to evaluate interest rate risk. ¶ 52.

On April 13, 2022, the Company issued a press release reporting its first quarter 2022 financial results. ¶ 55. The press release reported NII of $1.1 billion and NIM of 2.68%. *Id*. During a related earnings call, Herbert assured investors that even with increasing interest rates, the Company's NIM would remain stable and NII could even expand. ¶ 58.

On July 14, 2022, the Company issued a press release announcing its second quarter 2022 financial results. ¶ 59. The press release reported that NII had increased to $1.2 billion and NIM had increased to 2.8%. *Id*. During the related earnings call, Herbert assured investors that the Company "maintain[s] a steadfast focus on long-term safety and stability." ¶ 60.

The complaints allege that Defendants' statements were materially false and misleading and failed to disclose material adverse facts about the Company's business and operations. ¶ 65. Specifically, Defendants misrepresented the strength of the Company's balance sheet and liquidity position, while also understating the significant pressure rising interest rates posed to First Republic's business model. *Id*. Defendants also misrepresented the strength of the Company's ability to deliver consistent results across different interest rate environments, the diversity of the Company's deposit funding base, and the Company's ability to generate NII growth and maintain stable NIM. *Id*.

The truth began to emerge on October 14, 2022, when the Company announced disappointing third quarter 2022 financial results. ¶ 66. Specifically, the Company reported that NII growth had slowed to 20.6% year-over-year and NIM had plummeted to 2.71%. *Id*. On this news, the Company's share price fell more than 16%. ¶ 67.

Further information about the risks facing First Republic were revealed after the market closed on March 8, 2023, when SVB, parent company of Silicon Valley Bank, disclosed that it had sold "substantially all" of its $21 billion available-for-sale securities portfolio and incurred a loss of approximately $1.8 billion on that sale. ¶ 80. On March 10, 2023, Silicon Valley Bank collapsed, and regulators seized control over the bank, placing it in FDIC receivership. ¶ 81. The same day, First Republic issued a press release reassuring investors of its "continued safety and stability and strong capital and liquidity positions." ¶ 82.

However, just two days later, on March 12, 2023, First Republic issued a press release announcing that it had obtained $10 billion of additional borrowing capacity from the Fed and JPMorgan Chase & Co. ("JPMorgan"). ¶ 83. As a result of these disclosures, on March 8, 2023 through March 12, 2023, the price of First Republic common stock declined more than 72% over three trading sessions. ¶ 84.

On March 15, 2023, despite assurances from First Republic and its executives about the safety and stability of the Company's business model, S&P downgraded its long-term issuer

credit rating on First Republic to "BB+" from "A-," its senior unsecured issue rating to BB+," its

subordinated stock issue rating to "BB-," and its preferred stock issue rating to "B." ¶ 88. The

same day, Fitch announced that it had downgraded First Republic's Long-Term Issuer Default

Rating ("IDR") and its Short-Term IDR. ¶ 91. On news of the downgrades, the price of First

Republic common stock declined by more than 21%. ¶ 94.

The next day, on March 16, 2023, the financial media reported that eleven of the largest

U.S. banks had joined together to deposit $30 billion with First Republic in an effort to provide

additional liquidity to the bank. ¶ 95. After the market closed, the Company disclosed that it had

already significantly drawn on its borrowing capacity. *Id.* The next day, Moody's also

downgraded First Republic's credit rating. ¶ 97. On March 19, 2023, S&P further downgraded

First Republic's credit rating. ¶ 98. As result of these disclosure, the price of First Republic stock

declined more than 47%. ¶ 99.

On April 28, 2023, it was reported that First Republic would likely enter receivership

with the FDIC. ¶ 100. On this news, the price of First Republic common stock declined more

than 42.2%. *Id.* Finally, on May 1, 2023, after being seized by the FDIC, First Republic was

taken over by JPMorgan. ¶ 101. The next day, the NYSE announced that it was immediately

suspending trading in First Republic shares and commencing proceedings to delist those shares.

¶ 102. On this news, the Company's common stock price declined 90.6%. ¶ 103.

Through the Actions, Movants seek to recover for themselves and absent class members

the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

## I.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES[5]

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting

substantially the same claim or claims arising under this chapter has been filed," the court shall

---

[5]     On April 24, 2023, an action was commenced by plaintiff City of Hollywood Police
Officers' Retirement System entitled *City of Hollywood Police Officers' Retirement System v.*

1    not determine the most adequate plaintiff "until after the decision on the motion to consolidate is

2    rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision

3    regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as

4    practicable after [the consolidation] decision is rendered . . . .").

5            Consolidation is appropriate when the actions before the court involve common questions

6    of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Yanek v. Staar Surgical Co.*, No. CV 04-8007 SJO

7    (CWx), 2004 WL 5574358, at *3-4, *7-8 (C.D. Cal. Dec. 15, 2004) (consolidating securities

8    class actions). Differences in causes of action, defendants, or the class period do not render

9    consolidation inappropriate if the cases present sufficiently common questions of fact and law,

10   and the differences do not outweigh the interest of judicial economy served by consolidation. *See*

11   *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999) (consolidating six

12   actions asserting claims against different defendants over different class periods).

13           The Actions at issue here clearly involve common questions of fact *and* law.  The

14   Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the

15   defendants.  The Actions allege substantially the same wrongdoing, namely that Defendants

16   issued materially false and misleading statements that artificially inflated the price of First

17   Republic securities and subsequently damaged the Class when the Company's stock price

18   crashed as the truth emerged.  Consolidation of the Actions is therefore appropriate.  *Weisz v.*

19   *Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *2 (N.D. Cal. Aug. 19, 2002)

20   ("[C]ases should be consolidated where . . . there is more than one action on behalf of a class

21   asserting substantially the same claim or claims").

22

23

24

25

_____

26   *First Republic Bank, et al.*, No. 23-cv-01993-HSG. That action was voluntarily dismissed on
     June 16, 2023. *See* ECF No. 17.

27

8

## II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

### A.    The PSLRA's Standard For Appointing Lead Plaintiffs

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B).  It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as the lead plaintiff. *Cavanaugh*, 306 F.3d at 729 (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as the lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ."  Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Cavanaugh*, 306 F.3d at 730 (describing the PSLRA's two-step competitive process for determining the "most adequate plaintiff").

The statutory language of the PSLRA is unequivocal in its instruction that the district court "shall adopt a presumption that the most adequate plaintiff in any private action arising under [the Exchange Act] is the person or group of persons that … has the largest financial interest in the relief sought by the class [and] otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphases added). In light of this, the Ninth Circuit has approved the appointing of groups of investors, such as the Movants here, as lead plaintiffs. *See e.g., In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) ("[t]he statute expressly allows a 'group of persons' to move for appointment").

9

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 741; *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004).

**B.      Under the PSLRA, Movants Are Entitled To Be Appointed Lead Plaintiffs**

As discussed below, Movants should be appointed Lead Plaintiffs because all of the PSLRA's procedural hurdles have been satisfied, Movants hold the largest financial interest of any movant, and Movants otherwise satisfy Rule 23's typicality and adequacy requirements.

**1.      Movants Filed a Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff filing the initial complaint was required to publish notice of the complaint within twenty (20) days of its filing.  Counsel for first-filed plaintiff City of Hollywood Police Officers Retirement System ("Hollywood PORS")[6] published notice of the lead plaintiff deadline via *Business Wire* on April 24, 2023.[7]  *See* Ex. A.  Consequently, any member of the proposed Class in the Action was required to file a motion seeking to be appointed Lead Plaintiff within 60 days after publication of the notice (*i.e.*, on or before June 23, 2023).  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Thus, Movants' motion is timely filed.  Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movants timely signed and submitted certifications with their motion, identifying all of their relevant transactions in First Republic securities during the Class Period, and detailing their suitability to serve as Lead Plaintiffs.  *See* Ex. B.  The PSLRA's procedural requirements have therefore been met.

---

[6]      Hollywood PORS filed a Notice of Voluntary Dismissal without Prejudice on June 16, 2023.

[7]      Publication by *Business Wire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g., In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *2 (N.D. Cal. May 23, 2018) (considering publication in *Globe Newswire* to be sufficient to satisfy the PSLRA's notice requirement).

### 2. Movants Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit typically look to four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Query v. Maxim Integrated Prods.*, 558 F. Supp. 2d 969, 973 (N.D. Cal. 2008). Courts have placed the most emphasis on the last of the four factors: the approximate losses suffered by the movant. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 408 (N.D. Cal. 2012) ("The fourth factor, approximate loss, is generally considered the most important factor."); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *4 (N.D. Cal. Jan. 9, 2012) ("Courts applying the *Olsten* test generally place the greatest emphasis on the last of these factors[,]" *i.e.*, approximate losses).

Overall, during the Class Period, Movants purchased 52,740 net and 75,155 total First Republic shares, expended $836,148.25 in net funds and suffered losses of $825,457.76 when calculated using a last in, first out ("LIFO") methodology. *See* Ex. C. Movants are presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3. Movants Meet Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the PSLRA also requires that the lead plaintiff satisfy Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Cavanaugh*, 306 F.3d at 730;

11

*see also Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 671 (C.D. Cal. 2005) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.").

When assessing a movant's typicality, courts in this Circuit consider whether the other class members "have the same or similar injury, whether the action is based on conduct which is not unique to the [movant], and whether other class members have been injured by the same course of conduct." *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009). However, a movant's claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see also In re Heritage Bond Litig.*, No. MDL 02-ML-1475 DT, 2004 WL 1638201, at *7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

Movants' claims are clearly typical of the Class's claims. Movants purchased First Republic shares during the Class Period, suffered damages as a result of the Company's false and misleading statements, and possesses claims against First Republic and certain of its officers under the federal securities laws. Because the factual and legal bases of Movants' claims are similar, if not identical, to those of the Class's claims, Movants necessarily satisfy the typicality requirement. *Weisz*, 2002 WL 32818827, at *9 (finding movant typical when he "acquired securities during the Class Period, at prices allegedly inflated by the defendants' misconduct, and sustained damages as a result.").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the movant, the movant has no fundamental

conflicts of interest with the class as a whole, and the action is not likely collusive.  *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *12 (N.D. Cal. Nov. 28, 2001) ("The Ninth Circuit has held that representation is 'adequate' when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.")

As evidenced by the representations in their certifications, *see* Ex. B; *In re Century Aluminum Co. Sec. Litig.*, No. C 09-1001 SI, 2009 WL 2905962, at *4 (N.D. Cal. Sept. 8, 2009) (movant's certification evidenced adequacy to serve as lead plaintiff), Movants's interests are perfectly aligned with—and by no means antagonistic to—the Class. Contemporaneously with the filing of the instant motion, Movants has submitted a Joint Declaration with additional information about themselves, their work and educational background, and experience investing, clearly demonstrating their adequacy to represent class members. The Movants are a cohesive group consisting of Chaim Weiss and Sophie Shutze. *See* Ex. D. Movants decided to seek appointment as lead plaintiffs so that they may work together to prosecute this action and take advantage of their collective resources and experiences to benefit the class. Movants actively worked together to protect the interests of the class by conferring on a joint call with counsel. *See* Ex. D. Movants will continue to supervise and actively oversee the prosecution this action for the benefit of the class by, among other things, reviewing pleadings, instructing counsel, and attending hearings, as necessary.

Moreover, Movants have also selected and retained highly competent counsel to litigate the claims on behalf of themselves and the Class.  As explained in Section III below, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Ex. E.  Consequently, Movants are more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Movants respectfully submit that they are the presumptive Lead Plaintiffs and should be appointed Lead Plaintiffs for the Action.

### III.   THE COURT SHOULD APPROVE MOVANTS'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movants have selected the Faruqi Firm to be Lead Counsel for the Class.  The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions.  *See* Ex. E; *see also Reitan v. China Mobile Games & Ent. Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re: Revolution Lighting Technologies, Inc. Securities Litigation*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-

CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., In re Lumen Techs., Inc. Sec. Litig.*, No. 3:23-CV-00286-TAD-KDM (W.D. La.)

15

1    (appointed co-lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-

2    cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive,*

3    *Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.); *Halman Aldubi Provident and Pension*

4    *Funds Ltd. v. Teva Pharm. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec.*

5    *Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *In*

6    *re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead

7    counsel for the class); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS

8    (E.D.N.Y.) (appointed as co-lead counsel for the class).

9          The Faruqi Firm is a minority-owned and woman-owned[8] law firm, and, as reflected in

10   the firm's resume, possesses extensive experience successfully litigating complex class actions

11   on behalf of plaintiffs, including securities class actions.  The Faruqi Firm has a proven track

12   record of successfully representing its clients in these matters and is nationally recognized for its

13   excellence.  Not only does the firm have the experience and expertise necessary to obtain

14   significant successes for its clients, it has a demonstrated commitment to diversity and inclusion

15   that clients and judges increasingly seek from the bar.[9]  Class members in securities class actions

16   have diverse backgrounds, and that diversity should be reflected in class counsel.  Currently,

17   approximately 40% of the firm's partnership positions are held by women and minorities, and

18   the firm is committed to growing this figure in the coming years.  *See*

19   https://www.faruqilaw.com/our-attorneys.  The Faruqi Firm is proud to be made up of such a

20   diverse group of legal professionals and strongly believes that its clients are better served

21   because of it.

22

---

23   [8]    *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the
24   Faruqi Firm as a woman-owned business (renewal pending)).
     [9]    *See* Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*, Law360
25   (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-
     diversity-among-class-counsel; Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex*
26   *Class Litigation*, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/
27   XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

28

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court: (1) consolidate the related Actions; (2) appoint Movants as Lead Plaintiff; (3) approve its selection of the Faruqi Firm as Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  June 23, 2023

Respectfully submitted,

By: /s/ *Lisa T. Omoto*
     Lisa T. Omoto SBN 303830

**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: lomoto@faruqilaw.com

James M. Wilson, Jr. *(pro hac vice*
forthcoming)
Robert W. Killorin *(pro hac vice*
forthcoming)
685 Third Avenue, 26th Floor
New York, NY 10017
Ph: (212) 983-9330
Fx: (212) 983-9331
E-mail: jwilson@faruqilaw.com
         rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff
and [Proposed] Lead Counsel for the
putative Class*