**FEDERAL DEPOSIT INSURANCE CORPORATION**
**AS RECEIVER FOR FIRST REPUBLIC BANK**
Joshua H. Packman (D.C. Bar No. 1015463 admitted per Civil L.R. 11-2)
(jpackman@fdic.gov)
3501 Fairfax Drive
Arlington, VA 22226
Tel:   (703) 474-1435

*Counsel for Federal Deposit Insurance Corporation*
*as Receiver for First Republic Bank*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>   Defendants. | Case No. 3:23-cv-2940-AMO<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE BY FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>CLASS ACTION</u><br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Date: January 11, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 10 – 19th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

**FDIC-R'S MOTION TO INTERVENE—3:23-cv-2940-AMO**

1

## TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................... 1

PRELIMINARY STATEMENT ....................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 3

I.  STATEMENT OF RELEVANT FACTS AND PROCEDURAL
    HISTORY ........................................................................................ 3

    A.  The FDIC's Appointment as Receiver and Procedural
        History of this Case ............................................................... 3

    B.  The Mandatory FIRREA Claims Process.................................. 4

II. THE FDIC-R IS ENTITLED TO INTERVENE TO LITIGATE
    OWNERSHIP OF THE CLAIMS AND THIS COURT'S
    JURISDICTION.............................................................................. 5

    A.  Legal Standard ....................................................................... 6

    B.  The FDIC-R's Motion is Timely. ............................................. 6

    C.  The FDIC-R Has a Significantly Protectable Interest in
        This Case................................................................................ 7

    D.  The FDIC-R's Interest in This Case May be Impaired
        Absent Intervention. ............................................................ 13

    E.  Plaintiff Will Not Adequately Represent the FDIC-R's
        Interest in This Case. ........................................................... 14

    F.  In the Alternative, the Court Should Permit the FDIC-R to
        Intervene Pursuant to Fed. R. Civ. P. 24(b)........................... 16

    G.  The FDIC-R's Accompanying Motion to Dismiss Satisfies
        Rule 24(c). ........................................................................... 17

CONCLUSION............................................................................................. 18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdurahman v. Alltran Fin., LP,*
   330 F.R.D. 276 (S.D. Cal. 2018) ............................................................6, 17

*Am. Hotel & Lodging Ass'n v. City of Los Angeles,*
   2015 WL 12745805 (C.D. Cal. Mar. 25, 2015) ......................................17

*Am. W. Bank Members v. Utah,*
   2023 WL 4108352 (D. Utah June 21, 2023) ..........................................9

*Arakaki v. Cayetano,*
   324 F.3d 1078 (9th Cir. 2003) ...............................................................15

*Barnes v. Harris,*
   783 F.3d 1185 (10th Cir. 2015) ..............................................................14

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
   966 F.2d 470 (9th Cir. 1992) ..................................................................17

*Benson v. JPMorgan Chase Bank, N.A.,*
   673 F.3d 1207 (9th Cir. 2012) ...............................................................11

*Blue Chip Stamps v. Manor Drug Stores,*
   421 U.S. 723 (1975) ..................................................................................8

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.,*
   54 F.4th 1078 (9th Cir. 2022) ..................................................................7

*Cal. Trout, Inc. v. U.S. Bureau of Reclamation,*
   115 F. Supp. 3d 1102 (C.D. Cal. 2015) ...................................................6

*California ex rel. Lockyer v. U.S.,*
   450 F.3d 436 (9th Cir. 2006) ..................................................................13

*CEP Emery Tech Investors LLC v. JPMorgan Chase Bank, N.A.,*
   2010 WL 1460263 (N.D. Cal. Apr. 12, 2010) ........................................13

*Donnelly v. Glickman,*
   159 F.3d 405 (9th Cir. 1998) ...................................................................7

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
  438 U.S. 59 (1978).................................................................................15

*Heaton v. Monogram Credit Card Bank of Georgia*,
  297 F.3d 416 (5th Cir. 2002) ..............................................................14

*In re Lendingclub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017)...............................................6

*Lamar, Archer & Cofrin, LLP v. Appling*,
  138 S. Ct. 1752 (2018)...........................................................................8

*Levin v. Miller*,
  763 F.3d 667 (7th Cir. 2014) ..............................................................11

*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*,
  28 F.3d 376 (3d Cir. 1994)...................................................................10

*Pareto v. FDIC*,
  139 F.3d 696 (9th Cir. 1998) ....................................................9, 11, 13

*Rundgren v. Wash. Mut. Bank, FA*,
  760 F.3d 1056 (9th Cir. 2014) .............................................................10

*Shores v. Hendy Realization Co.*,
  133 F.2d 738 (9th Cir. 1943) ...............................................................17

*Stamm v. Paul*,
  121 F.3d 635 (11th Cir. 1997) .............................................................10

*U.S. v. Stringfellow*,
  783 F.2d 821 (9th Cir. 1986) ...............................................................15

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ...........................................................6, 14

*Westchester Fire Ins. Co. v. Mendez*,
  585 F.3d 1183 (9th Cir. 2009) .............................................................17

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) .........................................................7, 13

*Zucker v. Rodriguez*,
  919 F.3d 649 (1st Cir. 2019)........................................................8, 9, 14

**Statutes**

12 U.S.C. § 1819(b)(2)(A)...................................................................................16

12 U.S.C. § 1821(c)(5) ......................................................................................3

12 U.S.C. § 1821(d)......................................................................................4, 13

12 U.S.C. § 1821(d)(2)(A)(i) ...................................................................... Passim

12 U.S.C. § 1821(d)(2)(B)(ii) ............................................................................12

12 U.S.C. § 1821(d)(2)(H).................................................................................11

12 U.S.C. § 1821(d)(2)(I) ...........................................................................12, 15

12 U.S.C. § 1821(d)(3)–(13).....................................................................4, 10, 13

12 U.S.C. § 1821(d)(5) ...................................................................................4, 5

12 U.S.C. § 1821(d)(6)(A)....................................................................4, 5, 10, 11

12 U.S.C. § 1821(d)(10)–(11)..............................................................................5

12 U.S.C. § 1821(d)(11)(A)......................................................................... Passim

12 U.S.C. § 1821(d)(12)(A)..................................................................................3

12 U.S.C. § 1821(d)(13)(D)...................................................................2, 4, 10, 11, 13

**Rules**

Fed. R. Civ. P. 24........................................................................................ Passim

**Other Authorities**

H.R. Rep. No. 101-54, pt. I (1989) ......................................................................9

1

## NOTICE OF MOTION

2    **PLEASE TAKE NOTICE** that on January 11, 2024, at 2:00 p.m., in Courtroom 10 of the

3    above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Federal

4    Deposit Insurance Corporation ("FDIC"), an agency of the United States of America, in its

5    capacity as Receiver for First Republic Bank ("FDIC-R"), will and hereby does move for an Order

6    to intervene as a plaintiff in the above-captioned action pursuant to Fed. R. Civ. P. 24(a) and (b),

7    and Local Rules 7-1, 7-2, and 7-4. The Motion to Intervene is based upon this Notice, the

8    Memorandum of Points and Authorities in support thereof, all other pleadings and records on file

9    in this action, as well as such oral argument or other evidence that this Court may consider at the

10   hearing of this Motion.

11

## PRELIMINARY STATEMENT

12   The FDIC-R seeks leave to intervene under Federal Rule of Civil Procedure 24 so that it

13   can protect its interests by filing a motion to dismiss the complaint filed in the above-referenced

14   action because (a) the FDIC-R owns the claims asserted by the Plaintiff and by the movants for

15   appointment of lead Plaintiff and lead Counsel (each a "Movant" and collectively, the "Movants"),

16   and the Plaintiff and Movants accordingly lack standing and state no claim on which relief can be

17   granted in their favor; and (b) the Court lacks subject matter jurisdiction over the asserted claims

18   for failure to exhaust the mandatory administrative claims process under the Financial Institutions

19   Reform, Recovery, and Enforcement Act of 1989 (the "FIRREA claims process").  The FDIC-R

20   files this motion in advance of the November 8, 2023 court hearing concerning the pending

21   motions to appoint lead Plaintiff and lead Counsel so that the FDIC-R may be permitted to

22   intervene and so limited judicial resources are not spent resolving issues that may be rendered

23   moot.  If the FDIC-R's Motion to Intervene is granted, the FDIC-R will file its Motion to Dismiss,

24   attached herein as Exhibit 2.

25   The FDIC-R has a substantial interest in this case that would be impaired if the FDIC-R

26   were not permitted to intervene and seek to dismiss the case for the reasons set forth below and in

27   the attached Motion to Dismiss.   As an initial matter, the FDIC-R has an interest in this case

28   because FIRREA makes the FDIC-R the owner of the Plaintiff's claims: once a bank fails, the

---

**FDIC-R'S MOTION TO INTERVENE**—3:23-cv-2940-AMO     **PAGE 1**

statute confers on the FDIC-R "all rights" of both "the [failed bank]" and "any stockholder" of the bank "with respect to the [bank] and the assets of the [bank]."  12 U.S.C. § 1821(d)(2)(A)(i) (the "Succession Clause").  Plaintiff's claims in this case fall within the scope of the Succession Clause and belong to the FDIC-R because Plaintiff's claims, which are premised on alleged false statements and misrepresentations by directors, officers, and agents of First Republic Bank ("First Republic" or the "Bank") about the Bank and the Bank's assets, are clearly claims "with respect to" the Bank.  As a result, Plaintiff and the Movants do not own the claims they attempts to assert, and therefore, they lack standing and fail to state claims for which relief may be granted.  As an alternative interest in this case, even if Plaintiff and the Movants did own the claims (they do not), they have failed to exhaust the FIRREA claims process.  Exhausting the FIRREA claims process is a statutory prerequisite to suing in any court on claims like those asserted here, and the failure to do so here deprives this Court of subject matter jurisdiction over Plaintiff's claims and each Movant's claims pursuant to 12 U.S.C. § 1821(d)(13)(D).  The FDIC-R has a substantial interest in ensuring compliance with the FIRREA claims process that it administers and in discharging its duties under that claims process.

The FDIC-R's interest is sufficient to warrant intervention to enable it to argue the merits of these issues.  Absent intervention, there will be no practical way for the Court to decide these important threshold matters.   No other party can protect the FDIC-R's interests, and the FDIC-R has timely sought to intervene.  For these reasons, the FDIC-R has a right to intervene under Rule 24(a)(2).  Alternatively, permissive intervention is appropriate under Rule 24(b) because the FDIC-R has grounds for dismissal of the action that share common questions of law and fact with this action as it now stands and because determining ownership of the claims in this case depends on FIRREA, which the FDIC-R administers.

Accordingly, the FDIC-R respectfully requests that this Court authorize the FDIC-R to intervene in this action and that it grant the FDIC-R leave to file its Motion to Dismiss.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

3

**A.     The FDIC's Appointment as Receiver and Procedural History of this Case**

4

On May 1, 2023, the California Department of Financial Protection and Innovation closed

5

First Republic, and appointed the FDIC as Receiver for First Republic, pursuant to 12 U.S.C.

6

§ 1821(c)(5).  Decl. of Peter L. Barter ¶ 3 & Ex. A, Oct. 30, 2023 (hereinafter "Barter Decl."),

7

attached hereto as Exhibit 1.  The FDIC accepted appointment as Receiver for First Republic on

8

the same date.  *Id.*

9

By operation of law, the FDIC-R succeeded to "all rights, titles, powers, and privileges" of

10

First Republic, and of "any stockholder, member, accountholder, depositor, officer, or director of

11

[First Republic] with respect to [First Republic] and the assets of [First Republic]."  12 U.S.C.

12

§ 1821(d)(2)(A)(i).

13

On June 14, 2023, Plaintiff, on behalf of a proposed class of stockholders, filed this lawsuit

14

against certain former directors and officers of First Republic and First Republic's outside auditor,

15

KPMG, LLP, alleging violations of federal securities laws.  Plaintiff named neither the Bank nor

16

the FDIC-R in the Complaint, but Plaintiff based her claims upon alleged false or misleading

17

statements or omissions by the Bank, by the Bank's directors and officers, and by KPMG in the

18

Bank's press releases, the Bank's public securities filings, the Bank's earnings calls, and the

19

Bank's public investor events, Compl. ¶¶ 35–48, 51–65, 69, 71–73, 75–81, 85–86, 88–89, as well

20

as allegedly false or misleading statements by Bank directors and officers at public conferences

21

concerning the Bank, the Bank's assets, and the Bank's financial condition, Compl. ¶¶ 49–50, 66–

22

67, 74.[1]  Two other related actions were also filed with this Court on June 20, 2023, *Alcorn v.*

23

_____

24

[1] The substantive allegations of Plaintiff's complaint, and the alleged false statements, misrepresentations, and omissions on which Plaintiff's complaint relies, are identical to those in a

25

prior securities lawsuit against First Republic, *City of Hollywood Police Officers' Retirement System v. First Republic Bank*, No. 3:23-cv-1993-HSG (N.D. Cal.).  In that case, the FDIC-R

26

substituted as a defendant after it was appointed as Receiver for First Republic, moved for a stay pursuant to 12 U.S.C. § 1821(d)(12)(A), and indicated that it would move to dismiss the case

27

because it had succeeded to the claims at issue in that case by operation of law.  After the court

28

granted the FDIC-R's motion for a stay on June 13, 2023, the plaintiff voluntarily dismissed that

*First Republic Bank*, No. 3:23-cv-3013-AMO (N.D. Cal.), and on June 22, 2023, *Collier v. First Republic Bank*, No. 3:23-cv-3096-AMO (N.D. Cal.).  Subsequently, eight motions for appointment of lead plaintiff and lead counsel were filed in this action on June 23, 2023.  Pursuant to this Court's July 7, 2023 Order (ECF No. 45), this Court scheduled a hearing on the motions for appointment of lead plaintiff and lead counsel, which is currently set on November 8, 2023.

On August 4, 2023, the FDIC-R sent a letter to counsel for the Plaintiff and the Movants requesting that they voluntarily dismiss their claims because they belong to the FDIC-R and because, even if the claims did not belong to the FDIC-R, this Court would lack subject matter jurisdiction unless each claimant first individually exhausted administrative remedies with the FDIC-R.  Barter Decl. ¶¶ 7–8 & Ex. C.  Subsequently, on August 16 and 17, the named plaintiffs in the related *Alcorn* and *Collier* cases voluntarily dismissed those actions.  On August 30, 2023, this Court entered a Stipulation and Scheduling Order (ECF No. 65) confirming the November 8 hearing on the pending motions to appoint lead plaintiff and lead counsel and setting a schedule for the Court-appointed Lead Plaintiff to meet and confer with Defendants regarding a schedule for filing of an amended or consolidated complaint and any responses thereto.

**B.      The Mandatory FIRREA Claims Process**

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")[2] sets forth a mandatory administrative claims process that applies to all claims related to a failed depository institution in FDIC receivership or against the FDIC as receiver.  12 U.S.C. § 1821(d)(3)–(13).  To prevent claimants from bypassing the FIRREA claims process, FIRREA also strips courts of jurisdiction over such claims until the claimant has exhausted the administrative process.  *Id.* § 1821(d)(6)(A), (d)(13)(D).  After a claim is filed with the receiver, the receiver has 180 days to determine whether to allow or disallow the claim.  *Id.* § 1821(d)(5)(A)(i).  The receiver must allow any claim received on or before the claims bar date

---

case on June 16, 2023.  The Plaintiff's lawsuit was filed one day after this Court granted the FDIC-R's motion to stay the *City of Hollywood* case and two days before the plaintiff in that case voluntarily dismissed it.

[2] FIRREA is codified as amended in the Federal Deposit Insurance Act at 12 U.S.C. § 1821(d).

"which is proved to the satisfaction of the receiver."  *Id.* § 1821(d)(5)(B).  If the receiver allows a claim and if funds are available, the claim will be paid according to the required priority scheme.  *Id.* § 1821(d)(10)–(11).  Under this statutory priority scheme, claims of shareholders are paid last.  *Id.* § 1821(d)(11)(A)(v).  If the receiver disallows a claim, or the 180-day review period expires without action by the receiver, the claimant then has 60 days to sue for a de novo judicial determination of the claim.  *Id.* § 1821(d)(6)(A).

As part of the mandatory administrative claims process, the FDIC-R established September 5, 2023 as the "Claims Bar Date,"—*i.e.*, the deadline for filing any administrative claims related to First Republic.  Barter Decl. ¶ 4.  The FDIC-R prepared a Publication Notice to Creditors and Depositors of First Republic advising that administrative claims must be submitted to the FDIC-R by the Claims Bar Date.  *Id.* ¶ 5 & Ex. B.  That Publication Notice was published on May 8, 2023; June 9, 2023; and July 7, 2023, in the *Boston Globe*, the *Los Angeles Times*, the *New York Times*, the *San Francisco Chronicle*, and the *Wall Street Journal*.  *Id.* ¶ 6 & Ex. B.  In general, the FDIC-R must disallow any claims filed after the Claims Bar Date, and any such disallowance of a late claim will be final.  *See* 12 U.S.C. § 1821(d)(5)(C).

Plaintiff failed to submit an administrative claim to the FDIC-R, and only two of the Movants have done so: Movant Hal Collier filed an administrative claim with the FDIC-R on August 30, 2023, and Movant Alecta Tjänstepension Ömsesidigt (ATO) filed an administrative claim with the FDIC-R on September 5, 2023.  Barter Decl. ¶¶ 7, 9–11.  To date, the FDIC-R has made no determination regarding their administrative claims.  *Id.* ¶¶ 12–13.  The 180-day statutory claims determination period for those claims does not expire until February 26 and March 4, 2024, respectively.  *Id.* ¶¶ 12–13.

## II.    THE FDIC-R IS ENTITLED TO INTERVENE TO LITIGATE OWNERSHIP OF THE CLAIMS AND THIS COURT'S JURISDICTION

The FDIC-R has a right to intervene under Federal Rule of Civil Procedure 24(a)(2) to litigate whether (a) the FDIC-R owns the claims in this case; and (b) whether this Court lacks subject matter jurisdiction over Plaintiff's claims because she failed to exhaust the mandatory

administrative claims process.  In the alternative, permissive intervention is also appropriate under Rule 24(b).

### A.    Legal Standard

"Under Rule 24(a)(2), a nonparty is entitled to intervention as of right when it '(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'" *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022).  While a nonparty seeking intervention bears the burden of showing that it meets these elements, courts "interpret these requirements broadly in favor of intervention." *Id.*

"Under Federal Rule of Civil Procedure 24(b) . . . , a court may grant permissive intervention where (1) the applicant shows independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense and the main action share a common question of law or fact." *Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1109 (C.D. Cal. 2015).  "In exercising its discretion on an application for permissive intervention, the court 'must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.*

The FDIC-R meets each of these requirements.

### B.    The FDIC-R's Motion is Timely.

"To determine whether a motion for intervention as of right is timely, [the court] consider[s] the totality of the circumstances facing the would-be intervenor, with a focus on three primary factors: '(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.'" *W. Watersheds Projects*, 22 F.4th at 835–36.  Here, all the factors point to the timeliness of the FDIC-R's motion of intervene.  This case is still in its earliest stages as no answer or response to the complaint has been filed, and in fact, a lead plaintiff has not even been selected.  *See, e.g.*, *Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 280 (S.D. Cal. 2018) (case older than one year, with only limited discovery and a stayed class certification motion, was in its early stages); *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1177–78 (N.D. Cal. 2017) (intervention motion was timely prior to

class certification).  Further, the Plaintiff and Movants would not be prejudiced by the FDIC-R's intervention because they were on notice of the FDIC-R's interests in this litigation since August 4.  Finally, the FDIC-R has not delayed in moving to intervene—to the contrary, the FDIC-R has acted diligently in seeking leave to intervene promptly after this Court entered the Stipulation and Scheduling Order on September 30.

**C.   The FDIC-R Has a Significantly Protectable Interest in This Case.**

Under Rule 24(a)(2), the interest asserted by the intervenor must be "'protectable under some law'" and there must "exist 'a relationship between the legally protected interest and the claims at issue.'"  *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc)).  "[A] prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as significantly protectable under Rule 24(a)(2)."  *Wilderness Soc'y*, 630 F.3d at 1179 (internal quotation marks and citation omitted). "An applicant generally satisfies the 'relationship' requirement only if the resolution of the plaintiff's claims actually will affect the applicant."  *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

The FDIC-R has a significantly protectable interest in this litigation for two reasons: First, upon its appointment as receiver for First Republic, the FDIC-R acquired ownership of the Plaintiff's claims asserted in this litigation.  Second, the Plaintiff's failure to comply with the FIRREA claims process deprives this court of jurisdiction, and the FDIC-R has a substantial interest in ensuring compliance with the FIRREA claims process that it administers.  Further the FDIC-R has a substantial interest in discharging its statutory duties under the FIRREA claims process, including to pay all valid claims against a failed depository institution according to the specific priority scheme Congress has established.

**1.   Plaintiff's Claims Belong To The FDIC-R Under 12 U.S.C. § 1821(d)(2)(A)(i).**

Under 12 U.S.C. § 1821(d)(2)(A)(i), upon its appointment as receiver for First Republic the FDIC-R succeeded "by operation of law" to "all rights, titles, powers, and privileges of the

insured depository institution [*i.e.*, First Republic], and of any stockholder [of First Republic] . . . with respect to [First Republic] and the assets of [First Republic]." Thus, under a plain reading of the statute, the FDIC-R owns not only the Bank's rights but also "all rights" of the Bank's stockholders with respect to the Bank or its assets, including the Plaintiff's claims. Specifically, Plaintiff asserts that her claims arise from her status as a stockholder of First Republic. Compl. ¶¶ 19, 23; *cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–33, 749 (1975) (limiting standing to assert claims under § 10(b) of the Exchange Act and Rule 10b-5 to actual purchasers and sellers of the security at issue). Further, Plaintiff asserts claims "with respect to" First Republic and its assets because the claims concern or relate to First Republic and First Republic's assets. *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) ("As a matter of ordinary usage, 'respecting' means 'in view of: considering; with regard or relation to: regarding; concerning.'"). Specifically, Plaintiff's claims are based upon statements that the Bank, through its former directors and officers, and that KPMG made concerning the Bank, *e.g.*, Compl. ¶ 35 (press release regarding the First Republic's financial results and comments by then-Chairman and -CEO James H. Herbert, II, regarding First Republic's "safe, consistent growth"), and the Bank's assets, *e.g.*, *id.* ¶ 36 (statement by First Republic's then-President Hafize Gaye Erkan in a First Republic earnings conference call regarding First Republic's "diversified deposit funding base"). The statements that Plaintiff alleges were false or misleading appeared in the Bank's press releases, *id.* ¶¶ 35, 41, 44, 47, 51, 58, 62, 75, 85–86, 88–99, in the Bank's public securities filings, *id.* ¶¶ 35, 37–40, 47, 51, 54–58, 62, 75, 78–81, 85, 88–89, during the Bank's earnings conference calls and public investor events, *id.* ¶¶ 36, 42–43, 45–46, 48, 52–53, 59–61, 63–65, 71–73, 76–77, and during speeches by the Bank's directors and officers at public financial industry conferences, *id.* ¶¶ 49–50, 66–67, 74. Because the alleged false statements and misrepresentations upon which Plaintiff founds her claims were statements made *by* First Republic or its agents and were statements *about* First Republic and its assets, it is beyond dispute that Plaintiff's claims are "with respect to" First Republic and its assets.

The First Circuit's decision in *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), is instructive. In *Zucker*, the bankruptcy trustee for holding company R&G Financial Corporation

1   brought claims arising out of the failure of its subsidiary, R-G Premier Bank of Puerto Rico, which

2   had been placed into FDIC receivership.  *Id.* at 650–54.  The First Circuit held that the bankruptcy

3   trustee's claims on behalf of the holding company were owned by the FDIC as Receiver because,

4   like Plaintiffs' claims here, the claims "depend[ed] entirely on the [claimant's] position as a Bank

5   stockholder" and further "depend[ed] on the [claimant] proving that malfeasance by [the Bank's]

6   directors depressed the Bank's assets," which "means that the claims relate to or concern the assets

7   of the Bank."  919 F.3d at 656; *see also Am. W. Bank Members v. Utah*, Case No. 2:16-CV-326,

8   2023 WL 4108352, at *5-8 (D. Utah June 21, 2023) (following *Zucker*).  As in *Zucker*, Plaintiff's

9   claims here are brought based on her status as a First Republic stockholder and concern or relate to

10  both First Republic and its assets.  Compl. ¶¶ 35–48, 51–65, 67–90.  Accordingly, as the First

11  Circuit held in *Zucker*, Plaintiff's claims here, and the claims of each other class member, belong

12  to the FDIC-R under the plain meaning of 12 U.S.C. § 1821(d)(2)(A)(i).

13         Moreover, as the Ninth Circuit has recognized, the transfer of the Plaintiff's claim (among

14  others) to the FDIC-R is central to the comprehensive statutory scheme that Congress established

15  in FIRREA.  The comprehensive scheme established in FIRREA is "designed to give the FDIC

16  power to take all actions necessary to resolve the problems posed by a financial institution in

17  default."  H.R. Rep. No. 101-54, pt. I, at 330 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 126.

18  Two aspects of that comprehensive scheme pertinent here are the transfer of rights, including legal

19  claims, into the hands of the FDIC as Receiver and a fair and consistent scheme for the Receiver

20  to resolve claims against the failed bank.  The Ninth Circuit explained the scheme as follows:

21         Part of [FIRREA's] statutory mosaic vested great power in the FDIC, and that included
22         giving it all of the rights, powers, and privileges of the failing institutions, their depositors,
           account holders, officers, directors, and stockholders.  In fine, all of the accouterments of
23         ownership were gathered into the hands of a single entity so that it would be in a position
           to develop a consistent approach to dealing with the institution's various problems.

24  *Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998).  Stated differently, consolidating legal claims

25  concerning the failed bank into the hands of the Receiver supports Congress's determination that

26  claimants against a failed bank be paid fairly under a set priority list.  *See* 12 U.S.C.

27  § 1821(d)(11)(A) (requiring that "amounts realized from the liquidation or other resolution of any

28  insured depository institution by any receiver . . . shall be distributed to pay claims" (after paying

administrative expenses) first to pay the institution's deposit liabilities, then to pay "general or senior" liabilities, then to pay "any obligation subordinated to depositors or general creditors," and finally to pay "any obligation to shareholders . . . arising as a result of their status as shareholders").

Accordingly, the FDIC-R has a legal ownership interest protected by FIRREA in the claims that Plaintiff attempts to assert in this action.  The FDIC-R's interest is obviously related to the Plaintiff's claims because the resolution of those claims—rights that FIRREA has transferred to the FDIC-R by operation of law—will necessarily affect the FDIC-R.

> **2.**     **Plaintiff's Failure to Comply With the FIRREA Claims Process Deprives This Court of Jurisdiction, and the FDIC-R Has a Substantial Interest in Ensuring Compliance with the FIRREA Claims Process.**

The FDIC-R also has a substantial protectable interest in this case because the Plaintiff has failed to exhaust the FIRREA claims process, which consequently deprives this Court of jurisdiction.  As the entity charged with administering the FIRREA claims process, the FDIC-R has a substantial interest in ensuring that all claimants comply with the FIRREA claims process.  "In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities, the [FDIC] would face numerous claims from various parties."  *Stamm v. Paul*, 121 F.3d 635, 639 (11th Cir. 1997).  Thus, "[o]ne of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation."  *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994).

To that end, Congress established the mandatory FIRREA claims process, codified at 12 U.S.C. § 1821(d)(3)–(13).  Further, to ensure that claimants do not bypass the FIRREA claims process, the statute also strips courts of jurisdiction over "any claim relating to any act or omission of [the failed banking institution] or the [FDIC-R]," 12 U.S.C. § 1821(d)(13)(D)(ii), until that claim has been exhausted through the FIRREA claims process.  *Id.* § 1821(d)(6)(A); *Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1060-61, 1064–65 (9th Cir. 2014).

Plaintiff's claims relate to acts or omissions by First Republic and must be exhausted under the FIRREA claims process.  As the basis for her claims, Plaintiff relies on statements by the Bank in press releases, earnings calls, and public securities filings that she alleges were materially false or misleading.  *See* Compl. ¶¶ 35–48, 51–65, 67–90.  Moreover, Plaintiff's claims under § 20(a) of the Exchange Act make clear that alleged misrepresentations by the Bank are the real basis of her claims.  *See, e.g.*, Compl. ¶ 127 ("As described above, the Company[, i.e., First Republic,] and the Individual Defendants each violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act.").  Plaintiff must exhaust her claims through the FIRREA claims process, and this Court lacks jurisdiction over Plaintiff's claims until she does so.  12 U.S.C. § 1821(d)(6)(A), (d)(13)(D).  As the agency charged with administering the FIRREA claims process, the FDIC-R has a substantial interest in ensuring compliance with that process.  The FDIC-R's interest in this case is particularly acute because lawsuits like the Plaintiff's, if permitted to proceed, would contravene the careful scheme that Congress mandated by allowing a stockholder to skip the FIRREA claims process in order to be paid ahead of other claimants.  *See Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211–15 (9th Cir. 2012) (holding that the plaintiffs' claims related to an act or omission of a failed bank in FDIC receivership and were therefore jurisdictionally barred because plaintiffs had failed to exhaust the FIRREA claims process); *Pareto*, 139 F.3d at 701 (noting that "we are in no position to second guess Congress's choice" of how claimants are prioritized); *c.f. Levin v. Miller*, 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring) ("[A]llowing [the holding company for the failed bank] any prospect of recovery ahead of or on par with the FDIC turns the equities upside down.").

The FDIC-R further has a substantial interest in ensuring that it can discharge its own duties under the FIRREA claims process.  Congress commanded that the FDIC-R "shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of" the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(2)(H), and further directed that "amounts realized from the liquidation or other resolution of any insured depository

institution by any receiver . . . shall be distributed to pay claims," *id.* § 1821(d)(11)(A).  Moreover, in paying claims as commanded by Congress, the FDIC-R must follow a set priority scheme, with administrative expenses of the receiver paid first, the institution's deposit liabilities paid second, any other "general or senior" liabilities paid third, any "obligation subordinated to depositors or general creditors" paid fourth, and "any obligation to shareholders . . . arising as a result of their status as shareholders" paid last.  *Id.* § 1821(d)(11)(A).

The FDIC's other powers as a Receiver support its ability to fulfill its duties under the FIRREA claims process.  For example, in order to pay valid obligations and claims against a failed depository institution, the FDIC-R succeeds to the institution's "rights, titles, powers, and privileges," *id.* § 1821(d)(2)(A)(i), and is further empowered, among other things, to "collect all obligations and money due the institution," *id.* § 1821(d)(2)(B)(ii), including by conducting investigations and filing suit on claims belonging to the failed depository institution, *see id.* §§ 1819(a) (authority to sue), 1821(d)(2)(I) (administrative subpoena authority), 1821(d)(2)(J) (authority to exercise all powers granted to receivers or authorized by the Federal Deposit Insurance Act which the FDIC-R determines to be in the best interest of the institution, its depositors, or the FDIC), 1821(d)(12)–(14), (17)–(19) (powers of the FDIC-R with respect to litigation).  With respect to First Republic, the FDIC-R has commenced such an investigation pursuant to its authority under 12 U.S.C. § 1821(d)(2)(I).

Of course, in order for the FDIC-R to discharge its duties under the FIRREA claims process, claimants must also comply with that process by filing their claims with the FDIC-R.  If individual claimants could each pursue their own claims against a failed bank in separate forums, it would severely frustrate Congress's goal of providing an expeditious and orderly resolution for claims against a failed bank: it would allow claimants to skirt the FIRREA claims process; it would force the FDIC-R to spend receivership resources competing against other stakeholders; and it would reward those claimants who can bring their claims the fastest, which may be in contravention of the payment priority scheme that Congress required the FDIC-R to follow. FIRREA's statutory scheme "helps assure the expeditious and orderly protection of *all* who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of

1   its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d

2   at 700 (emphasis added). In this way, the FIRREA claims process, 12 U.S.C. § 1821(d) (3)–(13);

3   the priority scheme, *id.* § 1821(d)(11)(A); and the Succession Clause, *id.* § 1821(d)(2)(A)(i), all

4   work together and should be read together. Congress forced claimants to bring their claims before

5   a single forum and required that claims be paid in a set order so that all claimants are treated fairly

6   and consistently. *Id.* § 1821(d)(11)(A), (d)(13)(D). Congress specifically mandated through

7   FIRREA's payment priority scheme that claims of stockholders are paid last. *Id.*

8   § 1821(d)(11)(A). Congress also transferred to the FDIC as Receiver all claims of stockholders,

9   members, accountholders, depositors, officers, and directors of a failed bank with respect to the

10   bank and the assets of the bank. *Id.* § 1821(d)(2)(A)(i).

11   Here, the FDIC-R has a significant interest in ensuring that claimants comply with the

12   FIRREA claims process that FDIC-R administers and in discharging its duties under FIRREA in

13   accordance with Congress's commands. *See CEP Emery Tech Investors LLC v. JPMorgan Chase*

14   *Bank, N.A.*, No. 09-cv-4409 (SBA), 2010 WL 1460263, at * 4 (N.D. Cal. Apr. 12, 2010). The

15   FDIC-R's interest is protected by statute, *see* 12 U.S.C. § 1821(d), and is related to Plaintiff's

16   claims because resolution of the Plaintiff's claims would allow the Plaintiff to skip the FIRREA

17   claims process and impair the FDIC-R's ability to discharge its duties under that same claims

18   process. *See California ex rel. Lockyer v. U.S.*, 450 F.3d 436, 442 (9th Cir. 2006) (finding a

19   significant interest because the case would "determine conclusively whether, and the degree to

20   which," medical providers would be able to seek protection under the Weldon Amendment).

21   **D.      The FDIC-R's Interest in This Case May be Impaired Absent Intervention.**

22   "[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will

23   suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness*

24   *Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer*, 450 F.3d at 441). Here, the FDIC-R

25   would suffer a practical impairment of its interests identified above as a result of this litigation.

26   First, with respect to the FDIC-R's ownership of Plaintiff's claims, Plaintiff's assertion of claims

27   that the FDIC-R owns by statute would obviously impair the FDIC-R's ability to raise those (or

28   other) claims, including in the manner that the FDIC-R concludes would be most effective and

would yield the best results for the resolution of all claims arising out of the failure of First

Republic.  Further, with respect to the FDIC-R's interest in ensuring compliance with the FIRREA

claims process and discharging its statutory duties under FIRREA, resolution of the Plaintiff's

claims would allow Plaintiff to skip the FIRREA claims process and would impair the FDIC-R's

ability to comply with Congress's mandate that certain claimants against a failed banking

institution should have their claims satisfied first while other claimants—stockholders—should be

paid last.  *See* 12 U.S.C. 1821(d)(11)(A); *Zucker*, 919 F.3d at 658 (explaining that recovery in

favor of shareholders of a failed bank would "turn [FIRREA's] priority scheme on its head");

*Barnes v. Harris*, 783 F.3d 1185, 1195 (10th Cir. 2015) ("Our decision is consistent with the

requirement that shareholders not circumvent the interests of creditors and the FDIC."); *Heaton v.*

*Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002) (holding that the

"interests [of the FDIC as Receiver] more than suffice to meet the requirement of Rule 24" in

cases where it "has a broader interest in protecting the proper and consistent application of the

Congressionally designed framework to ensure the safety and integrity of the federal deposit

insurance system").  Accordingly, the FDIC-R would suffer a practical impairment of its interests

as a result of this litigation.

       **E.**      **Plaintiff Will Not Adequately Represent the FDIC-R's Interest in This Case.**

       The final requirement for intervention as of right under Rule 24(a)(2) is that the

prospective intervenor must show that the existing parties will not adequately represent the

intervenor's interest.  "The burden of showing inadequacy of representation is minimal and

satisfied if the applicant can demonstrate that representation of its interests may be inadequate."

*W. Watersheds Project*, 22 F.4th at 840 (cleaned up).  "To evaluate adequacy of representation,

courts consider three factors: (1) whether the interest of a present party is such that it will

undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is

capable and willing to make such arguments; and (3) whether a proposed intervenor would offer

any necessary elements to the proceeding that other parties would neglect."  *Id.* at 840–41 (cleaned

up).  "The most important factor in determining the adequacy of representation is how the interest

compares with the interests of existing parties.  When an applicant for intervention and an existing

party have the same ultimate objective, a presumption of adequacy of representation arises." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

Here, the existing parties cannot adequately represent the FDIC-R's interest because all the existing parties have interests adverse to the FDIC-R.  As the Ninth Circuit has recognized, "[w]hen a party possesses interests adverse to those of a prospective intervenor, that party cannot adequately represent the intervenor's interests."  *U.S. v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986), *vacated on other grounds sub nom. Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370 (1987).  Plaintiff's position here is inherently adverse to the FDIC-R's because the FDIC-R asserts ownership of the plaintiff's claims and seeks to dismiss the Plaintiff's lawsuit as improvidently brought.  *Cf. Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978) ("There are good and sufficient reasons for this prudential limitation on standing when rights of third parties are implicated—the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them.")  Nor can the Defendants protect the FDIC-R's interests.  The Defendants' interests are inherently adverse to the FDIC-R's because the FDIC-R acquired all of First Republic's claims, and all the claims of First Republic's shareholders, against the Defendants.  As noted above, the FDIC-R has commenced an investigation concerning First Republic pursuant to its authority under 12 U.S.C. § 1821(d)(2)(I) and, if warranted by the results of that investigation, the FDIC-R may bring claims against the same Defendants named in this lawsuit.  "[W]here, as here, a third party seeks to press claims against both the plaintiffs and the defendants in ongoing litigation, there exists a genuine possibility that, in the absence of intervention, the existing parties will 'bargain away' the third party's interests rather than vigorously represent those interests at the possible expense of their own liability."  *Stringfellow*, 783 F.2d at 828.  Accordingly, the present parties would not adequately represent the FDIC-R's interests and the FDIC-R should consequently be permitted to intervene as of right.

Moreover, none of the existing parties shares the FDIC-R's broad and substantial interest in preserving its rights and in discharging its duties under FIRREA, including compliance with the FIRREA claims process and the priority scheme for payment of claims against a failed depository

institution.  To the contrary, Plaintiff is trying to circumvent the FIRREA claims process and the

priority scheme by filing this lawsuit.  None of the existing parties are capable of raising, or would

have any incentive to raise, the FDIC-R's interest.  To the contrary, only the FDIC-R can offer the

"necessary elements to the proceedings that other parties would neglect" on issues including the

ownership of the claims Plaintiff asserts and the FDIC-R's discharge of its duties to provide an

efficient, orderly, and fair resolution of claims against First Republic in accordance with

Congress's statutory directives.

For the foregoing reasons, the FDIC-R has timely moved to intervene in this case, and the

FDIC-R has significant, protectable interests that may be impaired by this litigation.  Further, no

existing party would adequately represent, or could adequately represent, the FDIC-R's interests.

Accordingly, the FDIC-R may intervene as of right in this case, and the FDIC-R respectfully

requests that this Court grant its motion to intervene on that basis.

### F.     In the Alternative, the Court Should Permit the FDIC-R to Intervene Pursuant to Fed. R. Civ. P. 24(b).

As set forth above, the FDIC-R respectfully submits that it may intervene in this matter as

of right pursuant to Rule 24(a).  If this Court should conclude otherwise, however, the FDIC-R

requests in the alternative that this Court grant permission for the FDIC-R to intervene pursuant to

Rule 24(b).  As noted above, the FDIC-R's request to intervene is timely.  *See, supra*, Section II.b.

Further, FIRREA serves as an independent basis for this Court's jurisdiction.  *See* 12 U.S.C.

§ 1819(b)(2)(A) (providing that "all suits of a civil nature at common law or in equity to which the

[FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States").

Finally, FDIC-R's defense to the Plaintiff's complaint shares with it "a common question of law

or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Specifically, to proceed, Plaintiff must demonstrate that it

has an ownership right to the claims she asserts and standing to pursue those claims in this Court.

The FDIC-R will show in its attached motion to dismiss that Plaintiff does not.  Further, as an

alternative basis for dismissal, Plaintiff bears the burden to show that this Court has jurisdiction

over her claims and again, as the FDIC-R will show in its motion to dismiss, Plaintiff cannot meet

that burden.  Accordingly, allowing the FDIC-R to intervene will not cause undue delay or prejudice to any existing parties but rather will serve the interest of judicial economy.

### G.   The FDIC-R's Accompanying Motion to Dismiss Satisfies Rule 24(c).

The FDIC-R has satisfied the requirements of Rule 24(c) because it has fully set forth the grounds on which it seeks to intervene in this motion and in the attached its motion to dismiss. While Rule 24(c) by its terms requires that a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), "[c]ourts, including th[e Ninth Circuit], have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992).  Accordingly, courts within the Ninth Circuit have granted motions to intervene where the prospective intervenor attached a motion or opposition setting out the basis for its intervention.  *See, e.g.*, *Abdurahman v. Alltran Fin., LP*, 330 F.R.D. 276, 283 (S.D. Cal. 2018) (granting a motion to intervene by American Express National Bank where the bank attached a proposed motion to compel arbitration and a copy of the contract including the arbitration clause); *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, No. 14-cv-9603-AB (SSx), 2015 WL 12745805, at * 9 (C.D. Cal. Mar. 25, 2015) (granting a motion to intervene by a union where it attached a proposed opposition to the plaintiff's motion for preliminary injunction); *see also Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009) ("We have made clear that the failure to comply with the Rule 24(c) requirement for a pleading is a 'purely technical' defect which does not result in the 'disregard of any substantial right.'" (quoting *Shores v. Hendy Realization Co.*, 133 F.2d 738, 742 (9th Cir. 1943))).  The FDIC-R's proposed motion to dismiss, attached hereto, clearly sets forth the grounds for which the FDIC-R seeks to intervene.

1

2                                    **<u>CONCLUSION</u>**

3          For the foregoing reasons, the FDIC-R respectfully requests that this Court grant the

4   FDIC-R's motion to intervene under Rule 24(a) or 24(b), and that this Court further grant the

5   FDIC-R leave to file its motion to dismiss.

6

7                                             Respectfully submitted,

8

9                                             /s/ Joshua H. Packman
                                              Joshua H. Packman
10                                            (703) 474-1435
                                              jpackman@fdic.gov
11                                            Federal Deposit Insurance Corporation
                                              3501 Fairfax Drive
12                                            Arlington, VA 22226

13

14                                            *Attorney for Federal Deposit Insurance*
                                              *Corporation as Receiver for First Republic Bank*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

1

## <u>CERTIFICATE OF SERVICE</u>

2          I, Joshua H. Packman, certify that on this 30th day of October 2023, I electronically filed a

3    copy of the foregoing NOTICE OF MOTION AND MOTION TO INTERVENE BY FEDERAL

4    DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK

5    AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, which

6    was made available for viewing and downloading via the Court's ECF system, and thereby

7    effected service upon all counsel of record.

8

9                              Respectfully submitted,

10

11                              /s/ Joshua H. Packman
                               Joshua H. Packman
12                             (703) 474-1435
                               jpackman@fdic.gov
13                             Federal Deposit Insurance Corporation
                               3501 Fairfax Drive
14                             Arlington, VA 22226

15

16                             *Attorney for Federal Deposit Insurance*
                               *Corporation as Receiver for First Republic Bank*

17

18

19

20

21

22

23

24

25

26

27

28

---

**FDIC-R'S MOTION TO INTERVENE—3:23-cv-2940-AMO     PAGE 19**