**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>    Defendants. | Case No. 3:23-cv-2940-AMO<br><br>**NOTICE OF MOTION AND MOTION TO INTERVENE BY FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>CLASS ACTION</u><br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Date: January 11, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 10 – 19th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

# Exhibit 2

**FEDERAL DEPOSIT INSURANCE CORPORATION**
**AS RECEIVER FOR FIRST REPUBLIC BANK**
Joshua H. Packman (D.C. Bar No. 1015463 admitted per Civil L.R. 11-2)
(jpackman@fdic.gov)
3501 Fairfax Drive
Arlington, VA 22226
Tel:   (703) 474-1435

*Counsel for Federal Deposit Insurance Corporation*
*as Receiver for First Republic Bank*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D SELFRIDGE, NEAL HOLLAND, and KPMG, LLP,<br><br>    Defendants. | Case No. 3:23-cv-2940-AMO<br><br>**[PROPOSED] NOTICE OF MOTION AND MOTION TO DISMISS BY FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>CLASS ACTION</u><br><br>Judge: Hon. Araceli Martínez-Olguín<br><br>Date: ___, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 10 – 19th Floor<br>450 Golden Gate Avenue,<br>San Francisco, CA 94102 |

1

**TABLE OF CONTENTS**

NOTICE OF MOTION..................................................................................1

PRELIMINARY STATEMENT ....................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.............................2

I.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL
HISTORY ...........................................................................2

     A.    The FDIC's Appointment as Receiver. ........................................2

     B.    The Mandatory FIRREA Claims Process....................................3

     C.    Neither Plaintiff Nor Any of the Movants Has Exhausted
the FIRREA Claims Process........................................................4

     D.    Plaintiff's Federal Securities Law Claims Depend on Her
Status as a Stockholder of the Bank and Relate to the Bank
and Its Assets, Including Acts or Omissions of the Bank. ...........4

     E.    Procedural History of this Case ...................................................4

II.    THE COURT SHOULD DISMISS THIS CASE BECAUSE
PLAINTIFF'S CLAIMS BELONG TO THE FDIC-R UNDER
FIRREA AND FOR LACK OF SUBJECT MATTER
JURISDICTION....................................................................5

     A.    Legal Standard. ...........................................................................6

     B.    This Court Should Dismiss Plaintiff's Complaint Because
Plaintiff's Claims Belong to the FDIC-R Under FIRREA's
Succession Clause........................................................................7

     C.    In the Alternative, This Court Should Dismiss Plaintiff's
Complaint for Lack of Subject Matter Jurisdiction Because
Plaintiff and Each of the Movants Have Failed to Exhaust
Administrative Remedies with the FDIC-R. ..............................11

CONCLUSION............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*,
   893 F. Supp. 2d 218 (D.D.C. 2012) ................................................................. 6, 10

*Am. W. Bank Members v. Utah*,
   2023 WL 4108352 (D. Utah June 21, 2023) ..................................................... 8, 6

*Ass'n of Am. Med. Colleges v. U.S.*,
   217 F.3d 770 (9th Cir. 2000) ............................................................................ 6, 7

*Benson v. JPMorgan Chase Bank, N.A.*,
   673 F.3d 1207 (9th Cir. 2012) ................................................................. 13, 14, 15

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ............................................................................................. 7

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*,
   438 U.S. 59 (1978) .............................................................................................. 11

*Henderson v. Bank of New England*,
   986 F.2d 319 (9th Cir. 1993) .............................................................................. 13

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) .............................................................................................. 6

*Lamar, Archer & Cofrin, LLP v. Appling*,
   138 S. Ct. 1752 (2018) .......................................................................................... 7

*Levin v. Miller*,
   763 F.3d 667 (7th Cir. 2014) .............................................................................. 10

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................ 11

*McCarthy v. FDIC*,
   348 F.3d 1075 (9th Cir. 2003) ................................................................. 12, 13, 15

*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*,
   28 F.3d 376 (3d Cir. 1994) ................................................................................. 12

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ............................................................................ 9, 10

*Ray Charles Foundation v. Robinson*,
   795 F.3d 1109 (9th Cir. 2015) ............................................................................ 11

*Rundgren v. Wash. Mut. Bank, FA*,
   760 F.3d 1056 (9th Cir. 2014) ................................................................................ 12

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*,
   343 F.3d 1036 (9th Cir. 2003) .................................................................................. 6

*Sharpe v. FDIC*,
   126 F.3d 1147 (9th Cir. 1997) ................................................................................ 12

*Stamm v. Paul*,
   121 F.3d 635 (11th Cir. 1997) ................................................................................ 12

*Stock West, Inc. v. Confederated Tribes of the Colville Reservation*,
   873 F.2d 1221 (9th Cir. 1989) .................................................................................. 6

*Verdi v. FDIC*,
   2023 WL 6388225 (C.D. Cal. Sept. 28, 2023) ...................................................... 13

*Whelan v. Abell*,
   953 F.2d 663 (D.C. Cir. 1992) ..................................................................... 6, 10, 11

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................................. 6

*Zucker v. Rodriguez*,
   919 F.3d 649 (1st Cir. 2019) .................................................................................... 8

**Statutes**

12 U.S.C. § 1821(c)(5) ................................................................................................. 2

12 U.S.C. § 1821(d) ..................................................................................................... 1

12 U.S.C. § 1821(d)(2)(A)(i) ............................................................................... Passim

12 U.S.C. § 1821(d)(2)(B)(ii) ...................................................................................... 9

12 U.S.C. § 1821(d)(3)–(13) ........................................................................... 3, 12, 10

12 U.S.C. § 1821(d)(5) ............................................................................................. 3, 4

12 U.S.C. § 1821(d)(6)(A) ............................................................................. 2, 3, 12, 15

§ 1821(d)(10)–(11) ...................................................................................................... 3

12 U.S.C. § 1821(d)(11)(A) ............................................................................... 3, 9, 10

12 U.S.C. § 1821(d)(12)(A) ...................................................................................... 14

12 U.S.C. § 1821(d)(13)(D) ................................................................................................... Passim

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................. Passim

Fed. R. Civ. P. 17 ...................................................................................................................... 1, 6

**Other Authorities**

H.R. Rep. No. 101-54, pt. I (1989) ................................................................................................ 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that on \_\_\_, 2024, at 2:00 p.m., in Courtroom 10 of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Federal Deposit Insurance Corporation ("FDIC"), an agency of the United States of America, in its capacity as Receiver for First Republic Bank ("FDIC-R"), will and hereby does move for an Order to dismiss the above-captioned action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and Local Rules 7-1, 7-2, and 7-4.  The Motion to Intervene is based upon this Notice, the Memorandum of Points and Authorities in support thereof, all other pleadings and records on file in this action, as well as such oral argument or other evidence that this Court may consider at the hearing of this Motion.

**PRELIMINARY STATEMENT**

The FDIC-R moves that this Court dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified as amended in the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d), on the grounds that (a) Plaintiff lacks standing under Federal Rule of Civil Procedure ("Rule") 17(a) because the FDIC-R owns the claims Plaintiff asserts and therefore Plaintiff fails to state a claim upon which relief can be granted; and, as an alternative basis for dismissal, that (b) the Court lacks subject matter jurisdiction over Plaintiff's claims for failure to exhaust the mandatory claims process under FIRREA (the "claims process").

On May 1, 2023, First Republic Bank ("First Republic" or the "Bank") was closed, and the FDIC was appointed as Receiver for the Bank, succeeding by operation of law to "all rights, titles, powers" of the Bank and of any Bank stockholder with respect to the Bank and the assets of the Bank.  *Id*. § 1821(d)(2)(A)(i) (the "Succession Clause").  The Plaintiff's securities law claims, and likewise the claims of each movant to appoint lead plaintiff and lead counsel (each a "Movant" and collectively, the "Movants"), depend entirely on their status as a Bank stockholder, and they concern the Bank and the assets of the Bank.  Under the Succession Clause, those claims therefore belong to the FDIC-R, and the Plaintiff and Movants lack standing as they are not the real-party-in-interest under Rule 17(a).  Accordingly, the Plaintiff's claims and the Movants' claims are not ones upon which relief can be granted.

In the alternative, even if Plaintiff and Movants did own the claims this Court would lack subject matter jurisdiction due to Plaintiff's and Movants' failures to exhaust the FIRREA claims process.  Congress created the FIRREA claims process as a comprehensive and mandatory administrative process to resolve claims involving FDIC receiverships efficiently.  12 U.S.C. § 1821(d)(13)(D), 1821(d)(6)(A).  To ensure that claimants do not circumvent that administrative claims process, FIRREA provides that no court shall have jurisdiction over "any claim relating to any act or omission of" a failed depository institution in FDIC receivership unless the claimant has first exhausted the FIRREA claims process.  *Id.* § 1821(d)(6), (d)(13)(D).  Here, the Plaintiff's claims, and the claims of each Movant,[1] all fall within the scope of FIRREA's jurisdictional bar because the claims are based upon the acts or omissions of First Republic committed by the Bank's directors, officers, and outside auditor.  Neither the Plaintiff nor any of the Movants has exhausted the FIRREA claims process—indeed, only two of the Movants even submitted claims to the FDIC-R in compliance with the FIRREA claims process.  The administrative claims filed by those two Movants are pending review by the FDIC-R, and the claims determination period will not expire until February 2024.

Accordingly, the FDIC-R respectfully moves that this Court dismiss this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

A.      The FDIC's Appointment as Receiver.

On May 1, 2023, the California Department of Financial Protection and Innovation closed First Republic, and appointed the FDIC as Receiver for First Republic, pursuant to 12 U.S.C. § 1821(c)(5).  Decl. of Peter L. Barter ¶ 3 & Ex. A, Oct. 30, 2023 (hereinafter "Barter Decl."), attached hereto as Exhibit 1.  The FDIC accepted appointment as Receiver for First Republic on the same date.  *Id.*

---

[1] For brevity, the FDIC-R will refer in its arguments herein to "Plaintiff's claims," but the FDIC-R raises each of its arguments equally with respect to the Movants' claims as well.

By operation of law, the FDIC-R succeeded to "all rights, titles, powers, and privileges" of First Republic, and of "any stockholder, member, accountholder, depositor, officer, or director of [First Republic] with respect to [First Republic] and the assets of [First Republic]."  12 U.S.C. § 1821(d)(2)(A)(i).

**B.      The Mandatory FIRREA Claims Process.**

FIRREA sets forth a mandatory administrative claims process that applies to all claims related to a failed depository institution in FDIC receivership or against the FDIC as receiver.  12 U.S.C. § 1821(d)(3)–(13).  To prevent claimants from bypassing the FIRREA claims process, FIRREA also strips courts of jurisdiction over such claims until the claimant has exhausted the administrative process.  *Id.* § 1821(d)(6)(A), (d)(13)(D).  After a claim is filed with the receiver, the receiver has 180 days to determine whether to allow or disallow the claim.  *Id.* § 1821(d)(5)(A)(i).  The receiver must allow any claim received on or before the claims bar date "which is proved to the satisfaction of the receiver."  *Id.* § 1821(d)(5)(B).  If the receiver allows a claim and if funds are available, the claim will be paid according to the required priority scheme. *Id.* § 1821(d)(10)–(11).  Under this statutory priority scheme, claims of shareholders are paid last. *Id.* § 1821(d)(11)(A)(v).  If the receiver disallows a claim, or the 180-day review period expires without action by the receiver, the claimant then has 60 days to sue for a de novo judicial determination of the claim.  *Id.* § 1821(d)(6)(A).

As part of the mandatory administrative claims process, the FDIC-R established September 5, 2023 as the "Claims Bar Date,"—*i.e.*, the deadline for filing any administrative claims related to First Republic.  Barter Decl. ¶ 4.  The FDIC-R prepared a Publication Notice to Creditors and Depositors of First Republic advising that administrative claims must be submitted to the FDIC-R by the Claims Bar Date.  *Id.* ¶ 5 & Ex. B.  That Publication Notice was published on May 8, 2023; June 9, 2023; and July 7, 2023, in the *Boston Globe*, the *Los Angeles Times*, the *New York Times*, the *San Francisco Chronicle*, and the *Wall Street Journal*.  *Id.* ¶ 6 & Ex. B.  In general, the FDIC-R must disallow any claims filed after the Claims Bar Date, and any such disallowance of a late claim will be final.  12 U.S.C. § 1821(d)(5)(C).

**C.      Neither Plaintiff Nor Any of the Movants Has Exhausted the FIRREA Claims Process.**

Plaintiff failed to submit an administrative claim to the FDIC-R, and only two of the Movants have done so: Movant Hal Collier filed an administrative claim with the FDIC-R on August 30, 2023, and movant Alecta Tjänstepension Ömsesidigt (ATO) filed an administrative claim with the FDIC-R on September 5, 2023.  Barter Decl. ¶¶ 7, 9–11.  To date, the FDIC-R has made no determination regarding the administrative claims filed by Collier or by ATO, and those claims are currently pending review.  *Id.* ¶¶ 12–13.  The 180-day statutory claims determination period for those claims will expire on February 26 and March 4, 2024, respectively.  12 U.S.C. § 1821(d)(5)(A).

**D.      Plaintiff's Federal Securities Law Claims Depend on Her Status as a Stockholder of the Bank and Relate to the Bank and Its Assets, Including Acts or Omissions of the Bank.**

On June 14, 2023, Plaintiff, on behalf of a proposed class of stockholders, filed this lawsuit against certain former directors and officers of First Republic and First Republic's outside auditor, KPMG, LLP, alleging violations of federal securities laws.  The Plaintiff's' claims relate to—indeed, depend on—alleged false statements and misrepresentations by the Bank and by the director and officer defendants in their roles as directors and officers of the Bank, and by KPMG in its role as an agent of the Bank.  Plaintiff named neither the Bank nor the FDIC-R in the Complaint, but Plaintiff based her claims upon alleged false or misleading statements or omissions by the Bank, the Bank's directors and officers, and KPMG in the Bank's press releases, the Bank's public securities filings, the Bank's earnings calls, and the Bank's public investor events, Compl. ¶¶ 35–48, 51–65, 69, 71–73, 75–81, 85–86, 88–89, as well as allegedly false or misleading statements by Bank directors and officers at public conferences concerning the Bank, the Bank's assets, and the Bank's financial condition, Compl. ¶¶ 49–50, 66–67, 74.

**E.      Procedural History of this Case**

As noted above, Plaintiff filed this lawsuit on June 14, 2023.  Subsequently, eight motions for appointment of lead plaintiff and lead counsel were filed in this action on June 23, 2023,

1  including by plaintiffs in the parallel *Alcorn* and *Collier* cases.  Pursuant to this Court's July 7,

2  2023 Order (ECF No. 45), this Court scheduled a hearing on the motions for appointment of lead

3  plaintiff and lead counsel, which is currently set on November 8, 2023.

4         On August 4, 2023, the FDIC-R sent a letter to counsel for the named Plaintiff and each of

5  the Movants requesting that they voluntarily dismiss their claims because the claims belong to the

6  FDIC-R and because, even if the claims do not belong to the FDIC-R, this Court lacks subject

7  matter jurisdiction unless each claimant first individually exhausts administrative remedies with

8  the FDIC-R.  Barter Decl. ¶¶ 7–8 & Ex. C.  Subsequently, on August 16 and 17, the named

9  plaintiffs in the related *Alcorn* and *Collier* cases voluntarily dismissed those actions in favor of the

10  motions to appoint lead plaintiff and lead counsel that they had filed in this case.  On August 30,

11  2023, this Court entered a Stipulation and Scheduling Order (ECF No. 65) confirming the

12  November 8 hearing on the pending motions to appoint lead plaintiff and lead counsel and setting

13  a schedule for the Court-appointed Lead Plaintiff to meet and confer with Defendants regarding a

14  schedule for filing of an amended or consolidated complaint and any responses thereto.

15  **II.     THE COURT SHOULD DISMISS THIS CASE BECAUSE PLAINTIFF'S CLAIMS**

16  **         BELONG TO THE FDIC-R UNDER FIRREA AND FOR LACK OF SUBJECT**

17  **         MATTER JURISDICTION.**

18         This Court should dismiss Plaintiff's complaint for failure to state a claim under Fed. R.

19  Civ. P. 12(b)(6) because the FDIC-R has succeeded to Plaintiff's claims by operation of law under

20  FIRREA.  As a result, the Plaintiff and the Movants each lack standing under Rule 17(a) because

21  they are not the real-party-in-interest and therefore cannot state claims upon which relief can be

22  granted.  As an alternative basis for dismissal, this Court should dismiss Plaintiff's complaint for

23  lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiff and each of the

24  Movants have failed to exhaust administrative remedies with the FDIC-R, which deprives this

25  Court of jurisdiction pursuant to FIRREA.  *See* 12 U.S.C. § 1821(d)(13)(D).

26

27

28

### A.     Legal Standard.

#### 1.     Real Party in Interest

Rule 17(a)(1) states that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1).  "Rule 17(a)(1) . . . essentially codifies" the portion of the prudential standing doctrine that "encompasses . . . the general prohibition on a litigant's raising another person's legal rights." *Am. W. Bank Members v. Utah,* Case No. 2:16-CV-326, 2023 WL 4108352, at *4 n.3 (D. Utah June 21, 2023) (cleaned up).  The real-party-in-interest principle is a means to identify the person who possesses the right sought to be enforced.  6A Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 1541 (3d ed. 2010). "[A] real-party-in-interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has failed to state a claim upon which relief can be granted."  *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (cleaned up); *Am. Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 232 (D.D.C. 2012) (granting Rule 12(b)(6) motion to dismiss bondholder claims against failed institution pursuant to Rule 17(a) where such claims belonged to FDIC as receiver).

#### 2.     Subject Matter Jurisdiction

A plaintiff always bears the burden of establishing subject matter jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise.  *Kokkonen*, 511 U.S. at 377; *Stock West*, 873 F.2d at 1225.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A motion challenging a court's subject matter jurisdiction can be either "facial" and limited to the allegations of the complaint, or "factual" and requiring the court to look beyond the underlying complaint.  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039–40 n. 2 (9th Cir. 2003); *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). For a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the moving party may submit affidavits or other evidence.  *See Ass'n of Am. Med. Colleges v. U.S.*, 217 F.3d 770, 778 (9th Cir.

2000).  Once the moving party presents evidence that the court lacks jurisdiction, the party

opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden

of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* (cleaned up).  If

the opposing party fails to meet this burden, the court must dismiss the action for lack of subject

matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).

> **B.**     **This Court Should Dismiss Plaintiff's Complaint Because Plaintiff's Claims**
>
> **Belong to the FDIC-R Under FIRREA's Succession Clause.**

Under FIRREA's Succession Clause, 12 U.S.C. § 1821(d)(2)(A)(i), upon its appointment

as receiver for First Republic the FDIC-R succeeded "by operation of law" to "all rights, titles,

powers, and privileges of the insured depository institution [*i.e.*, First Republic], and of any

stockholder [of First Republic] . . . with respect to [First Republic] and the assets of [First

Republic]."  Under this Succession Clause, the FDIC-R owns all the claims that Plaintiff and the

Movants have attempted to assert in this action because they are rights of Bank stockholders that

relate to the Bank and the assets of the Bank.  This result follows from a plain reading of the

statute.  First, the Plaintiff asserts that her claims arise from her status as a stockholder of First

Republic.  Compl. ¶¶ 19, 23; *cf. Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731–33,

749 (1975) (limiting standing to assert claims under § 10(b) of the Exchange Act and Rule 10b-5

to actual purchasers and sellers of the security at issue).  Second, Plaintiff asserts claims "with

respect to" First Republic and its assets because the claims concern or relate to First Republic and

First Republic's assets.  *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759

(2018) ("As a matter of ordinary usage, 'respecting' means 'in view of: considering; with regard

or relation to: regarding; concerning.'").  Specifically, Plaintiff's claims are based upon statements

that the Bank, through its former directors and officers, and that KPMG made concerning the

Bank, *e.g.*, Compl. ¶ 35 (press release regarding First Republic's financial results and comments

by then-Chairman and -CEO James H. Herbert, II, regarding First Republic's "safe, consistent

growth"), and the Bank's assets, *e.g.*, *id.* ¶ 36 (statement by First Republic's then-President Hafize

Gaye Erkan in a First Republic earnings conference call regarding First Republic's "diversified

deposit funding base").  The statements that Plaintiff alleges were false or misleading appeared in

the Bank's press releases, *id.* ¶¶ 35, 41, 44, 47, 51, 58, 62, 75, 85–86, 88–99, in the Bank's public securities filings, *id.* ¶¶ 35, 37–40, 47, 51, 54–58, 62, 75, 78–81, 85, 88–89, during the Bank's earnings conference calls and public investor events, *id.* ¶¶ 36, 42–43, 45–46, 48, 52–53, 59–61, 63–65, 71–73, 76–77, and during speeches by the Bank's directors and officers at public financial industry conferences, *id.* ¶¶ 49–50, 66–67, 74. Because the alleged false statements and misrepresentations upon which Plaintiff bases her claims were statements made *by* First Republic or its agents and were statements *about* First Republic and its assets, it is beyond dispute that Plaintiff's claims are "with respect to" First Republic and its assets.

The First Circuit's decision in *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), is instructive. In *Zucker*, the bankruptcy trustee for holding company R&G Financial Corporation brought claims arising out of the failure of its subsidiary, R-G Premier Bank of Puerto Rico, which had been placed into FDIC receivership. *Id.* at 650–54. The First Circuit held that the bankruptcy trustee's claims on behalf of the holding company were owned by the FDIC as Receiver because, like Plaintiffs' claims here, the claims "depend[ed] entirely on the [claimant's] position as a Bank stockholder" and further "depend[ed] on the [claimant] proving that malfeasance by [the Bank's] directors depressed the Bank's assets," which "means that the claims relate to or concern the assets of the Bank." 919 F.3d at 656; *see also Am. W. Bank Members v. Utah*, No. 2:16-CV-326, 2023 WL 4108352, at *5-8 (D. Utah June 21, 2023) (following *Zucker*). As in *Zucker*, Plaintiff's claims here are brought based on her status as a First Republic stockholder and concern or relate to both First Republic and its assets. Compl. ¶¶ 35–48, 51–65, 67–90. Accordingly, as the First Circuit held in *Zucker*, Plaintiff's claims belong to the FDIC-R under the plain meaning of 12 U.S.C. § 1821(d)(2)(A)(i).

Moreover, as the Ninth Circuit has recognized, the transfer of the Plaintiff's claim (among others) to the FDIC-R is central to the comprehensive statutory scheme that Congress established in FIRREA. The comprehensive scheme established in FIRREA is "designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." H.R. Rep. No. 101-54, pt. I, at 330 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 126. Two aspects of that comprehensive scheme pertinent here are (1) the transfer of rights, including

legal claims, into the hands of the FDIC as Receiver via the Succession Clause; and (2) a fair and consistent scheme for the Receiver to resolve claims against the failed bank.  The Ninth Circuit explained the scheme as follows:

> Part of [FIRREA's] statutory mosaic vested great power in the FDIC, and that included giving it all of the rights, powers, and privileges of the failing institutions, their depositors, account holders, officers, directors, and stockholders.  In fine, all of the accouterments of ownership were gathered into the hands of a single entity so that it would be in a position to develop a consistent approach to dealing with the institution's various problems.

*Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998).  Stated differently, the FDIC's powers as a Receiver, including the Succession Clause, enable the FDIC-R to address claims against a failed bank efficiently and to ensure that all claimants are treated fairly and consistently.  For example, in order to pay valid obligations and claims against a failed depository institution, the FDIC-R succeeds to the institution's "rights, titles, powers, and privileges," *id.* § 1821(d)(2)(A)(i), and is further empowered, among other things, to "collect all obligations and money due the institution," *id.* § 1821(d)(2)(B)(ii), including by conducting investigations and filing suit on claims belonging to the failed depository institution, *see id.* §§ 1819(a) (authority to sue), 1821(d)(2)(I) (administrative subpoena authority), 1821(d)(2)(J) (authority to exercise all powers granted to receivers or authorized by the Federal Deposit Insurance Act which the FDIC-R determines to be in the best interest of the institution, its depositors, or the FDIC), 1821(d)(12)–(14), (17)–(19) (powers of the FDIC-R with respect to litigation).  By gathering claims and assets into the Receivership estate, the FDIC-R can then ensure that claims against the failed bank are paid out fairly and consistently in accordance with the priority scheme that Congress established.  *See* 12 U.S.C. § 1821(d)(11)(A) (requiring that "amounts realized from the liquidation or other resolution of any insured depository institution by any receiver . . . shall be distributed to pay claims" (after paying administrative expenses) first to pay the institution's deposit liabilities, then to pay "general or senior" liabilities, then to pay "any obligation subordinated to depositors or general creditors," and finally to pay "any obligation to shareholders . . . arising as a result of their status as shareholders").

       If individual claimants could each pursue their own claims against a failed bank in separate forums, it would severely frustrate Congress's goal of providing an expeditious and orderly

resolution for claims against a failed bank: among other things, this would frustrate the FIRREA claims process, force the FDIC to spend receivership resources competing against other stakeholders, and would reward those claimants who can bring their claims the fastest, which may be to the detriment of other claimants and may be in contravention of the of the payment priority scheme that Congress required the FDIC-R to follow. FIRREA's statutory scheme "helps assure the expeditious and orderly protection of *all* who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d at 700 (emphasis added). In this way, the Succession Clause, 12 U.S.C. § 1821(d)(2)(A)(i), the FIRREA claims process, *id.* § 1821(d)(3)–(13), and the priority scheme, *id.* § 1821(d)(11)(A), work together and should be read together. Congress transferred to the FDIC as receiver all claims of stockholders, members, accountholders, depositors, officers, and directors of a failed bank with respect to the bank and the assets of the bank, *id.* § 1821(d)(2)(A)(i), and Congress then mandated through FIRREA's payment priority scheme that claims of stockholders are paid last, *id.* § 1821(d)(11)(A). Accordingly, lawsuits like the Plaintiff's, if permitted to proceed, would contravene the careful priority scheme that Congress mandated by allowing a stockholder to be paid ahead of other claimants. *See Pareto*, 139 F.3d at 701 (noting that "we are in no position to second guess Congress's choice" of how claimants are prioritized); *see Levin v. Miller*, 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring) ("[A]llowing [the holding company for the failed bank] any prospect of recovery ahead of or on par with the FDIC turns the equities upside down.").

Consistent with the other elements of FIRREA's scheme for resolving claims related to failed banking institutions, Plaintiff's claims asserted here belong to the FDIC-R under the Succession Clause, 12 U.S.C. § 1821(d)(2)(A)(i). Plaintiff is therefore not the real party in interest under Rule 17(a), and her complaint therefore does not state a claim on which relief can be granted. *See Whelan v. Abell*, 953 F.2d 663, 671–73 (D.C. Cir. 1992); *Am Nat'l Ins. Co. v. JPMorgan Chase & Co.*, 893 F. Supp. 2d 218, 232 (D.D.C. 2012) (dismissing bondholder claims against a failed depository institution pursuant to Rule 17(a) where such claims belonged to FDIC as receiver). As the Supreme Court has recognized in discussing prudential standing, "[t]here are

good and sufficient reasons for this prudential limitation on standing when rights of third parties are implicated—the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them." *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978); *Whelan*, 953 F.2d at 672 ("Standing and real-party-in-interest questions do overlap to the extent that both ask whether the plaintiff has a personal interest in the controversy.").[2]  The concerns that the Supreme Court identified are especially relevant here given (1) the FDIC-R's investigation of claims regarding First Republic Bank, including possible claims against the defendants named in this lawsuit; and (2) that allowing Plaintiff's claims to continue would impair the FDIC-R's ability to bring its claims in the manner it considers most expedient, least costly, and most likely to maximize returns for the creditors of First Republic.  Accordingly, because the claims here belong to the FDIC-R under FIRREA's Succession Clause, 12 U.S.C. § 1821(d)(2)(A)(i), Plaintiff is not the real party in interest for those claims, and the Plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and 17(a).

C.     **In the Alternative, This Court Should Dismiss Plaintiff's Complaint for Lack of Subject Matter Jurisdiction Because Plaintiff and Each of the Movants Have Failed to Exhaust Administrative Remedies with the FDIC-R.**

1.     **FIRREA Requires Each Claimant to Exhaust Administrative Remedies Before Suing on Any Claims Relating to Any Act or Omission of First Republic.**

A plaintiff must exhaust the mandatory administrative claims process for claims either (1) against a failed depository institution or the FDIC as receiver or (2) relating to any act or omission

---

[2]     As the Ninth Circuit explained in *Ray Charles Foundation v. Robinson*, 795 F.3d 1109 (9th Cir. 2015), "the third-party-standing doctrine continues to remain in the realm of prudential standing" because the Supreme Court's opinion in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), "removed the zone-of-interests inquiry from the prudential standing doctrine" but "did not pertain to third-party standing."  795 F.3d at 1118–19 n.9.

of the failed depository institution or the FDIC as receiver.  *See* 12 U.S.C. § 1821(d)(13)(D).

Here, the Plaintiff and the Movants have not done so, and thus this Court does not have subject

matter jurisdiction.  Accordingly, this Court should dismiss Plaintiff's complaint for lack of

subject matter jurisdiction.

"In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities,

the [FDIC] would face numerous claims from various parties."  *Stamm v. Paul*, 121 F.3d 635, 639

(11th Cir. 1997).  Thus, "[o]ne of the important goals of FIRREA is to enable the receiver to

efficiently determine creditors' claims and preserve assets of the failed institution without being

burdened by complex and costly litigation."  *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d

376, 388 (3d Cir. 1994).  To that end, FIRREA establishes a mandatory administrative claims

process, codified at 12 U.S.C. § 1821(d)(3)–(13).  *See supra* Section I.B.

To ensure claimants do not bypass the administrative claims process, Congress also

included a jurisdictional bar in FIRREA.  As the Ninth Circuit has recognized, "FIRREA strips

courts of jurisdiction over claims that have not been exhausted through [the administrative claims]

process."  *Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1060-61 (9th Cir. 2014).

Specifically, FIRREA provides as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over . . .
> (i) any claim or action for payment from, or any action seeking a determination of rights
> with respect to, the assets of any depository institution for which the [FDIC] has been
> appointed receiver, . . . ; or (ii) any claim relating to any act or omission of such institution
> or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D).  As the Ninth Circuit has explained, "[t]he phrase 'except as

otherwise provided in this subsection' refers to a provision that allows jurisdiction after the

administrative claims process has been completed."  *McCarthy v. FDIC*, 348 F.3d 1075, 1078 (9th

Cir. 2003) (citing *Sharpe v. FDIC*, 126 F.3d 1147, 1156 (9th Cir. 1997); 12 U.S.C.

§ 1821(d)(6)(A)).  Thus, all courts lack subject matter jurisdiction over unexhausted claims that

fall within either subsection of section 1821(d)(13)(D), and they should be dismissed.  *Rundgren

v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1060-61 (9th Cir. 2014) ("FIRREA strips courts of

jurisdiction over claims that have not been exhausted through this process.").  Courts in this

Circuit have consistently held that a claimant must first exhaust the mandatory administrative

1    claims process before seeking judicial review of any claim within the scope of section

2    1821(d)(13)(D).  *See, e.g.*, *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1211 (9th Cir.

3    2012) ("FIRREA requires that a plaintiff exhaust these administrative remedies with the FDIC

4    before filing certain claims."); *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir.

5    1993) ("The statute bars judicial review of any non-exhausted claim, monetary or nonmonetary,

6    which is 'susceptible of resolution through the claims procedure.'"); *McCarthy*, 348 F.3d at 1079

7    (same).

8         The Ninth Circuit's decision in *Benson* is instructive.  In that case, investors defrauded by

9    the "Millennium Ponzi scheme" sought recourse against JPMorgan Chase Bank ("Chase"), which

10   had purchased assets and liabilities of Washington Mutual Bank ("WaMu") from the FDIC as

11   Receiver after WaMu had failed and been placed into FDIC receivership.  673 F.3d at 1208–09.

12   Specifically, the plaintiffs alleged that WaMu had aided and abetted the Ponzi scheme and that

13   Chase was liable as successor to WaMu.  *Id.*  The district court dismissed the plaintiffs' claims for

14   failure to exhaust under FIRREA.  *Id.* at 1209.  On appeal to the Ninth Circuit, the plaintiffs

15   argued that their claims were not subject to FIRREA's administrative exhaustion requirement

16   because the claims were not against the failed bank—WaMu—or the FDIC as Receiver.  *Id.*  The

17   Ninth Circuit roundly rejected plaintiffs' argument.  *See id.* ("Litigants cannot avoid FIRREA's

18   administrative requirements through strategic pleading.").  As the court explained, the plaintiffs'

19   claims were barred under the plain text of 12 U.S.C. § 1821(d)(13)(D)(ii), which "distinguishes

20   claims on their factual bases rather than on the identity of the defendant: It asks whether the claims

21   'relate to any act or omission' of a failed institution or the FDIC."  *Id.* at 1212.  Specifically, "[b]y

22   relying on WaMu's alleged wrongdoing, plaintiffs' claims plainly 'relat[e] to any act or omission'

23   of 'a depository institution for which the [FDIC] has been appointed receiver.'  § 1821(d)(13)(D).

24   And because plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally

25   barred by FIRREA."  *Id.* at 1215; *see also Verdi v. FDIC*, No. 8:23-cv-1206-JVS (KESx), 2023

26   WL 6388225, at *6 (C.D. Cal. Sept. 28, 2023) ("Where the claims relate to an act or omission of

27   an institution under the receivership of the FDIC, the court lacks jurisdiction prior to

28   administrative exhaustion—no matter the defendant.").

1    Plaintiff's claims here are no different.  As the basis for her claims, Plaintiff relies on

2  statements by the Bank in press releases, earnings calls, and public securities filings that she

3  alleges were materially false or misleading.  *See* Compl. ¶¶ 35–48, 51–65, 67–90.  Moreover,

4  Plaintiff's claims under § 20(a) of the Exchange Act make clear that alleged misrepresentations by

5  the Bank are the real basis of her claims.  *See, e.g.*, Compl. ¶ 127 ("As described above, the

6  Company[, i.e., First Republic,] and the Individual Defendants each violated Section 10(b) of the

7  Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By

8  virtue of their positions as controlling persons, the Individual Defendants are liable under Section

9  20(a) of the Exchange Act.").  By her own admissions, Plaintiff's claims plainly "relat[e] to any

10  act or omission" of the Bank.  Indeed, the substantive allegations of Plaintiff's complaint, and the

11  alleged false statements, misrepresentations, and omissions on which Plaintiff's complaint relies,

12  are identical to those alleged in a prior securities lawsuit against **First Republic**.  *See City of

13  Hollywood Police Officers' Retirement System v. First Republic Bank*, No. 3:23-cv-1993-HSG

14  (N.D. Cal.).[3]  Even though First Republic failed before the Plaintiff filed her Complaint, and even

15  though the Plaintiff copied the substantive allegations of her complaint from a prior complaint

16  *against* First Republic, the Plaintiff did not name the FDIC-R, the Bank's statutory successor-in-

17  interest, as a defendant in her complaint.  Plaintiff's word-for-word copying of a complaint from a

18  prior case against First Republic, with the sole change of removing First Republic or the FDIC-R

19  from the complaint as defendants, shows Plaintiff's complaint to be precisely the kind of strategic

20  pleading to circumvent FIRREA that the Ninth Circuit rejected in *Benson*.  673 F.3d at 1209.

21  Accordingly, like the plaintiffs in *Benson*, Plaintiff must first exhaust her claims with the FDIC-R

22  before this Court can exercise jurisdiction over them.

23

24  _____

25  [3] In that case, the FDIC-R substituted as a defendant after it was appointed as Receiver for First
   Republic, moved for a stay pursuant to 12 U.S.C. § 1821(d)(12)(A), and indicated that it would

26  move to dismiss the case because it had succeeded to the claims at issue in that case by operation
   of law.  After the court granted the FDIC-R's motion for a stay on June 13, 2023, the plaintiff

27  voluntarily dismissed that case on June 16, 2023.  The Plaintiff's lawsuit was filed one day after
   this Court granted the FDIC-R's motion to stay the *City of Hollywood* case and two days before

28  the plaintiff in that case voluntarily dismissed it.

**2.    Neither Plaintiff Nor Any of the Movants Has Exhausted the FIRREA Administrative Claim Process.**

This Court lacks subject matter jurisdiction over Plaintiff's complaint because the Plaintiff has not exhausted the administrative claims process under FIRREA.  For that matter, this Court likewise lacks subject matter jurisdiction over the Movants' claims because none of the Movants has exhausted FIRREA's administrative claims process.  Indeed, Plaintiff failed even to file any administrative claim with the FDIC-R prior to the published claims bar date, Barter Decl. ¶¶ 7, 11, and thus, her claims are jurisdictionally barred.  12 U.S.C. § 1821(d)(6), (d)(13)(D)(ii); *see also Benson*, 673 F.3d at 1215 ("[B]ecause plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally barred by FIRREA.").  With the exceptions of Hal Collier and ATO, the Movants each also failed to file any administrative claim with the FDIC-R prior to the published claims bar date, Barter Decl. ¶¶ 7, 9–11, and accordingly their claims are likewise jurisdictionally barred.  Accordingly, the court should dismiss those claims for lack of subject matter jurisdiction.

Further, this Court lacks jurisdiction over the claims of the two Movants that did file administrative claims with the FDIC-R because those claims are not yet ripe for judicial review.  Collier filed his administrative claim with the FDIC-R on August 30, 2023, and ATO filed its administrative claim with the FDIC-R on September 5, 2023, but the FDIC-R has not yet made any determination on those claims and they remain pending review.  Barter Decl. ¶¶ 9–10, 12–13.  Under FIRREA, the administrative process is not exhausted until the FDIC-R provides a notice of disallowance with respect to those claims or 180 days pass since the claims were filed with the FDIC-R.  12 U.S.C. § 1821(d)(6)(A); *McCarthy*, 348 F.3d at 1078.  Because the administrative claims filed by Collier and ATO remain pending review and 180 days have not yet passed since the filing of those claims, neither Movant has exhausted the administrative claims process for their claims, and the claims are unripe for this Court's review.

Accordingly, this Court should dismiss the Plaintiff's complaint for failure to exhaust administrative remedies under FIRREA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

For the foregoing reasons, the FDIC-R respectfully requests that this Court dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted,

/s/ Joshua H. Packman
Joshua H. Packman
(703) 474-1435
jpackman@fdic.gov
Federal Deposit Insurance Corporation
3501 Fairfax Drive
Arlington, VA 22226

*Attorney for Federal Deposit Insurance Corporation as Receiver for First Republic Bank*

1

## **CERTIFICATE OF SERVICE**

2          I, Joshua H. Packman, certify that on this ___th day of ___ 2023, I electronically filed a

3   copy of the foregoing NOTICE OF MOTION AND MOTION TO DISMISS BY FEDERAL

4   DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK

5   AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF, which

6   was made available for viewing and downloading via the Court's ECF system, and thereby

7   effected service upon all counsel of record.

8

9                                    Respectfully submitted,

10
                                     /s/ Joshua H. Packman
11                                   Joshua H. Packman
                                     (703) 474-1435
12                                   jpackman@fdic.gov
                                     Federal Deposit Insurance Corporation
13                                   3501 Fairfax Drive
                                     Arlington, VA 22226
14

15
                                     *Attorney for Federal Deposit Insurance*
16                                   *Corporation as Receiver for First Republic Bank*

17

18

19

20

21

22

23

24

25

26

27

28