UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA KUSEN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>JAMES H. HERBERT, II, et al.,<br><br>    Defendants. | Case No. 23-cv-02940-AMO<br><br>**ORDER RE MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 15, 26, 35 |

Before the Court are three competing applications for appointment of lead plaintiff and lead counsel. ECF 15, 26, 35.[1] The motions are fully briefed and suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the parties' papers, the relevant legal authority, and good cause appearing, the Court GRANTS Alecta Tjänstepension Ömsesidigt's motion for appointment as lead plaintiff and approves its selection of Kessler Topaz Meltzer & Check, LLP and Bernstein Litowitz Berger & Grossmann LLP as lead counsel. The Court DENIES the remaining motions.

## I. BACKGROUND

This is a federal securities class action on behalf of persons and entities who purchased or acquired First Republic Bank securities between January 14, 2021, through May 1, 2023.[2] ECF 1

---

[1] All ECF references are to the filings in the above-captioned case unless otherwise indicated.

[2] The competing plaintiffs propose different class periods. Alecta and the First Republic Investor Group agree that the broadest possible period – January 14, 2021, through May 1, 2023 – should govern, while Singh proposes a slightly shorter period – January 14, 2023, through April 27, 2023. *See* ECF 15 at 6 n.2; ECF 26 at 6 n.2; ECF 35 at 5 n.1. The Court adopts the longer class period for the purposes of appointing lead counsel but does not otherwise resolve any dispute as to which class period is appropriate in this litigation going forward. *See Ali v. Intel Corp.*, No. 18-cv-00507-YGR, 2018 WL 2412111, at *2 & n.6 (N.D. Cal. May 29, 2018) (applying the longest class

¶¶ 1, 35. On May 1, 2023, the California Department of Financial Protection and Innovation announced that it had taken over First Republic and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. *Id.* ¶¶ 17, 34, 106. The FDIC then accepted a bid from JPMorgan "to assume all deposits, including all uninsured deposits, and substantially all assets of First Republic Bank." *Id.* ¶¶ 17 106. Plaintiffs allege that certain First Republic executives, and First Republic's auditor, KPMG, LLP, violated the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. *Id.* ¶¶ 24-33, ¶¶ 120-123, ¶¶ 124-127.

On June 23, 2023, eight competing applicants filed motions seeking appointment as lead plaintiff and approval of their selection of counsel.[3] ECF 7, 12, 13, 15, 23, 26, 32, 35. One of those applications has since been withdrawn. *See* ECF 40. Other applications were followed by notices of non-opposition based on the fact that other movants appear to have a larger financial interest in the litigation.[4] *See* ECF 42, 43, 44, 47. The remaining applicants filed responses to the pending motions on July 7, 2023. ECF 48, 49, 50. Their replies followed on July 14, 2023. ECF 51, 52, 54.

Alecta Tjänstepension Ömsesidigt, Singh, and the First Republic Investor Group are now the only three movants competing for appointment as lead plaintiff and approval of their chosen counsel. *See* ECF 15, 26, 35. Alecta was founded in 1917 and is headquartered in Stockholm, Sweden. ECF 27-3 ¶ 2. It "manages the pensions for 2.6 million private individuals and 35,000 companies in Sweden." *Id.* As of December 31, 2022, Alecta manages approximately has $103 billion in assets. *Id.* Singh is self-employed and operates a garage management company, a commercial property management company, a real estate development business, and a dental

---

period for purposes of appointing counsel but declining to rule on whether the shorter class period was appropriate for the consolidated action).

[3] To the extent the motions seek consolidation, the Court denies them as moot. The three previously filed actions identified by the parties as necessitating consolidation – *City of Hollywood Police Officers Retirement System v. First Republic Bank*, No. 23-cv-01993 (N.D. Cal. Apr. 24, 2023), *Alcorn v. First Republic Bank*, No. 23-cv-03013 (N.D. Cal. June 20, 2023), and *Collier v. First Republic Bank*, 23-cv-03096 (N.D. Cal. June 22, 2023), have been dismissed. *See City of Hollywood* ECF 17; *Alcorn* ECF 13; *Collier* ECF 13.

[4] As such, these motions are deemed withdrawn.

2

practice. ECF 35-6 ¶ 2. His investment experience consists of the 20 years he has spent managing his own investment portfolio. *Id.* ¶ 4. Philippe D. Katz, Terumah Foundation, the United Equities Commodities Co., 111 John Realty Corp., and Marneu Holding Co. comprise the First Republic Investor Group. ECF 15-2 ¶ 1. "Terumah is a private charitable foundation under IRS section 501(c)(3)." ECF 15 at 16. "United Equities, invests in publicly traded debt and equities, as well as other non-public investments," as does Marneu Holding Co. *Id.* "111 John is a company that principally invests in real estate." *Id.* "Each of these entities are controlled in relevant part by [Moses] Marx and his son-in-law, Katz.[5] Katz serves as the Secretary of 111 John and Terumah, and as a Partner of both Marneu and United Equities." *Id.*

The Court must now appoint Alecta, Singh, or the First Republic Investment Group to act as lead plaintiff in this action and decide whether to approve the appointed lead plaintiff's chosen counsel as lead counsel.

## II.     LEGAL STANDARDS

### A.     Appointment of Lead Plaintiff

The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, sets forth a three-step process for appointing a lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "In step one, notice of the action must be posted so purported class members can move for lead plaintiff appointment." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (citing § 78u-4(a)(3)(A)(i)(I)-(II)).

At the second step, "the district court must determine which movant is the 'most adequate plaintiff,' which is defined as the plaintiff 'most capable of adequately representing the interests of class members.'" *Id.* (citing § 78u-4(a)(3)(B)(i)). In making this determination, the court must apply "'a presumption that the most adequate plaintiff' is the movant with the largest financial interest who 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'" *Id.* (citing § 78u-4(a)(3)(B)(iii)(I)). The court "must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of

---

[5] Katz is pursuing this litigation on behalf of himself and his faither-in-law, Marx, who has assigned his claims. ECF 15 at 6 n.1; ECF 15-3 at 2.

3

adequacy and typicality." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730 & n.5). "[T]he movant with the largest stake . . . [who] has made a prima facie showing of adequacy and typicality . . . 'becomes the presumptively most adequate plaintiff.'" *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730). But, if the movant with the largest alleged losses "does not satisfy the Rule 23 requirements, the district court must then look to the movant with the next largest losses and repeat the inquiry." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730). At this stage, "the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730).

"[T]he process 'turns adversarial'" at step three. *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730). "The third step . . . give[s] other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *In re Cavanaugh*, 306 F.3d at 730 (citing § 78u-4(a)(3)(B)(iii)(II)). "The presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Mersho*, 6 F.4th at 899 (citing § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb) (modifications in original)). "The statute requires proof that the presumptive lead plaintiff is not adequate." *Id.* The presumption may not "be set aside for any reason that the court may deem sufficient." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 729 n.2). "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Id.* (citing § 78u-4(a)(3)(B)(i)).

**B.  Appointment of Lead Counsel**

Under the PSLRA, the Court must also appoint lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."). "While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff." *In re Cavanaugh*, 306 F.3d at 734 (citing § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001)). "[I]f the lead plaintiff has made a reasonable choice of

4

1    counsel, the district court should generally defer to that choice." *Cohen v. U.S. Dist. Ct., N. Dist.*

2    *of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) (citing *In re Cendant*, 264 F.3d at 276).

3    **III.    DISCUSSION**

4           **A.    Appointment of Lead Plaintiff**

5                 1.    <u>Step One</u>

Under the first step of the relevant framework, the PSLRA requires "publi[cation of] the pendency of the action, the claims made and the purported class period." *In re Cavanaugh*, 306 F.3d at 729 (citing § 78u-4(a)(3)(A)). The plaintiff in the first-filed action "must post this notice 'in a widely circulated national business-oriented publication or wire service.'" *Id.* (citing § 78u-4(a)(3)(A)(i)). Publication is required "[n]ot later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice "must also state that 'any member of the purported class may move the court to serve as lead plaintiff.'" *In re Cavanaugh*, 306 F.3d at 729 (citing § 78u-4(a)(3)(A)(i)(II)). Those applications must be filed "not later than 60 days after the date on which the notice is published." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Here, the parties agree that the statutory 20-day period for publishing a notice to investors commenced upon the filing of the now-dismissed *City of Hollywood* action, No. 23-cv-01993, filed on April 24, 2023.[6] *See* ECF 15 at 16; ECF 26 at 14 n.5; ECF 35 at 7-8. The plaintiff in the *City of Hollywood* litigation published the notice the same day the case was filed: April 24, 2023. *See* ECF 15-5; ECF 27-4; ECF 35-8. No party disputes that the publication of the required notice was timely, *see generally* ECF 15, 26, 35, 48, 49, 50, 51, 52, 54, and the Court finds that the notice was published within the time set by statute.

In order to be timely, the instant motions for appointment of lead plaintiff and lead counsel needed to be filed no later than June 23, 2023. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (requiring motions be filed within 60 days of the notice's publication). Alecta, the First Republic Investor Group, and Singh each filed their competing motions for appointment of lead plaintiff and lead counsel on that day. *See* ECF 15, 26, 35. No party disputes that the motions are timely, *see*

---

[6] The two firms representing Alecta here – Kessler Topaz and Bernstein Litowitz – represented the plaintiff in *City of Hollywood*. *See City of Hollywood*, ECF 1 at 1.

1    *generally* ECF 15, 26, 35, 48, 49, 50, 51, 52, 54, and the Court finds that each motion was timely
2    filed within the 60-day deadline.
3        The Court therefore finds that step one of the PSLRA framework is met by each of the
4    moving parties and proceeds to step two.
5                2.      <u>Step Two</u>
6        At this step, the Court must identify the "'presumptively most adequate plaintiff' – and
7    hence the presumptive lead plaintiff" by determining which movant "'has the largest financial
8    interest in the relief sought by the class'" and "'otherwise satisfies the requirements of Rule 23 of
9    the Federal Rules of Civil Procedure.'" *In re Cavanaugh*, 306 F.3d at 729-30 (quoting § 78u-
10   4(a)(3)(B)(iii)(I)).
11               *a.*      ***Largest Financial Interest***
12       In determining which plaintiff has the "largest financial interest," courts in the Ninth
13   Circuit "may select accounting methods that are both rational and consistently applied." *In re*
14   *Cavanaugh*, 306 F.3d at 730 n.4. "'[C]ourts typically consider the *Lax-Olsten* factors, which
15   include: (1) the number of shares purchased during the class period; (2) the number of net shares
16   purchased during the class period; (3) the total net funds expended during the class period; and
17   (4) the approximate losses suffered during the class period.'" *Weston v. DocuSign, Inc.*, 22-cv-
18   00824-WHO, 2022 WL 1301770, at *2 (N.D. Cal. Apr. 18, 2022) (quoting *In re Nutanix, Inc. Sec.*
19   *Litig.*, No. 19-CV-01651-WHO, 2021 WL 783579, at *2 (N.D. Cal. March 1, 2021)). Not every
20   factor carries the same weight, and most courts place "the most emphasis on the competing
21   movants' estimated losses, using a 'last in, first out' ('LIFO') methodology." *See id.* (quoting
22   *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *3 (N.D. Cal. April 28,
23   2016)). "Most courts within this district use the LIFO method to calculate estimated losses." *See*
24   *id.* (citing *Scheller v. Nutanix, Inc.*, No. 19-CV-01651-WHO, 2021 WL 2410832, at *4 (N.D. Cal.
25   June 10, 2021)).
26       Here, Alecta claims LIFO losses of $667,906,407, the First Republic Investor Group
27   claims collective losses of $7,985,467, and Singh claims losses of $3,387,042.41. *See* ECF 15-4
28   at 2; ECF 27-2 at 3; ECF 35-3 at 2. Neither party challenges their opponents' calculations or

1   methodology. *See generally* ECF 15, 26, 35, 48, 49, 50, 51, 52, 54. Based on the alleged losses as

2   reported by the parties, the Court finds that Alecta has the largest financial interest. *See Twitchell*

3   *v. Enovix Corp.*, No. 23-cv-00071-SI, 2023 WL 3170044, at *9 (N.D. Cal. Apr. 28, 2023) (relying

4   on LIFO calculations presented in the parties' opening briefs).

5         The Court now turns to the relevant requirements under Rule 23.

### b.  Rule 23

#### i.  *Adequacy*

Adequacy turns on "two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *In re Mersho*, 6 F.4th at 899-900 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotations and further citations omitted)). Under the PSLRA, the court examines adequacy twice. *Id.* at 900. "At step two, it will consider whether the movant has made a prima facie showing of adequacy." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730). Then, "[a]t step three, it will consider whether competing movants have offered proof that the presumptive lead plaintiff will not adequately represent the class." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 730-31). In determining whether the elements of adequacy and typicality have been met, "[t]he district court has latitude as to what information it will consider." *Id.* (citing *In re Cavanaugh*, 306 F.3d at 732). However, whether "the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *In re Cavanaugh*, 306 F.3d at 732. Rather, "[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, [that plaintiff] is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Id.* (footnote omitted).

Through its general counsel, Alecta has submitted a PSLRA certification[7] stating, among other things, that it:

---

[7] "Under the PSLRA, all proposed lead plaintiffs must submit a sworn certification setting forth certain facts designed to assure the Court that the plaintiff has suffered more than a nominal loss, is not a professional litigant, and is otherwise interested and able to serve as a class

7

- "did not purchase the securities that are the subject of this action at the direction of . . . counsel or in order to participate in any private action[,]"

- "is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary[,]"

- "has fully reviewed the facts and allegations of a complaint filed in this action and adopts its allegations[,]"

- "intends to actively monitor and vigorously pursue this action for the benefit of the class[,]"

- "will endeavor to provide fair and adequate representation and work directly with the efforts of class counsel to ensure that the largest recovery for the class consistent with good faith and meritorious judgment is obtained[,]"

- "has neither served nor sought to serve as a representative party for a class action filed under the federal securities laws during the three years prior to the date of [its] certification[,]" and

- "will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court[.]"

ECF 27-1 ¶¶ 1-2, 5, 7-10.

The supporting declaration of Alecta's general counsel adds, among other things, that:

- He is "informed of and understand[s] the requirements and duties imposed by the . . . [PSLRA] . . . on the lead plaintiff, including the selection and retention of counsel, and overseeing the prosecution of the litigation."

- "Alecta understands and accepts the duties and responsibilities with which a lead plaintiff is charged under the PSLRA, including to oversee and supervise the litigation separate and apart from counsel. Alecta is a sophisticated institutional investor with significant experience acting as a fiduciary and selecting, hiring, and overseeing

---

representative." *Twitchell*, 2023 WL 3170044, at *3 (citing § 78u-4(a)(2)(A)); *see also* Civil L.R. 3-7(b)-(c) (requiring certification by party seeking to serve as lead plaintiff).

8

the activities of outside counsel in complex litigation[,]" including cases involving the prosecution of "individual claims under the federal securities laws in *Allianz Global Investors Kapitalanlagegesellschaft MBH, et al. v. Vivendi, S.A., et al.*, No 07 Civ. 8156 (S.D.N.Y.), and *AFA Livforstikringsaktiebolag, et al. v. Merck & Co., Inc., et al.*, No. 07-cv-4024 (D.N.J.). Moreover, Alecta has a dedicated staff of professionals who will ensure the effective oversight of this litigation and counsel."

- "Alecta is strongly motivated to recover the significant losses it incurred as a result of Defendants' violations of the federal securities laws. Alecta is committed to addressing the alleged misconduct at the heart of this case, which raises significant public policy concerns regarding the integrity of the public markets, the governance of large financial institutions, and the interests of the institutional investor community more broadly. Further driving Alecta's decision to seek to lead this case is its interest in holding all culpable parties accountable for the misconduct underlying this action. For these reasons, among others, Alecta believes that this case should be led by a committed institutional investor with significant resources and a financial interest substantial enough to ensure that the claims are litigated vigorously, efficiently, and in the best interests of the class. Alecta's principal goals in this litigation are to maximize the recovery for the class from all culpable parties and seek recompense for the significant corporate governance failures at issue in this case[,]" and

- "Alecta is committed to satisfying the fiduciary obligations that it will assume if appointed Lead Plaintiff, including conferring with counsel regarding litigation strategy and other matters, attending court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents. . . . Alecta will ensure and . . . reaffirms that the securities class action against Defendants will be vigorously prosecuted consistent with the Lead Plaintiffs obligations under the PSLRA and in the best interests of the class."

ECF 27-3 ¶¶ 1, 3, 4, 14. In addition, Alecta has retained Kessler Topaz and Bernstein Litowitz "to prosecute this action in a zealous and efficient manner and in the best interests of the class." *Id.* ¶ 7.

Given these sworn statements, the Court finds that Alecta has sufficiently demonstrated that it will act to safeguard the interest of other class members and is ready, willing, and able to devote the necessary resources to do so, including by retaining and overseeing counsel experienced in PSLRA litigation. Furthermore, as an institutional investor, Alecta is likely to be

9

an effective lead plaintiff. *See In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 WL 2220601, at *3 (N.D. Cal. May 27, 2008) ("[B]y enacting the PSLRA, Congress sought to increase the participation of institutional investors in securities class actions."). The Court therefore finds that Alecta has made a prima facie showing of adequacy.

### ii. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The putative lead plaintiff satisfies the typicality requirement when it has suffered the same injuries as absent class members, as a result of the same conduct by the defendants." *In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 WL 3519283, at *3 (N.D. Cal. June 28, 2016) (citing *Hanon*, 976 F.2d at 508).

Here, Alecta, like all other potential class members, purchased First Republic Bank securities and claims financial losses stemming from alleged misrepresentations and omissions made by certain First Republic executives and its auditor. *See* ECF 27-1 ¶ 3 & Schedule A; ECF 27-2 at 3. Alecta seeks redress for the alleged financial losses that resulted from those misrepresentations and omissions. *See* ECF 27-3 ¶¶ 4-5. Alecta thus asserts the same injury as other class members, stemming from the same conduct by the defendants. Its interests therefore align with those of other class members. This is sufficient for the prima facie showing of typicality required at this stage. *See In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *3.

The Court therefore finds that Alecta has suffered the largest alleged loss and has made a prima facie showing of adequacy and typicality. As such, Alecta is the presumptive lead plaintiff. The Court now moves to step three.

#### 3. Step Three

The Court now turns to examining any proof from the First Republic Investor Group or Singh that "rebut[s] the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *See In re Cavanaugh*, 306 F.3d at 730 (citing § 78u-4(a)(3)(B)(iii)(II)).

### *a.*     *Challenges by the First Republic Investor Group*

The First Republic Investor Group argues that Alecta is "inadequate and/or atypical" for three reasons. ECF 49 at 11-18. None is convincing.

The First Republic Investor Group first argues that Alecta's "unnecessary involvement of two law firms . . . raises disqualifying questions about Alecta's adequacy." *Id.* at 11. It asserts that Alecta "has not explained *why* it needs to be represented by two large law firms in this matter, nor why the Class *needs* two law firms to serve as Co-Lead Counsel." *Id.* The First Republic Investor Group also claims that "this is the third instance in the past six weeks in which a Swedish institutional investor or group thereof sought appointment as Lead Plaintiff in a PSLRA action, proposing both [Kessler Topaz and Bernstein Litowitz] as Co-Lead Counsel for the Class." *Id.* at 12-13. It "respectfully questions whether three separate Swedish institutional investors independently selected exactly the same two firms as Co-Lead Counsel in these three unrelated actions, or whether these representations reflect some other arrangement between [Kessler Topaz and Bernstein Litowitz]." *Id.* at 13. The First Republic Investor Group's "questions" do not constitute proof, and only proof will suffice to disturb the lead plaintiff presumption. *See In re Mersho*, 6 F.4th at 899 ("The statute requires proof that the presumptive lead plaintiff is not adequate.") (citing § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb)).

The First Republic Investor Group next argues that Alecta's chosen counsel's "filings in an earlier-filed, related action in this Judicial District raise additional questions with respect to Alecta's supervision of its counsel." ECF 49 at 13. As the group points out, Kessler Topaz and Bernstein Litowitz previously filed the *City of Hollywood* action on April 24, 2023. *City of Hollywood*, ECF 1. The FDIC, as receiver for First Republic Bank, filed a motion to stay the action, which Judge Gilliam granted on June 13, 2023. *City of Hollywood* ECF 13, 16. On June 16, 2023, the *City of Hollywood* voluntarily dismissed the case pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). *City of Hollywood*, ECF 17. Then, on June 23, 2023, Alecta moved for appointment as lead plaintiff and for approval of Kessler Topaz and Bernstein Litowitz as lead counsel in this action. ECF 26. Based on this sequence of events, the First Republic Investor Group claims:

> Considered together, Alecta's Proposed Co-Lead Counsel's filings in Hollywood Police and in the above-captioned Related Actions reflect an effort to evade the consequences of Judge Gilliam's order staying Hollywood Police. Moreover, given that the ostensible 60-day PSLRA-imposed notice period and Lead Plaintiff motion deadline in these substantively identical Related Actions (June 23, 2023) was triggered by publication of the notice of pendency of Hollywood Police, the abrupt dismissal of Hollywood Police shortly before the motion deadline raises questions as to whether the pending Lead Plaintiff motions are in fact properly before this Court. The foregoing circumstances, taken together, do not allay concerns as to whether Alecta or its counsel would be in the driver's seat if the Court were to appoint Alecta as Lead Plaintiff.

ECF 49 at 14.

These contentions lack any proof on which the Court may properly rely, and even if argument were alone sufficient, the arguments the First Republic Investor Group's advances here are unpersuasive. To the extent the voluntary dismissal in *City of Hollywood* was designed to "evade the consequences" of a stay order, the First Republic Investor Group offers no explanation why the motion to stay could not be renewed in the subsequently filed actions, why no such motion was filed,[8] or why the voluntary dismissal was improper when squarely authorized by Federal Rule of Civil Procedure 41(a)(1)(A)(i). Nor does the First Republic Investor Group explain which court is the "proper" one for resolving the pending motions. Had there been a genuine concern that these motions should be pending before another court, any party, including the First Republic Investor Group, should have filed a motion seeking to relate this action to the lowest-numbered case as provided for in Civil Local Rule 3-12.[9] The docket in that case reflects

---

[8] Instead, the FDIC, as Receiver for First Republic Bank, filed a motion to intervene in this action October 30, 2023. ECF 77. When the Court ordered short supplemental briefs on the impact of that motion, Alecta, the First Republic Group, and Singh agreed that the Court should proceed to appoint lead counsel. ECF 82, 83, 84.

[9] The rule provides, in pertinent part:

> Whenever a party knows or learns that an action, filed in or removed to this district is (or the party believes that the action may be) related to an action which is or was pending in this District as defined in Civil L.R. 3-12(a), the party must promptly file in the lowest-numbered case an Administrative Motion to Consider Whether Cases Should be Related, pursuant to Civil L.R. 7-11. In addition to complying with Civil L.R. 7-11, a copy of the motion, together with

12

no such motion.

Finally, the First Republic Investor Group argues that Alecta cannot represent class members who held First Republic Bank securities through the entire proposed class period because Alecta sold all of its shares by the time the bank made a further corrective disclosure on March 16, 2023, and as a result, held no stock during the final six weeks of the proposed class period. ECF 49 at 15-18. The First Republic Investor Group thus asks that "to the extent that the Court does appoint Alecta to a leadership role in this litigation, the First Republic Investor Group respectfully requests that it be appointed as a Co-Lead Plaintiff alongside Alecta to ensure that the interests of all investors are adequately represented in this litigation." *Id.* at 17.

Like other courts in this district, this Court rejects the argument. *See Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, No. 22-CV-04893-HSG, 2023 WL 3613313, at *4 (N.D. Cal. May 22, 2023) ("[T]he Court agrees with cases holding that plaintiffs who sell their stock at a net loss after the first of multiple disclosures are not precluded from serving as lead plaintiffs."). *Cf. Twitchell*, 2023 WL 3170044, at *6, *8 ("declin[ing] to adopt a rule that a plaintiff who sells its stock before the final disclosure may never serve as lead plaintiff" but appointing co-lead plaintiffs where counsel for each plaintiff "indicated that they were amenable to this arrangement and represented that they could work together efficiently, so as not to increase the attorney expense to the class"); *Sayce v. Forescout Techs., Inc.*, No. 20-CV-00076-SI, 2020 WL 6802469, at *6 (N.D. Cal. Nov. 19, 2020) (finding that "the class would be best represented by lead plaintiffs who also purchased securities during the earlier portion of the class period" where one movant purchased defendant's "stock roughly one year after the start of the class period, and after several of the partial disclosures alleged in the Amended Complaint"). Alecta suffered losses of over $600 million by the time First Republic Stock fell by more than

---

proof of service pursuant to Civil L.R. 5-5, must be served on all known parties to each apparently related action. A courtesy copy of the motion must be lodged with the assigned Judge in each apparently related case under Civil L.R. 5-1(d)(7).

Civil L.R. 3-12(b).

13

$100 per share. ECF 52 at 10, 19. Though the timing of Alecta's losses is offered to undermine Alecta's typicality and adequacy, its substantial losses reinforce that Alecta is typical and adequate to discharge its duties as lead plaintiff, without the First Republic Investor Group as a co-lead. *See Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund*, 2023 WL 3613313, at *4-*5 (rejecting argument that applicant who sold shares after multiple corrective disclosures was precluded from serving as lead plaintiff and finding appointment of a co-lead plaintiff as "unnecessary and potentially . . . at odds with the PSLRA."). The Court accordingly rejects the challenges from the First Republic Investor Group.

### b. Challenges by Singh

Singh also argues that Alecta is not typical or adequate to serve as lead plaintiff because Alecta will face unique defenses as to standing, a purportedly defective PSLRA certification, and reliance.[10] ECF 50 at 9-14. Singh's arguments are not persuasive.

As to standing, Singh argues that Alecta "did not actually own or purchase on its own behalf any First Republic shares during the Class Period." *Id.* at 10. Singh claims that "the securities at issue appear to have been purchased and sold by the Alecta Pension Fund" and that Alecta has "not demonstrated that it has standing to sue on behalf of the pension fund that it manages." *Id.* Singh challenges the sworn statement of Alecta's general counsel that "Alecta has full power and authority to bring suit to recover for its investment losses" because its general counsel does not "provide[] any support for this conclusion," such as a statement that Alecta has a valid and enforceable assignment from the pension fund. *Id.* at 10. On these grounds, Singh claims that "there is a substantial likelihood that a unique defense concerning Alecta's standing could be raised." *Id.*

Alecta counters that Singh lacks any evidence to support these contentions, and points to its PSLRA certification, which lists Alecta's "purchase and sale transactions in the First Republic

---

[10] The First Republic Investor Group purports to "join" in some of these arguments for the first time in its reply brief. *See* ECF 51 at 11-13. Alecta has objected to this. *See* ECF 55, 56. The Court has not considered any arguments the First Republic Investor Group raised for the first time in its reply or the substantive proffer Alecta made to rebut those arguments.

14

Bank securities that are the subject of this action." ECF 52 at 11; *see also* ECF 27-1. Alecta also points to the supplemental declaration of its general counsel stating that "[t]here is no entity operating as the 'Alecta Pension Fund,'" "all of the securities listed in Alecta's certification . . . were owned by Alecta," and "Alecta is the only entity that purchased the securities listed in Alecta's Certification." *Id.*; ECF 53-1 ¶¶ 3, 4. This is sufficient to establish standing. *See Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*, Nos. 21-cv-08812-JST, 21-cv-08873-JST, 21-09041-JST, 2022 WL 3571995, at *2 (N.D. Cal. July 26, 2022) (crediting declarations indicating that movant held legal title to shares and had authority to sue in its own name for damages suffered on those investments).

As to Alecta's purportedly defective PSLRA certification, Singh claims Alecta's general counsel lacks the authority to sign such a certification on Alecta's behalf. ECF 50 at 11. Singh asserts that the "certification is not signed by a member of the Council of Administration (Alecta's highest decision-making body), a member of its Board of Directors, Chief Executive Officer, or even an officer of the company." *Id.* Citing to Alecta's 2022 Annual and Sustainability Report, Singh argues that the authority of Alecta's general counsel is limited to "staff functions." *Id.* Singh contends that the conclusory statement by Alecta's general counsel that he is "authorized to make legal decisions of behalf of Alecta" lacks an explanation of what legal decisions he is able to make, whether he is authorized to sign Alecta's PSLRA certification, and whether he has authority to bind Alecta or to act on its behalf. *Id.* Singh further asserts that Alecta cannot cure these deficiencies "with a tardy supplement." *Id.* Because the validity of Alecta's certification is "fairly debatable," Singh contends that there is a "substantial likelihood" that Alecta would be subject to a unique defense. *Id.* at 12.

Alecta counters that its "certification plainly states that the signatory . . . is Alecta's General Counsel[,]" who is "authorized to make legal decisions on behalf of Alecta." ECF 52 at 12; *see also* ECF 27-1 ¶ 6. Alecta also points to its general counsel's sworn statement that he is "authorized to make th[e] Declaration on behalf of Alecta." ECF 52 at 12; *see also* ECF 27-3 ¶ 2. The supplemental declaration of Alecta's general counsel likewise asserts that he "is fully qualified to execute documents and make decisions that bind Alecta" and that "[n]o signature from

15

any other person within Alecta . . . is necessary to bind Alecta in this litigation." ECF 52 at 12; ECF 53-1 ¶ 5. The Court credits these sworn declarations over arguments based on Singh's readings of a public corporate report and speculation of what "substantial likelihoods" might arise in this case. *See Twitchell*, 2023 WL 3170044, at *8 (rejecting argument, unsupported by proof, that fund manager could bind movant where supplemental declaration provided that the manager had such authority); *Ohio Pub. Emps. Ret. Sys.*, 2022 WL 3571995, at *3 (declining to discount sworn declarations based on opposing party's argument).

Finally, Singh argues that Alecta will also be subject to unique defenses because certain executives were terminated following an internal investigation and because Swedish regulators are conducting their own investigation of Alecta, which will strain its resources. ECF 50 at 12-14. Singh asserts that the termination of those executives means that key percipient witnesses will be unavailable, hindering Alecta's ability to present testimony and documents to prove its claims. *Id.* at 13. Singh also asserts that "any documents or testimony suggesting that Alecta implemented trade strategies inconsistent with internal and external risk management rules give rise to unique reliance defenses potentially thwarting Alecta's ability to invoke the fraud on the market presumption." *Id.* Citing to a news article in a publication titled *Pensions and Investments*, Singh claims the concern "is far from speculative." *Id.* at 14.

Alecta asserts that Singh's "unsupported speculation . . . is insufficient under the PSLRA." ECF 52 at 15. The Court agrees. Speculation about how any regulatory investigation may progress, whether there will be any findings showing conduct inconsistent with applicable rules, or whether documents or other evidence will be difficult to obtain does not constitute proof. Even if the Court were to credit Singh's assertions, the supplemental declaration of Alecta's general counsel provides evidence to the contrary:

- "Alecta fully understands its obligations as a Lead Plaintiff and confirms that it will comply with its fiduciary obligations to the class, as well as its discovery obligations in this litigation. Alecta is a sophisticated institutional investor with considerable resources at its disposal. . . . Given Alecta's size, the departure of any employee, regardless of their level within Alecta, will not impede Alecta's ability to fulfill its various obligations to the class and its stakeholders, as it has for more than 100 years."

16

- "Alecta is one of Sweden's largest institutional investors and is constantly striving to fulfill its obligations to its stakeholders. This goal is achieved, in part, by conducting periodic internal reviews, as well as being subject to external oversight by regulators. Alecta's investments in First Republic are not immune from such reviews. Reviews relating to Alecta's investments in First Republic securities, which have not found any violations of Alecta's policies or guidelines, will not impact Alecta's ability to fulfill its obligations to the class."

ECF 53-1 ¶¶ 6, 7. In light of these sworn statements, the Court finds that Alecta is an adequate plaintiff notwithstanding Singh's arguments. *Cf. In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (declining to appoint entity as lead plaintiff where "two sister banks . . . [wer]e under investigation for criminal fraud violations of the laws[,] . . . authorities ha[d] conducted 'raids' . . . part of its criminal fraud investigation," and a CEO of one bank "ha[d] already been arrested for tax evasion, fraud, money laundering, conspiracy and consorting with criminal elements"); *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180 (LAP), 2019 WL 5587148, at *5 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) (finding movants inadequate in light of a "non-speculative risk" that they would run out of funding due to related bankruptcy proceedings).

Having rejected the arguments offered to rebut the lead plaintiff presumption, the Court appoints Alecta as lead plaintiff.

### B.     Appointment of Lead Counsel

Once the Court has found the "most adequate plaintiff," that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice[.]" *Cohen*, 586 F.3d at 712. The Court "should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Id.* at 711.

Here, the Court will not disturb Alecta's selection of counsel, as its choice is not "so irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine and serious doubt on [its] willingness or ability to perform the functions of lead plaintiff." *See In re Cavanaugh*, 306

F.3d at 733 (citing *In re Cendant*, 264 F.3d at 266). Kessler Topaz and Bernstein Litowitz have extensive experience litigating PSLRA matters, and courts in this district and elsewhere have routinely appointed them to act as lead counsel in such cases. *See, e.g.*, *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-07669-HSG, 2019 WL 1960341, at *4 (N.D. Cal. May 2, 2019) (approving lead plaintiff's selection of Kessler Topaz and Bernstein Litowitz as lead counsel); *Schaeffer v. Depaolo*, No. 23-CV-1921-FB-JRC, 2023 WL 5153481, at *8 (E.D.N.Y. Aug. 10, 2023) (same); *see also* ECF 27-6 (Kessler Topaz firm resume listing representative matters); ECF 27-7 (Bernstein Litowitz firm resume listing representative matters). These firms have certified that they do not have any conflicts of interest, that they are committed to vigorously prosecuting this litigation on behalf of the class, and that they will commit the resources necessary to do so. ECF 31, 63, 71, 73, 76, 96. The Court therefore approves Alecta's selection of Kessler Topaz and Bernstein Litowitz to act as lead counsel here.

## IV. CONCLUSION

For the reasons set forth above, Alecta's motion for appointment as lead plaintiff and approval of its chosen counsel is GRANTED. The remaining motions are DENIED.

**IT IS SO ORDERED.**

Dated: November 24, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

18