**BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

**KESSLER TOPAZ MELTZER
   & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-300

*Counsel for Lead Plaintiff Alecta Tjänstepension Ömsesidigt
and additional named Plaintiff Neil Fairman
and Lead Counsel for the Class*

[Additional Counsel on Signature Page.]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXANDRA KUSEN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. HERBERT, II, HAFIZE GAYE ERKAN, MICHAEL J. ROFFLER, OLGA TSOKOVA, MICHAEL D. SELFRIDGE, NEAL HOLLAND, AND KPMG LLP,<br><br>Defendants. | Case No. 3:23-cv-02940-AMO<br><br>**PLAINTIFFS' OPPOSITION TO FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST REPUBLIC BANK'S RENEWED MOTION TO INTERVENE**<br><br>Judge:   Araceli Martínez-Olguín<br>Date:    August 1, 2024<br>Time:    2:00 p.m.<br>Place:   Courtroom 10 – 19th Floor |

1

## TABLE OF CONTENTS

2    I.     INTRODUCTION ......................................................................................................... 1

3    II.    FACTUAL AND PROCEDURAL HISTORY .......................................................... 3

4          A.     Summary of Plaintiffs' Claims .................................................................. 3

5          B.     Lead Plaintiff Alecta Files Claims with the FDIC-R ............................... 6

6    III.   ARGUMENT ............................................................................................................. 7

7          A.     The FDIC-R Lacks Any Basis to Intervene Under Either Rule 24(a)
                or Rule 24(b). ............................................................................................. 8

8

9                1.     The FDIC-R Does Not Own Plaintiffs' Direct Claims That
                       Are Based on Plaintiffs' Purchases of FRB Securities at
                       Prices Inflated by Defendants' Misstatements and

10                        Omissions ..................................................................................... 9

11                2.     This Court Has Jurisdiction Over Plaintiffs' Claims Against
                       the Individual Defendants and KPMG ...................................... 15

12

13                3.     Intervention Will Delay this Case and Prejudice Plaintiffs. ..................... 18

14    IV.   CONCLUSION ....................................................................................................... 18

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                      **PAGE(S)**

*Aaron v. Ill. Nat'l Ins. Co.*,
2023 WL 7389034 (E.D. La. Nov. 8, 2023) .................................................................11, 12

*Abrahamson v. W. Sav. & Loan Ass'n*,
1994 WL 374294 (D. Ariz. Jan. 24, 1994) .................................................................11

*Am. Nat'l Ins. Co. v. FDIC*,
642 F.3d 1137 (D.C. Cir. 2011) .................................................................16

*Am. W. Bank Members v. Utah*,
2023 WL 4108352 (D. Utah June 21, 2023).................................................................11

*ANA Int'l, Inc. v. Way*,
393 F.3d 886 (9th Cir. 2004) .................................................................15

*Bank of N.Y. v. First Millennium, Inc.*,
607 F.3d 905 (2d Cir. 2010).................................................................16

*Barnes v. Harris*,
783 F.3d 1185 (10th Cir. 2015) .................................................................9, 10, 11

*In re Beach First Nat'l Bancshares, Inc.*,
702 F.3d 772 (4th Cir. 2012) .................................................................11

*In re Benny*,
791 F.2d 712 (9th Cir. 1986) .................................................................7

*Benson v. JPMorgan Chase Bank, N.A.*,
673 F.3d 1207 (9th Cir. 2012) .................................................................16, 17

*Brown v. Accellion, Inc.*,
2023 WL 1928210 (N.D. Cal. Feb. 10, 2023) .................................................................8

*Buffin v. City & Cnty. of San Francisco*,
2016 WL 6025486 (N.D. Cal. Oct. 14, 2016).................................................................7

*Cassese v. Wa. Mut., Inc.*,
743 F. Supp. 2d 148 (E.D.N.Y. 2010) .................................................................16

*CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A.*,
2010 WL 1460263 (N.D. Cal. Apr. 12, 2010) .................................................................17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) .................................................................7

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ................................................................................7

*Dura Pharms, Inc. v. Broudo*,
    544 U.S. 336 (2005) .............................................................................................13

*Fed. Deposit Ins. Corp. v. BancInsure, Inc.*,
    675 F. App'x 666 (9th Cir. 2017) ........................................................................14

*Hayes v. Gross*,
    982 F.2d 104 (3d Cir. 1992)................................................................................11

*Howard v. Haddad*,
    916 F.2d 167 (4th Cir. 1990) ..............................................................10, 12, 13

*Levin v. Miller*,
    763 F.3d 667 (7th Cir. 2014) ...............................................................9, 10, 16

*Lubin v. Skow*,
    382 F. App'x 866 (11th Cir. 2010) .....................................................................11

*National Union Fire Insurance Company of Pittsburgh, Pa. v. City Savings, F.S.B.*,
    28 F.3d 376 (3d Cir. 1994)..........................................................................13, 14, 17

*Pareto v. F.D.I.C.*,
    139 F.3d 696 (9th Cir. 1998) .......................................................................10, 11

*Patel v. Patel*,
    2010 WL 11549879 (N.D. Ga. Dec. 29, 2010).................................................8

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) ...........................................................................7, 8

*Prete v. Bradbury*,
    438 F.3d 949 (9th Cir. 2006) ................................................................................7

*Rundgren v. Wa. Mut. Bank, FA*,
    760 F.3d 1056 (9th Cir. 2014) ...........................................................................16

*Stamm v. Paul*,
    121 F.3d 635 (11th Cir. 1997) ...........................................................................17

*In re Sunrise Sec. Litig.*,
    916 F.2d 874 (3d Cir. 1990)................................................................................11

*Verdi v. FDIC as Receiver for Signature Bank*,
    2023 WL 6388225 (C.D. Cal. Sept. 28, 2023) ................................................16

*In re Wa. Bancorporation*,
   1996 WL 148533 (D.D.C. Mar. 19, 1996).........................................................................10, 14

*Willner v. Dimon*,
   849 F.3d 93 (4th Cir. 2017) .................................................................................................16

*Zucker v. Rodriguez*,
   919 F.3d 649 (1st Cir. 2019) ..................................................................................12, 13, 14

**RULES & STATUTES**

12 U.S.C. § 1821.............................................................................................................. *passim*

Fed. R. Civ. P. 24...........................................................................................................7, 9, 18

**OTHER AUTHORITIES**

135 CONG. REC. 18575 (1989) .............................................................................................12

1       Lead Plaintiff Alecta Tjänstepension Ömsesidigt ("Alecta" or "Lead Plaintiff") and

2  additional named Plaintiff Neil Fairman (together with Alecta, "Plaintiffs") respectfully submit

3  this memorandum of points and authorities in opposition to the Federal Deposit Insurance

4  Corporation ("FDIC") as Receiver for First Republic Bank's ("FDIC-R") Renewed Motion to

5  Intervene (ECF No. 135) ("Motion").

6  ## I.   INTRODUCTION

7       The FDIC-R's Motion is an overreach and an unwarranted interference based on the

8  unsupported conflation of Plaintiffs' and the Class's claims, on the one hand, and claims that may

9  properly belong to the FDIC-R or be subject to the FDIC-R's administrative process under the

10  Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), on the other.

11       Plaintiffs' claims are direct claims for securities fraud by a class of securities purchasers

12  during a particular time period (the Class Period). During that period, the price of securities issued

13  by First Republic Bank ("FRB," or the "Bank"), and paid by the Class, was inflated by

14  misstatements and omissions made by defendants. The defendants are officers and directors of

15  FRB (the "Individual Defendants"), and KPMG, First Republic's former audit firm (together with

16  the Individual Defendants, "Defendants"). FRB is not a defendant.

17       Under FIRREA, the claims that properly belong to the FDIC-R are the claims formerly

18  *owned by FRB*. That category includes, at its outer margin, the "rights . . . of any stockholder . . .

19  with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i).

20  Stockholder claims "with respect to the institution and the assets of" FRB are claims belonging to

21  FRB that, but for the receivership, could have been brought either by FRB itself or by its

22  shareholders suing "derivatively" on behalf of FRB, such as claims for breach of fiduciary duty.

23  FIRREA extinguishes the ability of shareholders (and others) to bring claims on behalf of the failed

24  bank. But no such claims are at issue here.

25       Another provision of FIRREA limits judicial review of some "claims" subject to the FDIC-

26  R's administrative claims process, which are solely claims *against FRB* (or against its successors,

27  including the FDIC-R, and including claims that seek to declare the rights of FRB). The "claims"

28  subject to the FDIC-R's administrative claims process are claims by "the depository institution's

creditors," "against [the] depository institution." 12 U.S.C. § 1821(d)(3)(B)(i), (d)(5)(A)(i), (d)(6)(A)(i); *see also id.* (d)(5)(D)(i), (ii), (d)(11)(A). FIRREA limits judicial review for two subsets of such administrative "claim[s]": those "for payment from . . . the assets of [the] depository institution"; and those "relating to any act or omission of such institution" or the FDIC-R. *Id.* (d)(13)(D)(i), (ii). And FIRREA also limits judicial review of "action[s]" that seek "determination of rights with respect to . . . the assets of any depository institution." *Id.* (d)(13)(D)(i). No such "claims" or "actions" are at issue here. Plaintiffs do not assert any claims against FRB; do not seek payment from the assets of FRB; and do not seek to declare any rights of FRB.

At bottom, the FDIC-R's Motion is based on the false and overbroad premises that: (1) FIRREA "strips courts of jurisdiction" over any lawsuit "relating to any or omission" of any failed bank, even when the failed bank and its successors are not sued; and (2) the FDIC-R "owns" all claims of every "stockholder" of a failed bank that "concern or relate to" the failed bank, even when the failed bank would not own such claim (even in part) outside receivership.  Motion at 9, 12. These positions are unprecedented, do not further the purposes of FIRREA, and would arbitrarily extinguish investors' direct claims under the federal securities statutes against individuals and entities other than the entity actually in receivership, barring them from any opportunity to recover the tens of billions they lost as a result of defendants' fraud.

As federal courts have repeatedly held, FIRREA's provision stripping courts of jurisdiction over "any claim relating to any act or omission" of a failed bank applies only to "claims" subject to the FDIC-R's administrative claims process, *i.e.*, claims by creditors of the failed bank against the failed bank. Claims against third parties (such as the Individual Defendants and the Bank's auditor) are not compensable through the FDIC-R's administrative claims process, and there would thus be no purpose in requiring them to be exhausted or in stripping courts of jurisdiction. Likewise, the "stockholder" claims to which the FDIC-R succeeds are derivative claims on behalf of FRB, not direct securities fraud claims by investors who purchased securities at particular times at prices inflated by fraud. To Plaintiffs' knowledge, ***every court that has ever considered whether the FDIC-R owns investors' securities fraud claims has clearly decided it does not***.

As a result, the FDIC-R's position is based on the tortured assumption that it both sits in the place of those investors who make up the putative class that seeks relief in this Action and that it should be permitted to effectively extinguish those claims, barring any opportunity to recover the billions lost. Again, Plaintiffs and the Class have not sued First Republic and do not seek any recovery from that entity.

The FDIC-R's motion for intervention as of right must fail because it has no "interest relating to the property or transaction" at issue in this Action, let alone one that will be "impair[ed] or impede[d]," as Rule 24(a)(2) requires. The FDIC-R has no interest in the property (Plaintiffs' claims) or the transactions (Plaintiffs' purchases of securities at prices inflated by misstatements and omissions) at issue in this Action. The FDIC-R's motion for permissive intervention must also fail because it has no "claim or defense that shares with the main action a common question of law or fact," as Rule 24(b)(1)(B) requires. The FDIC-R is not intervening to assert any claim; nor does it have any claim involving defendants' misstatements and omissions to investors. Nor does FDIC-R have any relevant defense because neither FDIC-R nor FRB has been sued. Permissive intervention should also be denied under Rule 24(b)(3) because the FDIC-R's intervention will result in both delay and prejudice to Plaintiffs.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Summary of Plaintiffs' Claims

Defendants are former senior officers of the now defunct First Republic and KPMG, the audit firm that provided an unqualified audit opinion on First Republic's 2022 financial results. These Defendants are each alleged to have made materially false and misleading statements to investors during the Class Period. Until May 1, 2023, non-defendant FRB was a California state-chartered bank and trust company, which provided residential, commercial, and personal loans, deposit services, and private wealth management. From 2018 to 2021, FRB experienced a period of dramatic growth that was disproportionately driven by a large number of "uninsured" deposit accounts—meaning accounts with balances exceeding the $250,000 FDIC insurance limit in the

event of a bank failure. ¶4.[1] Throughout the Class Period, Defendants repeatedly represented to investors that FRB had: (i) stable, well-diversified deposit growth as a result of its business model; (ii) the ability to grow loan originations and to manage interest rate risk; and (iii) methods for managing liquidity risk. ¶¶433-37.

These statements were false and misleading. Numerous highly placed former employees have confirmed that the growth Defendants touted was not organic but the result of undisclosed rate incentive programs that Defendants used to attract and retain deposits and boost new loan originations. ¶¶171-99. Defendants' statements belied that FRB employees, under the direction of senior management, routinely offered customers below-market interest rates on loans in exchange for customers making deposits. *See* ¶¶135-70. However, borrowers often failed to maintain these deposits, and Defendants knew that there was no way to enforce these agreements. ¶¶148-55, 159-61, 166-68. On the deposit side, Defendants also knew that the Bank offered high net worth individuals and hedge funds short-term, above-market rates on deposit accounts to boost deposit numbers. ¶¶171-99. These unsustainable growth strategies created an unstable customer and deposit base that was drawn to the excessively discounted loan rates and unusually inflated deposit rates; in other words, not the well-diversified, "sticky" deposit base that Defendants touted during the Class Period. ¶134.

Defendants' undisclosed business strategies created a heightened risk of depositor flight prior to and during the Class Period—a risk that became increasingly acute as interest rates rose during 2022 and early 2023, and ultimately resulted in massive losses to investors. ¶¶17-21. As the Fed increased rates, Defendants were forced to pay higher rates on deposits, and many depositors withdrew their funds from FRB in search of higher interest rates at other banks. ¶¶275-79. Simultaneously, Defendants caused the Bank to continue to originate fixed-rated, long-term loans with below-market interest rates, reducing FRB's interest income. ¶¶115-18. This trend led

---

[1] Citations to "¶_"refer to paragraphs in the Complaint (ECF No. 123); citations to "Harrod Decl." are to the Declaration of James A. Harrod in Support of Plaintiffs' Opposition to the Motion, filed concurrently herewith, and citations to "Ex. __" are to the Exhibits to the Declaration. Unless otherwise indicated, all citations and internal quotations omitted and all emphasis are added.

to a downward spiral of growing long-duration, fixed-rate loans and dwindling low-cost deposits. ¶¶280-99. Moreover, because the majority of FRB's loan assets were fixed-rate, long-duration loans, rising interest rates led to massive unrealized losses on its balance sheet. ¶¶135-38. These negative trends were reflected in the Bank's contemporaneous internal risk modeling in the months leading up to the end of the Class Period. ¶¶227-74. Quarter after quarter in 2022 and early-2023, certain of the Individual Defendants reviewed interest rate risk modeling that alerted them to the high likelihood that, with even modest increases in interest rates, FRB would experience drastic reductions in its value of equity, eventually resulting in negative equity. ¶¶229-74. By the fourth quarter of 2022, Defendants began implementing drastic measures, including layoffs and cost-cutting, to stem the impact of an enormous, but undisclosed, loss of deposits. ¶¶321-29. Still, Defendants falsely assured the public that it was business as usual at FRB, even as the Bank lost $65 billion worth of deposits in a matter of days. ¶¶367, 379.

Just weeks before FRB's collapse, Defendant KPMG issued a materially misleading audit opinion of the Bank's 2022 financial statements, stating that its financial position was presented fairly and in accordance with GAAP and that the audit complied with the standards of the PCAOB. In truth, FRB's 2022 financial statements violated GAAP because Defendants had misclassified FRB's loans as held for investment and its debt securities as held to maturity in violation of accounting standards and without proper basis, allowing FRB to avoid recognizing $22.95 billion in unrealized losses on its financial statements. ¶¶340-52. Moreover, the audit did not comply with PCAOB standards, as Defendant KPMG disregarded numerous negative trends and uneconomic long-term commitments on FRB's balance sheet that raised substantial doubt about FRB's ability to continue as a going concern. ¶¶353-64.

After FRB's collapse, the Bank's regulators concluded that the causes of FRB's failure included "rapid growth in assets and deposits, loan and funding concentrations, unrealized losses, an overreliance on uninsured deposits, and a failure to sufficiently mitigate interest rate risk" and that FRB "accepted the risk without taking sufficient corrective action." ¶40.

The Complaint further alleges that the Individual Defendants knew about or were deliberately reckless in disregarding the risks of deposits generated by the undisclosed rate

incentives programs, as well as the escalating interest rate and liquidity risks as interest rates materially increased in 2022 and early 2023. ¶¶574-609, 617-23. The Individual Defendants' knowledge also is underscored by their repeated and detailed public statements about these topics, as well as the importance of the undisclosed rate exception programs and related impacts to FRB's survival. ¶¶610-16, 624-31. Certain of the Individual Defendants also profited immensely from the fraud through suspicious stock sales at inflated prices and through incentive compensation tied to metrics inflated by the fraud. ¶¶551-73.

Investors gradually learned the relevant truth through a series of partial disclosures between October 2022 and April 2023, as FRB was forced to take increasingly drastic actions to reduce expenses and increase liquidity, experienced unprecedented deposit outflows, and ultimately was placed in the FDIC receivership. ¶¶645-93. In all, FRB's stock price declined 99.8% during the Class Period, resulting in billions of dollars in shareholder losses. ¶422.

The Complaint does not name FRB as a defendant or assert any claim derivatively on its behalf. Plaintiffs only allege direct harm on behalf of persons or entities who purchased FRB common stock or preferred stock at artificially inflated prices during the Class Period and as a result, suffered economic losses under the federal securities laws. ¶645.

## B.     Lead Plaintiff Alecta Files Claims with the FDIC-R

On September 5, 2023, Lead Plaintiff Alecta filed Proofs of Claims with the FDIC-R on behalf of itself and the Class. *See* Harrod Decl., Exs. A & B. Those Proofs of Claim were "for claims against First Republic Bank" (Ex. A at 2; Ex. B at 2) and asserted that the "Financial Institution, now in liquidation," *i.e.*, FRB, was "indebted" (Ex. A at 1; Ex. B at 1). The Proofs of Claim did not assert any claim against the Individual Defendants or KPMG. Alecta's administrative claims were filed as a protective measure in the event that a potential recovery could be obtained through the FDIC-R's administrative process. *See* Ex. A at 3 (section titled "Reservation of Rights"); Ex. B at 3 (same).

On March 1, 2024, the FDIC-R issued a "Notice of Disallowance of Claim," which denied Alecta's claim against FRB (but no other defendant) on behalf of itself and the Class.

1

## III.   ARGUMENT

2          Rule 24(a) provides that a nonparty is entitled to intervention as of right *only* if the nonparty

3   shows that (1) the intervention application is timely; (2) the nonparty has a significant protectable

4   interest relating to the property or transaction that is the subject of the action; (3) the disposition

5   of the action may, as a practical matter, impair or impeded the nonparty's ability to protect its

6   interest; and (4) the existing parties may not adequately represent the nonparty's interest. Fed. R.

7   Civ. P. 24(a); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir.

8   2011) (quoting *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006)). For the reasons explained

9   below, the FDIC-R lacks a significant protectable interest" and cannot show that this Action "may

10  . . . impair or impede[]" its interests.

11         Alternatively, Rule 24(b) provides that a nonparty who seeks permissive intervention must

12  prove that it meets three threshold requirements: (1) it has a claim or defense that shares a common

13  question of law or fact with the main action; (2) its motion is timely; and (3) the court has an

14  independent basis for jurisdiction over the nonparty's claims. Fed. R. Civ. P. 24(b); *Donnelly v.*

15  *Glickman*, 159 F.3d 405, 412 (9th Cir. 1998) (citation omitted). "Failure to satisfy any one of the

16  requirements is fatal to the application, and a court need not reach the remaining elements if one

17  of the elements is not satisfied." *Buffin v. City & Cnty. of San Francisco*, 2016 WL 6025486, at

18  *12 (N.D. Cal. Oct. 14, 2016) (citing *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947,

19  950 (9th Cir. 2009)). Here, the FDIC-R lacks any basis for permissive intervention because it has

20  no claim or defense that shares a common question with Plaintiffs' claims.

21         But even if the FDIC-R satisfied this threshold requirement, "a district court has

22  considerable discretion in ruling on the motion for permissive intervention." *Id.* (citing *In re*

23  *Benny*, 791 F.2d 712, 721-22 (9th Cir. 1986)). In exercising that discretion, the Court "must

24  consider whether the intervention will unduly delay or prejudice the adjudication of the original

25  parties' rights." Fed. R. Civ. P. 24(b)(3). In assessing undue delay or prejudice, courts consider

26  factors including: whether parties seeking intervention will prolong or unduly delay the litigation,

27  whether intervention will unfairly prejudice the existing parties, the nature and extent of the

28  intervenors' interest, their standing to raise relevant legal issues, and the legal position they seek

1    to advance and its probable relation to the merits of the case. *Perry*, 587 F.3d at 955. Here, the

2    FDIC-R not only seeks to prejudice Plaintiffs' claims by dismissing them, but before the substance

3    of that application can even be heard, aims to stay the briefing and resolution of Defendants'

4    forthcoming motions to dismiss, which, if granted, would substantially delay resolution of those

5    motions and further proceedings in this case.

6       For the reasons below, the FDIC-R has not shown that it has a right to intervene or that it

7    should be granted permissive intervention, and its Motion should be denied with prejudice.

8      **A.  The FDIC-R Lacks Any Basis to Intervene Under Either Rule 24(a) or**
       **    Rule 24(b).**

9

10      The FDIC-R argues that it owns Plaintiffs' direct claims against the Individual Defendants

11   and KPMG, that it has a substantial interest in ensuring compliance with the FIRREA claims

12   process, and that Plaintiffs' supposed failure to exhaust that process deprives this Court of subject

13   matter jurisdiction. Motion at 9-16. It is wrong on all counts. First, as numerous courts have held,

14   the FDIC-R does not own the direct securities fraud claims asserted by Plaintiffs or the Class for

15   violations of the Exchange Act. And second, the claims asserted in the Complaint are not subject

16   to administrative exhaustion because the defendants are individuals and entities other than the

17   entity in receivership, as reflected by numerous court decisions and the FDIC-R's own FIRREA

18   notice which, by its plain terms, does ***not*** cover the claims against third parties.

19      Because the FDIC-R has no protectable interest in the claims at issue here and those claims

20   are not subject to administrative exhaustion, the FDIC-R's Motion for intervention as of right

21   should be denied. *See Patel v. Patel*, 2010 WL 11549879, at *2 (N.D. Ga. Dec. 29, 2010) (denying

22   the FDIC's motion to intervene under Rule 24(a) where plaintiffs alleged direct claims, including

23   under the Exchange Act, and holding the FDIC "d[id] not have in interest in this case"); *Brown v.*

24   *Accellion, Inc.*, 2023 WL 1928210, at *3 (N.D. Cal. Feb. 10, 2023) (denying motion to intervene

25   under Rule 24(a) given "the overall weight of cases . . . have rejected the type of argument[s]"

26   proposed intervenor raised, "the absence of in-circuit authority supporting [the proposed

27   intervenor's] interpretation," and proposed intervenor's "interests would not be impaired or

28   impeded if [it] were unable to intervene").

1    Permission intervention should also be denied because the FDIC-R has no claim or defense

2    that shares a common issue of law or fact with this Action, *see* Fed. R. Civ. P. 24(b)(1)(B), and

3    intervention would result in both delay and prejudice, *see* Fed. R. Civ. P. 24(b)(3).

4         **1.    The FDIC-R Does Not Own Plaintiffs' Direct Claims That Are Based
               on Plaintiffs' Purchases of FRB Securities at Prices Inflated by
5               Defendants' Misstatements and Omissions.**

6         The FDIC-R wrongly argues that it owns Plaintiffs' and the Class's direct claims under the

7    Exchange Act for violations of the federal securities laws against the Individual Defendants and

8    KPMG. But this assertion is wrong as a matter of law: the FDIC-R's own authority, as well as

9    numerous other cases, shows that the FDIC-R cannot usurp such claims. As such, the FDIC-R has

10   no protectable interest warranting intervention as of right, and no common issues exist justifying

11   permissive intervention.

12        Under FIRREA, the FDIC-R succeeds to "all rights, titles, powers, and privileges of the

13   insured depository institution, and of any stockholder, member, accountholder, depositor, officer,

14   or director of such institution with respect to the institution and the assets of the institution." 12

15   U.S.C. § 1821(d)(2)(A)(i) (the "Succession Clause"). Plaintiffs' claims do not fall within the

16   primary ambit of the Succession Clause—applicable to "rights, titles, powers, and privileges" of

17   FRB—and the FDIC-R does not contend otherwise. Instead, the FDIC-R contends that Plaintiffs'

18   claims are swept into the second part of Succession Clause because they are rights of a FRB

19   "stockholder," "with respect to the institution and the assets of the institution." Motion at 12. But

20   Plaintiffs' claims do not fit that description either.

21        The clear majority of courts hold that the residual portion of FIRREA's Succession Clause,

22   referring to stockholder's rights "with respect to the institution and the assets of the institution,"

23   refers only to stockholder claims that are "derivative of injuries to the" institution in receivership.

24   *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015). The Seventh Circuit has explained that

25   § 1821(d)(2)(A)(i) "transfers to the FDIC *only* stockholders' claims . . . that investors . . . would

26   pursue *derivatively* on behalf of the failed bank," as opposed to "every investor's claims of every

27   description." *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014). Courts thus routinely distinguish

28   between derivative claims and direct claims in determining which shareholder claims the FDIC-R

---

PLAINTIFFS' OPPOSITION TO FDIC-R'S RENEWED MOTION TO INTERVENE          9
CASE NO. 3:23-cv-02940-AMO

assumes when a bank fails, and hold that the FDIC-R assumes only derivative claims. *See, e.g.*, *Barnes*, 783 F.3d at 1193 (concluding that, under FIRREA, the FDIC owned shareholders' derivative claims but not shareholders' direct claims). Indeed, as the Seventh Circuit observed in *Levin*: "No federal court has read [FIRREA]" to "transfer to the FDIC all claims held by any stockholder of a failed bank." 763 F.3d at 672. *Pareto v. F.D.I.C.*, on which the FDIC-R relies, applied this critical distinction between direct and derivative claims: the court there noted that plaintiff "did [not] allege he was fraudulently induced to buy or sell stock"—***exactly*** what Plaintiffs allege in this Action—holding only that "[p]laintiff did not have standing to assert [a] ***derivative*** action against the FDIC and the former directors of the bank." 139 F.3d 696, 700-01 (9th Cir. 1998).

The distinction between direct and derivative claims comports with the purposes of FIRREA. Because the FDIC-R is charged with paying claims against FRB, it makes sense that the FDIC-R would succeed to the assets of FRB. The assets of a failed bank include litigation claims that, but for and outside of a receivership, could be brought derivatively by a shareholder. FIRREA cuts off the shareholder's ability to bring a derivative claim on behalf of the failed bank, instead entrusting that responsibility to the FDIC-R. But it makes no sense to transfer to the FDIC-R direct shareholder claims, such as securities fraud claims, that FRB itself could never bring. Such claims are not assets of the failed bank. *See In re Wa. Bancorporation*, 1996 WL 148533, at *4 (D.D.C. Mar. 19, 1996) ("Generally, an 'asset of a failed depository institution' is anything formerly owned by a defunct bank, that the FDIC as receiver can liquidate for the purposes of reimbursing the failed bank's creditors."). FIRREA does not "vaporize claims that otherwise exist after a business failure." *Levin*, 763 F.3d at 671.

Where, as here, a purchaser of stock in a depository institution alleges that the executives of the institution made false representations that induced him to pay artificially inflated prices for the stock, "[t]here is no compensable injury to the corporation" and, consequently, the claims are direct, not derivative, and the Class retains the ability to litigate them, receivership notwithstanding. *Howard v. Haddad*, 916 F.2d 167, 169-70 (4th Cir. 1990). Significantly, ***the FDIC-R does not cite a single case where the FDIC has succeeded to shareholders' direct claims***

*under the federal securities laws*. This is hardly surprising, because courts have consistently held that investors retain the ability to pursue direct claims even after a failed bank enters receivership under FIRREA. *See, e.g.*, *id.* (holding that federal securities fraud claims are direct claims not barred by FIRREA); *Hayes v. Gross*, 982 F.2d 104, 109-10 (3d Cir. 1992) (same); *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, 780 (4th Cir. 2012) (reversing dismissal of a shareholder's direct claim based on the Succession Clause because it "is . . . not a derivative claim"); *Lubin v. Skow*, 382 F. App'x 866, 870-71 (11th Cir. 2010) (Succession Clause only "grants the FDIC ownership over all shareholder derivative claims against the Bank's officers[,] . . . if [a plaintiff] can establish a direct harm . . . FIRREA would not be a bar to standing."); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990) ("To the extent that depositors assert individual, nonderivative fraud claims against the officers, directors, auditors, or attorneys of [a failed bank], they may proceed on equal footing with FDIC."); *Aaron v. Ill. Nat'l Ins. Co.*, 2023 WL 7389034, at *3, 6 (E.D. La. Nov. 8, 2023) (holding that "[FIRREA] transfers the derivative claims of a bank's shareholders to the FDIC, but not the direct claims" including claims brought by the former bank's holding company against its auditors); *see also Abrahamson v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994) (rejecting receiver's argument that it had priority over plaintiffs' direct claims).

Tellingly, many of the cases cited by the FDIC-R involve derivative claims. *See Barnes*, 783 F.3d at 1194 ("plaintiffs . . . seek redress for injuries that first befell the [failed bank], and reached [its holding company] only derivatively as a result of its ownership interest in the [failed bank]" which claims are "decidedly derivative in nature"); *Pareto*, 139 F.3d at 698, 700 (derivative breach of fiduciary duty claim, which court explicitly distinguished from claim that investor was "fraudulently induced to buy or sell stock"); *Am. W. Bank Members v. Utah*, 2023 WL 4108352, at *2-3 (D. Utah June 21, 2023) (derivative claims by shareholders under Takings Clause and similar constitutional provisions). These cases do not support the FDIC-R's attempt to usurp the direct claims asserted here against defendants other than the entity in receivership.

Contrary to the FDIC-R's assertion, Plaintiffs' claims do not "arise solely" (or at all) "from their **status** as stockholders of First Republic." Motion at 12. Nor do these claims seek remedies

for the Defendants' "mismanagement" of the Bank. *See id.* at 14. Rather, Plaintiffs' claims arise from the fact that they and the Class purchased First Republic securities during the Class Period at prices that were artificially inflated by Defendants' fraud. *See Howard*, 916 F.2d at 170 (where, as here, the "essential . . . allegation [is] that the defendants knew of the lack of value [of the failed bank's stock], yet fraudulently represented to [the shareholder] that the bank was in fine shape," and "the measure of [the shareholder's] damages, should he prevail on his Rule 10b–5 claim, is the difference between what he paid and what the stock was worth on the day he paid it," "[t]here is no compensable injury to the corporation . . . and [the shareholder's] claims cannot be said to derive from any claim also possessed by other shareholders" and are therefore direct, not derivative—even if "[the shareholder] and the FDIC are pursuing the same source of assets").[2]

Contrary to the overwhelming authority cited above, the FDIC-R cites only one case that reads the Succession Clause slightly more broadly in support of its unprecedented and sweeping interpretation. However, that case, *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), merely interpreted the Succession Clause, to capture, in addition to derivative claims, one additional category of stockholder claims not at issue here. *Zucker* held that the Succession Clause transfers to the FDIC-R claims "brought by a former bank holding company to recover for its interest in a wholly owned subsidiary bank." *Id.* at 656. There, "the sole injury alleged in the complaint was the Holding Company's loss of its interest in the Bank when the Bank failed." *Id.* at 653. In other words, the holding company's claims required it to prove that "but-for the malfeasance of the [defendants], the assets of the [failed bank] would have been much greater, and that increase in [the failed bank's] assets would [therefore] have inured to the benefit of the Holding Company as the Bank's parent stockholder." *Id.* at 656. That test is not so different from the direct/derivative test. *See Aaron*, 2023 WL 7389034, at *4 ("[w]hile *Zucker* rejects an express distinction between

---

[2] These holdings comport with FIRREA's legislative history, which reflects that Congress expressly rejected a proposal to give the FDIC priority over competing claims asserted by shareholders against the officers and directors of the failed bank, which "would represent fundamentally bad policy." 135 CONG. REC. 18575 (1989) (explaining that giving the FDIC priority would frustrate the purpose of FIRREA because "private plaintiffs would simply no longer bring fraud suits against bank officers and others guilty of wrongdoing").

direct and derivative claims, it does not reject a 'source of the harm' inquiry" and "the critical inquiry is whether the harm . . . allege[d] is distinct from the harm suffered by the bank").[3]

This case is nothing like *Zucker*. FRB had no holding company. Plaintiffs and the Class seek to recover the inflated purchase price that they paid for their shares as a result of Defendants' misstatements and omissions, not the reduced value of FRB as a result of mismanagement. Those are rights of a stock purchaser, and specifically a stock purchaser during a particular period of time, not a stockholder. Not all FRB stockholders are members of the Class. Those who acquired their shares before or after the Class Period, or who sold their shares prior to the alleged corrective disclosures, have no securities fraud claim. *See Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

The fact that Plaintiffs "may seek recovery" from "director and officer insurance policies available to the individual defendants" (Motion at 15) does not support the FDIC-R's intervention. "The mere fact that [Plaintiffs] and the FDIC are pursuing the same source of assets does not transform [Plaintiff's] action to a derivative one" owned by the FDIC-R. *Howard*, 916 F.2d at 170.

*National Union Fire Insurance Company of Pittsburgh, Pa. v. City Savings, F.S.B.*, 28 F.3d 376 (3d Cir. 1994), cited by the FDIC-R (Motion at 15), held that a declaratory judgment action by an insurer against a receiver to rescind an insurance policy was precluded by § 1821(d)(13)(D)(i) because it was an "action seeking determination of rights with respect to[ ] the assets of" the failed bank. 28 F.3d at 383-87. *National Union* specifically relied upon (D)(i)'s preclusion of "action[s]," which, it held, is broader than its preclusion of "claims." *Id*. at 387-88. Similarly, *Zucker* involved one claim by the holding company against its insurer seeking a determination that the holding company's other claims "fell within the coverage." 919 F.3d at 653,

---

[3] Indeed, the *Zucker* court specified that its "ruling is a limited one: it applies only to claims like those before us" where "[t]he claims are brought by a former bank holding company to recover its interest in a wholly owned subsidiary bank (a bank that made up over ninety percent of the holding company's assets)" and cautioned: "***We do not establish any broader principles***, and future claims by holding companies and other shareholders of banks in FDIC receivership will need to be evaluated on their own terms." 919 F.3d  at 656. The FDIC-R inexplicably omits this critical limitation.

657. Here, unlike in *National Union* and *Zucker*, Plaintiffs are not seeking a declaration concerning any insurance policy. That the Individual Defendants may choose to seek coverage under their D&O insurance policies to defend or settle Plaintiffs' claims does not make this an "action seeking determination of rights" under the policies (§ 1821(d)(13)(D)(i)) or an action asserting "rights . . . with respect to" the policies (§ 1821(d)(2)(A)(i)).[4]

Nor, on this record, has the FDIC-R carried its burden of proving that any or all of the D&O insurance policies at issue are an "asset" of FRB. No such finding can be made without reviewing the terms of the policies, which the FDIC-R has not attached to its Motion, and which Plaintiffs have not yet seen. For example, the FDIC-R has not shown that FRB (as opposed to its directors and officers) is a "named insured" under the policies, as was the case in *National Union*, 28 F.3d at 384, and appears to have been the case in *Zucker*, 919 F.3d at 656. Nor has the FDIC-R shown that it has any realistic path to recovery under the relevant policies. Under California law as interpreted by the Ninth Circuit, because the FDIC-R is a successor to FRB, any claim by the FDIC-R against FRB's directors and officers (which, as yet, the FDIC-R has not asserted) may fall within an "insured-versus-insured" exclusion, as are customary in D&O insurance policies. *See Fed. Deposit Ins. Corp. v. BancInsure, Inc.*, 675 F. App'x 666 (9th Cir. 2017).

The FDIC-R also argues that it owns Plaintiffs' claims because FRB could be "potentially liable for the conduct" alleged "under traditional principles of respondeat superior." Motion at 14. The FDIC-R cites no authority for this proposition, or even suggesting that this is relevant to the scope of the Succession Clause. Generally, the FDIC-R succeeds to claims that would ***belong*** to FRB, not claims that could be ***brought against it***. *See Wa. Bancorporation*, 1996 WL 148533, at *5 ("claims . . . *against* [the failed bank]" were not "assets of [the failed bank]; rather, the claims [were] liabilities") (emphasis in original). The FDIC-R position suggests, incorrectly, that it succeeds to Plaintiffs' claims even though it would be impossible for FRB to assert Plaintiffs' securities law claims against itself. Regardless, even if Plaintiffs could have sued FRB, they have not, so FRB is not even "potentially liable" in this case.

---

[4] Plaintiffs' claims against KPMG do not implicate the D&O insurance policies at all.

1    In short, the FDIC-R has come forward with no support for the proposition that they have

2    any right to the Class members' direct securities law claims in this case. Thus, the FDIC-R cannot

3    show that it satisfies the requirements for either intervention as of right or permissive intervention.

4         **2.    This Court Has Jurisdiction Over Plaintiffs' Claims Against the**
          **Individual Defendants and KPMG.**

5

6         The FDIC-R's position that 12 U.S.C. § 1821(d)(13)(D) deprives this court of subject

7    matter jurisdiction is not supported by the statutory text and is contrary to established law.

8    Section 1821(d)(13)(D) strips jurisdiction for two types of claims only:

9         (i)     any claim or action for payment from, or any action seeking a determination of
                  rights with respect to, the assets of any depository institution for which the
10                Corporation has been appointed receiver, including assets which the Corporation
                  may acquire from itself as such receiver; or
11

12        (ii)    any claim relating to any act or omission of such institution or the Corporation as
                  receiver.
13

14   12 U.S.C. § 1821(d)(13)(D)(i), (ii). The FDIC-R argues that this Court is stripped of jurisdiction

15   because Plaintiffs' claims "relat[e] to any act or omission" of FRB. Motion at 9. They do not.

16        The references to "any claim" in subsections (D)(i) and (D)(ii) do not refer to ***any*** claim in

17   ***any*** forum, such as this federal-court claim. Rather, in the context of § 1821 as a whole, it is clear

18   that a "claim" means a claim subject to the FDIC-R's administrative claim process described in

19   the preceding paragraphs of the statute. *See* 12 U.S.C. § 1821(d)(3)-(11). Those are claims by "the

20   depository    institution's    creditors,"    "against    [the]    depository    institution."    12    U.S.C.

21   § 1821(d)(3)(B)(i), (d)(5)(A)(i), (d)(6)(A)(i); *see also id.* (d)(5)(D)(i), (ii), (d)(11)(A). Importantly,

22   subsection (D)(i) strips jurisdiction for "any claim ***or action***" for payment, as well as "***any action***"

23   to determine rights, while subsection (D)(ii) only strips jurisdiction over "any claim" relating to

24   an act or omission. The FDIC-R's argument reads "claim" as inclusive of "action," which ignores

25   this critical difference in the statutory language, and would render much of subsection (D)(i)

26   superfluous. That is not how jurisdiction-stripping provisions are interpreted. To the contrary, "the

27   narrower construction of a jurisdiction-stripping provision is favored over the broader one." *ANA*

28   *Int'l, Inc. v. Way*, 393 F.3d 886, 891 (9th Cir. 2004).

---

The FDIC-R's argument that § 1821(d)(13)(D)(ii) strips federal courts of jurisdiction to hear *any* action "relating to any act or omission" of a failed bank has been "universally" rejected by the federal courts of appeals. *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 920-21 (2d Cir. 2010). As the Second Circuit has explained, this interpretation is "erroneous" and reads (D)(ii) "out of context." *Id.* A federal-court claim against a defendant other than the depository institution in receivership—like the claims asserted in the Complaint—"for its own wrongdoing, not against the depository institution for which the FDIC is receiver . . . is not a claim within the meaning of [§ 1821(d)(13)(D)] and thus is not barred." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1142 (D.C. Cir. 2011); *see also Willner v. Dimon*, 849 F.3d 93, 105-06 (4th Cir. 2017) (concluding that "[i]n FIRREA, the word 'claim' is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process").

Requiring the submission to FDIC-R of claims against third parties that "could not be resolved by the FDIC[-R]" would be "a pointless bureaucratic exercise." *Benson v. JPMorgan Chase Bank, N.A.*, 673 F.3d 1207, 1216 (9th Cir. 2012) (holding that claims against failed bank's successor as successor were barred, but not claims against successor for its own acts) (quoting *Am. Nat'l Ins. Co*., 642 F.3d at 1143). "Whereas FIRREA forces plaintiffs to file claims with the FDIC before suing failed banks in receivership, FIRREA does not extend this protection to persons related to the failed bank, but not themselves in receivership." *Cassese v. Wa. Mut., Inc.*, 743 F. Supp. 2d 148, 157 (E.D.N.Y. 2010).[5]

Consistent with this rule, all of the FIRREA-exhaustion cases cited by the FDIC-R involved claims against the receiver, the depository institution in receivership, and/or its successor-in-interest. *Levin*, 763 F.3d at 669 (derivative breach of fiduciary duty claims by bank holding company of institution in receivership); *Rundgren v. Wa. Mut. Bank, FA*, 760 F.3d 1056, 1059,

---

[5] *Verdi v. FDIC as Receiver for Signature Bank*, 2023 WL 6388225 (C.D. Cal. Sept. 28, 2023), cited in the FDIC-R's proposed motion to dismiss, involved claims that were pled against both Signature Bank (for whom FDIC-R was substituted) and against additional defendants. The Court applied (D)(ii) to dismiss the whole case, not just the claim against Signature Bank. Here, in contrast, FRB is not and has never been a defendant. Also, *Verdi* did not involve federal securities fraud claims, but rather state law claims, including for breach of fiduciary duty.

1063-64 (9th Cir. 2014) (claims by mortgagor-homeowners against institution in receivership, WaMu, and against successor-in-interest, Chase); *Benson*, 673 F.3d at 1208-09, 1215-16 (claims against Chase as the "successor in interest of WaMu" in receivership are subject to exhaustion, while claims against Chase for its "own wrongdoing" do not require exhaustion); *Stamm v. Paul*, 121 F.3d 635, 635-38 (11th Cir. 1997) (counterclaims by mortgagor-homeowners against Resolution Trust Corporation (RTC), which played a role similar to the FDIC for savings and loan associations); *National Union*, 28 F.3d at 379-81 (3d Cir. 1994) (claims by insurers against RTC as receiver); *CEP Emery Tech Invs. LLC v. JPMorgan Chase Bank, N.A.*, 2010 WL 1460263 (N.D. Cal. Apr. 12, 2010) (granting intervention by FDIC in action against Chase as successor to WaMu).

The public notice published by the FDIC-R last year also undermines its present litigation position. That notice was addressed "to creditors and depositors of First Republic Bank" and called for submission of "claims against the Failed Institution," *i.e.* First Republic.[6] The notice did not call for the submission of claims against First Republic's directors and officers, or against its auditor, KPMG—a fact that is flatly inconsistent with the FDIC-R's assertion that such claims are subject to the FDIC-R's administrative claims process.

Nor should Alecta's filing of administrative claims be misconstrued as stripping this Court of jurisdiction over the claims brought in this Action against other parties. Alecta's administrative claims were filed as a protective measure in the event that a potential recovery could be obtained through the FDIC-R's administrative process, while reserving rights. Ex. A at 3; Ex. B at 3. And Alecta's administrative claims were solely against FRB, not the Individual Defendants or KPMG. Ex. A at 1-2; Ex. B at 1-2. This in no way brings the claims properly filed in this case within the ambit of 12 U.S.C. § 1821(d)(13)(D), which would only apply here if Plaintiffs brought claims against FRB. No authority in the FDIC-R's Motion suggests otherwise.

For all these reasons, Plaintiffs' claims in this Action do not require administrative exhaustion, and FIRREA does not strip this Court of jurisdiction.

---

[6] FDIC, "Publication Notice to Creditors and Depositors of First Republic Bank, San Francisco, CA," https://www.fdic.gov/resources/resolutions/bank-failures/failed-bank-list/first-republic-publication-notice-10543.pdf (May 1, 2023).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 3.     Intervention Will Delay this Case and Prejudice Plaintiffs.

Finally, permissive intervention should also be denied because "intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The FDIC-R seeks to indefinitely stay all proceedings in this Action (ECF No. 140), including Defendants' motion to dismiss, pending the outcome of the FDIC-R's proposed motion to dismiss. The effect of the FDIC-R's proposal would be to extend the PSLRA's automatic stay of discovery for two seriatim motions to dismiss—first by the FDIC-R, and then by Defendants—rather than a single round of briefing to completed by August 2024.

Given the massive losses suffered by Plaintiffs and the Class and the limited assets of the Individual Defendants from which Plaintiffs seek to recover, it is important for the substantive merits of Defendants' motions to dismiss to be litigated promptly and for the case to move into discovery. The FDIC-R's unsupported efforts to derail that process will unnecessarily delay the Action and prejudice Plaintiffs.

## IV.    CONCLUSION

For the reasons stated herein, the Court should deny the Motion in its entirety.

Dated: April 12, 2024

Respectfully submitted,

*/s/ James A. Harrod*

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
(jonathanu@blbglaw.com)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3470

JAMES A. HARROD (admitted *pro hac vice*)
(jim.harrod@blbglaw.com)
SHANE D. AVIDAN (admitted *pro hac vice*)
(shane.avidan@blbglaw.com)
SARAH K. SCHMIDT (admitted *pro hac vice*)
(sarah.schmidt@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Fax: (212) 554-1444

**KESSLER TOPAZ MELTZER
    & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
(jjoost@ktmc.com)
STACEY M. KAPLAN (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax: (415) 400-3001

-and-

Sharan Nirmul*
(snirmul@ktmc.com)
Nathan Hasiuk (admitted *pro hac vice*)
(nhasiuk@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Tel:    (610) 667-7706
Fax:    (610) 667-7056

*Pro hac vice* application forthcoming

*Counsel for Lead Plaintiff Alecta Tjänstepension
Ömsesidigt and additional named Plaintiff Neil
Fairman and Lead Counsel for the Class*