UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDRA KUSEN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>JAMES H. HERBERT, II, et al.,<br><br>　　　　Defendants. | Case No. 23-cv-02940-AMO<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 182, 184, 186 |

This is a putative securities class action regarding statements made by officers and the auditor for a now-defunct bank. The motions to dismiss from Defendants James H. Herbert, II, Neal Holland, Michael J. Roffler, Michael D. Selfridge, Olga Tsokova ("Individual Defendants," motion at ECF 186); KPMG, LLP ("KPMG," motion at ECF 182); and Federal Deposit Insurance Corporation ("FDIC," motion at ECF 184) were heard before this Court on April 17, 2025. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** FDIC's motion to dismiss for the reasons stated below and **TERMINATES** the remaining motions as moot.

**I.　BACKGROUND**

Non-party First Republic Bank ("FRB") was a San Francisco-based bank that primarily served individuals, with a particular focus on residential mortgage loans. *See* FAC (ECF 123) ¶¶ 2, 19, 87. Lead Plaintiff Alecta Tjänstepension Ömsesidigt ("Alecta") is a Swedish pension fund that purchased FRB stock during the relevant period. FAC ¶ 45. Alecta was appointed Lead Plaintiff by the Court on November 24, 2023. ECF 103. Additional named Plaintiff Neil Fairman ("Fairman") is an investor who purchased FRB stock during the relevant period. FAC ¶ 46. The

Individual Defendants were FRB officers and/or directors at various times during the relevant period. Defendant KPMG LLP ("KPMG") was FRB's auditor during the relevant period. FAC ¶ 55.

### A. Plaintiffs' Allegations of Securities Fraud

In the period leading up to its demise, FRB experienced several years of rapid growth, driven primarily by its acquisition of "uninsured" deposits – i.e., deposits over the limit for FDIC insurance. FAC ¶¶ 85, 103-09. At the end of 2021, 75% of FRB's deposits were uninsured, roughly twice the median of its peers. FAC ¶110. The Individual Defendants repeatedly assured investors that the Bank's deposit growth was driven by its "service-focused culture" and that, as a result, FRB's deposit base was "safe," "stable," and "well-diversified." *See* FAC ¶¶ 122, 439-41, 611. The Individual Defendants' statements concealed the risk of deposit outflows through an undisclosed reliance on rate incentives and exceptions. FAC ¶¶ 131-34.

FRB's Interest-Rate/Market Risk Management Framework called for a "neutral balance sheet," with a "balanced match" of assets and liabilities according to their duration and interest rates. FAC ¶¶ 220-23. Throughout the Class Period, FRB violated its policy framework by "mismatching" the combination of assets and liabilities and failing to publicly disclose such mismatch. FAC ¶¶ 14, 30, 40, 134, 170, 335, 357, 431. In addition, FRB manipulated its deposit outflow models, including by improperly recategorizing tens of billions of deposits from short-term to long-term. FAC ¶¶ 200-06.

The Individual Defendants misclassified assets in contravention of Generally Accepted Accounting Principles ("GAAP"), falsely assuring investors about the strength of the Bank's liquidity and risk management practices. FAC ¶ 114. KPMG, who served as FRB's independent auditor and knew of FRB's liquidity and interest-rate risks through its receipt of regulatory documents, also falsely represented that FRB's financial statements complied with GAAP in its Auditor Report submitted in support of FRB's regulatory filings. FAC ¶¶ 643, 547-49. KPMG additionally falsely certified that its audit complied with certain accounting standards. FAC ¶¶ 352-64.

Following the collapse of Silicon Valley Bank on March 10, 2023, depositors withdrew approximately $25 billion, or roughly 16.8% of FRB's total deposits, on a single day. FAC ¶ 367. The Individual Defendants failed to report these massive deposit outflows; instead, they issued a press release assuring that FRB's deposit base was still "strong and very-well diversified" and reiterating the "safety and stability" of FRB's liquidity positions. FAC ¶ 373-85.

On May 1, 2023, following several public disclosures and decreases in stock price, the California Department of Financial Protection and Innovation closed FRB and appointed the FDIC as Receiver pursuant to Title 12 U.S.C. § 1821(c)(5). FAC ¶¶ 690-92; Barter Decl. ¶ 3 & Ex. A, May 22, 2024. The FDIC accepted appointment as Receiver for First Republic on the same date. *Id.*; *see also* FAC ¶¶ 38, 59, 419. By operation of law, the FDIC-R succeeded to "all rights, titles, powers, and privileges" of First Republic, and of "any stockholder, member, accountholder, depositor, officer, or director of [First Republic] with respect to [First Republic] and the assets of [First Republic]." 12 U.S.C. § 1821(d)(2)(A)(i).

As part of the mandatory Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") claims process, the FDIC-R established September 5, 2023, as First Republic's "Claims Bar Date," the deadline for filing any administrative claims. Barter Decl. ¶ 4. The FDIC-R provided notice of the Claims Bar Date to creditors and depositors of First Republic as required by law. *Id.* ¶¶ 5-6 & Ex. B (publication notices issued on May 8, 2023, on June 9, 2023, and on July 7, 2023, in the *Boston Globe*, the *Los Angeles Times*, the *New York Times*, the *San Francisco Chronicle*, and the *Wall Street Journal*.).

**B.     Procedural History**

This lawsuit was filed by Alexandra Kusen on June 14, 2023, after FRB failed and the FDIC's appointment as receiver. Compl. (ECF 1); Barter Decl. ¶¶ 3, 7, 9, 12. Kusen's original complaint sought relief on behalf of a proposed class of stockholders against certain former directors and officers of First Republic and First Republic's outside auditor, KPMG, LLP, alleging violations of federal securities laws. *See generally* Compl. The claims in Kusen's original complaint relate to alleged false statements and misrepresentations by the Bank, by the director and officer defendants in their roles as directors and officers of the Bank, and by KPMG

3

1    concerning the Bank's false statements and misrepresentations. Kusen named neither the Bank
2    nor the FDIC-R in the Complaint, but Kusen's claims are based upon alleged false or misleading
3    statements or omissions by the Bank, the Bank's directors and officers, and KPMG in the Bank's
4    press releases, the Bank's public securities filings, the Bank's earnings calls, and the Bank's
5    public investor events. Compl. ¶¶ 35-48, 51-65, 69, 71-73, 75-81, 85-86, 88-89. Kusen's claims
6    are also based on allegedly false or misleading statements by FRB directors and officers at public
7    conferences concerning the Bank, the Bank's assets, and the Bank's financial condition. Compl.
8    ¶¶ 49-50, 66-67, 74. Kusen's claim against KPMG is likewise premised upon statements made in
9    the Bank's public securities filings that concerned the Bank's allegedly false or misleading
10   statements about its financial condition and its assets.[1] Compl. ¶¶ 40, 57, 81.

11   On September 5, 2023, after this lawsuit was filed, Lead Plaintiff, Alecta, filed an
12   individual administrative claim against FRB "aris[ing] under Sections 10(b) and 20(a) of the
13   Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated thereunder." Barter Decl. ¶ 9.
14   On the same date, Alecta filed with the FDIC-R a second administrative claim against FRB on
15   behalf of a putative class of investors in FRB and described the claim as "aris[ing] under Sections
16   10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5 promulgated
17   thereunder." Barter Decl. ¶ 10. Alecta's second administrative claim on behalf of a putative class
18   was substantively identical to its individual claim. Barter Decl. ¶ 10. On September 7, 2023, the
19   FDIC-R administratively closed Alecta's second administrative claim on behalf of a purported
20   class as duplicative of its first-filed, individual administrative claim. Barter Decl. ¶ 10. On March
21   1, 2024, the FDIC-R issued a notice of disallowance of Alecta's individual administrative claim.

---

[1] Further, Kusen's complaint was substantively identical to the City of Hollywood Police Officers' Retirement System complaint against First Republic, with the exception that Kusen omitted First Republic and the FDIC-R as defendants. *Compare* Compl. ¶¶ 1-10 (overview and summary of the claims); *id.* ¶¶ 24-33 (naming Herbert, Erkan, Roffler, Tsokova, Selfridge, Holland, and KPMG as defendants, but not First Republic); *id.* ¶¶ 34-67, 69-81, 83-89, 91-102 (substantive allegations); *id.* ¶¶ 120-27 (claims under sections 10(B) and 20(A) of the Exchange Act and SEC Rule 10B-5); *with* Compl. ¶¶ 1-10 (substantively identical overview and summary of the claims), *City of Hollywood Police Officers' Retirement System v. First Republic Bank*, Case No. 3:23-cv-1993-HSG (N.D. Cal. Apr. 24, 2023), at ECF 1; *id.* ¶¶ 16-25 (naming First Republic as a defendant in addition to the defendants named in Kusen's complaint); *id.* ¶¶ 27-60, 62-74, 76-82, 84-95 (identical substantive allegations); *id.* ¶¶ 109-16 (claims under sections 10(B) and 20(A) of the Exchange Act and SEC Rule 10B-5).

Barter Decl. ¶ 11 & Ex. D.  Neither Kusen nor Plaintiff Neil Fairman submitted any administrative claim to the FDIC-R.  Barter Decl. ¶¶ 7, 9, 12.

On February 13, 2024, before Alecta's administrative claim was disallowed, Alecta filed an Amended Complaint in this case.  ECF 123 ("FAC").  The Amended Complaint, on behalf of a proposed class of stockholders against certain former directors and officers of First Republic and First Republic's outside auditor, KPMG, alleges violations of federal securities laws.  *Id.*  Like Kusen's original Complaint, the claims asserted in the Amended Complaint relate to alleged false statements and misrepresentations by the Bank and by the Defendants in their roles as directors and officers of the Bank, and by KPMG concerning FRB's false statements and misrepresentations.  Plaintiffs specifically allege that each of the Individual Defendants named in the FAC "issued public statements on behalf of [the Bank], including the alleged materially false or misleading statements identified."  *See* FAC ¶ 47 (Herbert); ¶ 48 (Erkan); ¶ 49 (Roffler); ¶ 50 (Tsokova); ¶ 51 (Selfridge); ¶ 52 (Holland); *see also id.* ¶ 54 (alleging former directors and officers of the Bank "each possessed the power and authority to control, and did in fact control, [the Bank's] public statements, including its [securities] filings, press releases, and presentations to analysts and investors.").  Though Plaintiffs did not name either the Bank or the FDIC-R as defendants in the FAC, Plaintiffs' claims are based upon alleged false or misleading statements or omissions by the Bank, acting through the individual defendants, in the Bank's public securities filings, the Bank's earnings calls, and in the Bank's press releases, as well as allegedly false or misleading statements by Bank directors and officers at public conferences or to CNBC concerning the Bank, the Bank's assets, and the Bank's financial condition.  Plaintiffs' claim against KPMG is likewise premised upon statements made in the Bank's public securities filings that concerned the Bank's allegedly false or misleading statements about its financial condition and its assets.  FAC ¶ 547.

**II.   DISCUSSION**

As noted at the outset, all Defendants move for dismissal, but the Court focuses here on FDIC's motion because it disposes of the case.  FDIC moves to dismiss on two grounds: (1) Rule 12(b)(1) for lack of subject matter jurisdiction on the basis that Plaintiffs failed to administratively

exhaust their claims with the FDIC-R as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), *see* 12 U.S.C. § 1821(d)(6)(A), (d)(13)(D); and (2) Rule 12(b)(6) for failure to state a claim on the basis that Plaintiffs' securities law claims are claims of stockholders of FRB, claims which now belong to FDIC-R as the real-party-in-interest and cannot be prosecuted by these Plaintiffs under Federal Rule of Civil Procedure 17(a). The Court begins by examining whether it possesses subject matter jurisdiction. It does not reach FDIC-R's second argument because it concludes it lacks subject matter jurisdiction over the action.

### A. Legal Standard

An attack on subject matter jurisdiction "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction[,]" while a factual attack "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"). The plaintiff bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

### B. Administrative Exhaustion

FIRREA authorizes the FDIC to "act as receiver or conservator of a failed institution for the protection of depositors and creditors." *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1154 (9th Cir.

1997). Once the FDIC has assumed receivership of a bank, FIRREA requires claimants to exhaust administrative remedies before filing certain claims in court. *Benson v. JPMorgan Chase Bank, NA*, 673 F.3d 1207, 1211 (9th Cir. 2012). As the Ninth Circuit has recognized, "FIRREA strips courts of jurisdiction over claims that have not been exhausted through [the administrative claims] process." *Rundgren v. Wash. Mut. Bank, FA*, 760 F.3d 1056, 1060-61 (9th Cir. 2014). The statute itself outlines the administrative claims process that each claimant must exhaust before filing in court. 12 U.S.C. § 1821(d)(6). FIRREA provides:

> (D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed," a circumstance that no party contends applies here. *McCarthy v. F.D.I.C.*, 348 F.3d 1075, 1078 (9th Cir. 2003) (citing *Sharpe*, 126 F.3d at 1156).

FDIC argues that the jurisdictional bar of subsection (ii) applies in this case. *See, e.g.*, Reply at 2. "For FIRREA's jurisdictional bar in clause (ii) of 12 U.S.C. § 1821(d)(13)(D) to apply, three elements must be met. There must be (1) a 'claim' that (2) relates to 'any act or omission' of (3) 'an institution for which the [FDIC] has been appointed receiver.' " *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 538 (9th Cir. 2019) (quoting *Rundgren*, 760 F.3d at 1061). These three elements are satisfied here, requiring administrative exhaustion before the Court can exercise jurisdiction.

For purposes of FIRREA, a statute that does not expressly define the term "claim," the Ninth Circuit defines the term "claim" as "a cause of action or the aggregate of facts that gives rise to a right to payment or an equitable remedy." *Rundgren*, 760 F.3d at 1061 (citing Black's Law Dictionary 281-82 (9th ed. 2009)); *see also Shaw*, 946 F.3d at 538 (concluding that a plaintiff's

1  Truth-In-Lending Act claim was a "claim" for purposes of FIRREA because it was "a cause of
2  action . . . that gives rise to a right to payment or an equitable remedy."). District courts are to
3  interpret FIRREA's "any claim" provision expansively to bar "judicial review of any non-
4  exhausted claim, monetary or nonmonetary, which is 'susceptible of resolution through the claims
5  procedure.' " *Henderson v. Bank of New England*, 986 F.2d 319, 321 (9th Cir. 1993) (quoting
6  *Rosa v. Resol. Tr. Corp.*, 938 F.2d 383, 393 (3d Cir. 1991)). "The statute contains no provision
7  granting federal jurisdiction to claims filed after a receiver is appointed but before administrative
8  exhaustion. . . . A claimant must therefore first complete the claims process before seeking
9  judicial review." *Henderson*, 986 F.2d at 320-21 (citation omitted).

10  Here, Plaintiffs assert that the Individual Defendants and KPMG made false and
11  misleading statements giving rise to causes of action for securities fraud. Specifically, Plaintiffs
12  describe the misrepresentations underpinning their claims by pointing to statements in FRB's
13  press releases, in FRB's securities filings, and in FRB's earnings calls. *See generally* FAC.
14  Plaintiffs aver that these claims are not targeted at FRB, that the claims focus on the malfeasance
15  of the Individual Defendants as officers of the Bank and KPMG. Opp. at 17-18. However,
16  FIRREA "does not make any distinction based on the identity of the party from whom relief is
17  sought" and instead focuses on the facts underlying a cause of action to determine whether it is a
18  claim that relates to an act or omission of an institution in receivership. *Benson*, 673 F.3d at 1212.
19  Further, while some of the Defendants named in the FAC might also be liable for some of the
20  alleged misrepresentations, such liability arises in addition to, rather than in lieu of, FRB's
21  primary liability. *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 705 (9th Cir. 2021)
22  (holding that defendant corporation, among possible others, made allegedly false statements in the
23  corporation's securities filings); *see also In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471,
24  475 (9th Cir. 2015) (quoting *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87,
25  101 (2d Cir. 2001)) ("a corporation 'can only act through its employees and agents.' "). Plaintiffs'
26  allegations make plain that they aim to hold Defendants liable for the statements issued by and on
27  behalf of FRB. *See, e.g.*, FAC ¶¶ 47-52 (recounting public statements made by Defendants on
28  behalf of FRB). As in *Shaw*, Plaintiffs' claims here are based on the misconduct of the Bank

8

before it was placed into FDIC receivership. *See id.*, 946 F.3d at 540 (finding TILA claim against the then-current holder of the loan was still subject to administrative exhaustion). The causes of action here thus fall within FIRREA's definition of "claim" because those claims are based upon First Republic's acts or omissions. *See* 12 U.S.C. § 1821(d)(13)(D)(ii); *Shaw*, 946 F.3d at 538-41.

Further, Kusen filed this case on June 14, 2023, after the appointment of the FDIC-R. Because Kusen's claims in the original complaint and the Plaintiffs' claims in the FAC all relate to acts or omissions of FRB, Kusen and the other Plaintiffs were required to exhaust their claims administratively with the FDIC-R before seeking judicial review. 12 U.S.C. § 1821(d)(6)(A), (d)(13)(D). Kusen never filed any administrative claim with the FDIC-R, so she did not exhaust administrative remedies with the FDIC-R prior to filing suit. Barter Decl. ¶¶ 7, 9, 12. Accordingly, this Court lacked jurisdiction over this suit at the time it was filed. *Cf. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) ("Subject matter jurisdiction must exist as of the time the action is commenced. . . . If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.' " (citation omitted)).

Even if the Court were to look to the Alecta's FAC to assess subject matter jurisdiction, the result would not change because the administrative process had not been exhausted. Alecta filed its amended complaint on February 13, 2024, before the FDIC-R disallowed its administrative claim on March 1, 2024. Barter Decl. ¶ 11. The Court therefore also lacks jurisdiction over Alecta's claims. *See Intercontinental Travel Mktg., Inc. v. F.D.I.C.*, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process."). Plaintiff Fairman likewise cannot overcome the Court's lack of jurisdiction because he failed to exhaust administrative remedies with the FDIC-R. Barter Decl. ¶¶ 7, 9, 12. "[B]ecause plaintiffs did not exhaust administrative remedies, their claims are jurisdictionally barred by FIRREA." *Benson*, 673 F.3d at 1215.

Plaintiffs additionally argue that their securities fraud claims are not "susceptible of resolution through the claims procedure." *See* Opp. at 18-19. This argument is belied by Alecta's conduct – Alecta filed an administrative claim with the FDIC-R, which the FDIC-R disallowed on

9

March 1, 2024. Barter Decl. ¶ 11. Alecta's tender of the claim to FDIC-R contradicts its argument that it was not obligated to fulfill the administrative prerequisites or that it saw them as completely futile. Alecta's conduct demonstrates that it knew of the opportunity to tender a claim to FDIC-R for determination. Indeed, the Ninth Circuit held that the opportunity for the FDIC to " 'determine,' 'allow,' or 'disallow,' " a plaintiff's cause of action based on the underlying facts means that the plaintiff "has a 'claim' under FIRREA." *Shaw*, 946 F.3d at 540 (internal citation omitted) (stating further that, even if the FDIC did not allow the plaintiff's claim, "he would still have the right to seek review of that decision before a district court."). Because Plaintiffs' claims all relate to acts or omissions of FRB, and because FDIC-R could have determined whether to allow or disallow the claims, Plaintiffs' claims were subject to administrative exhaustion with the FDIC-R prior to judicial review. 12 U.S.C. § 1821(d)(6)(A), (d)(13)(D); *Henderson*, 986 F.2d at 320-21; *Benson*, 673 F.3d at 1211; *Verdi v. F.D.I.C.*, No. 8:23-cv-1206-JVS (KESx), 2023 WL 6388225, at *6 (C.D. Cal. Sept. 28, 2023) ("Where the claims relate to an act or omission of an institution under the receivership of the FDIC, the court lacks jurisdiction prior to administrative exhaustion – no matter the defendant."). Because none of the Plaintiffs administratively exhausted their claims prior to filing this lawsuit, this Court lacks jurisdiction over the claims, and the Court therefore GRANTS FDIC's motion to dismiss for lack of subject matter jurisdiction.

### C. Claim of Statutory and Constitutional Violation

Resisting the jurisdictional hurdle of administrative exhaustion, Plaintiffs assert that FIRREA's Claims Process conflicts with the PSLRA and the Seventh Amendment. Opp. (ECF 190) at 22-25. Plaintiffs' arguments in this regard each fail.

With respect to the PSLRA, Plaintiffs contend that the Claims Process conflicts with the PSLRA's procedures for selection of a lead plaintiff, 15 U.S.C. § 78u-4(a)(3), but those procedures only apply only to private securities claims brought as putative class actions. 15 U.S.C. § 78u-4(a)(1). Though Plaintiffs challenge the application of the Claims Process to securities class actions (*see* Opp. at 23-24), they do not dispute that FIRREA does not permit class claims and instead requires each claimant to exhaust individually. *Michels v. RTC*, Case No. 4-93-cv-1167, 1994 WL 242162, at *1-2 (D. Minn. Apr. 13, 1994) ("Although the court recognizes that

requiring each class member to exhaust FIRREA claim procedures may not be the most convenient or efficient method of resolving the parties' dispute, total exhaustion is required under [12 U.S.C. § 1821]."). Quite simply, no member of a purported class may exhaust the FIRREA claims process on behalf of another member of that purported class without actual authority to act on behalf of those other class members. *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261, 269-70 (E.D.N.Y. 2010) (concluding that "Rule 23 does not provide a certified class plaintiff with the power to file an administrative claim [to exhaust the FIRREA claims process] on behalf of other class members"); *Holman v. Downey Sav. & Loan Ass'n*, No. 09-cv-3121-DMG (AGRx), 2010 WL 11597286, at *8 (C.D. Cal. Apr. 21, 2010) (finding that the court lacked subject matter jurisdiction over putative class claims despite the plaintiff's attempt to file a "class claim" in the FIRREA claims process).

With respect to the Seventh Amendment, Plaintiffs argue that the Claims Process conflicts with the constitutional guarantee of a jury trial for legal claims akin to common law fraud. Under the Seventh Amendment, the right to a jury trial in an Article III court must be preserved for claims that are legal, as opposed to equitable, in nature. *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). But the Claims Process does not conflict with such right because it preserves a claimant's right to have a jury determine the facts with respect to its claims. Under FIRREA, the FDIC-R is empowered to "determine" whether to "allow" or "disallow" administrative claims submitted through the Claims Process. 12 U.S.C. § 1821(d)(3), (d)(5). Of course, if the Receiver disallows a claim in whole or in part, the claimant may file suit in federal court on its claim (to the extent of any disallowance), 12 U.S.C. § 1821(d)(6)(A), and the claimant's right to a jury trial is, thus, preserved.

The Plaintiffs describe the Claims Process as "administrative adjudication," but the FDIC-R's role in the Claims Process does not rise to the level of "administrative adjudication" because the Receiver does not make findings of fact or issue binding judgments with respect to any submitted claim – it only "determines" whether to "allow" or "disallow" the claim. *Compare* 12 U.S.C. § 1821(d)(3), (d)(5) (empowering the FDIC-R to determine claims, but not to find facts or issue binding judgments), *with Coit Independence Joint Venture v. Federal Savings and Loan*

11

*Insurance Corp.*, 489 U.S. 561, 586 (1989) (noting that the regulations that existed prior to FIRREA purported to grant the agency, as receiver, "adjudicatory authority . . . to make binding findings of fact and conclusions of law" subject only to review under the Administrative Procedure Act). The Claims Process does not suffer from the same shortcomings identified in *Coit*. To the contrary, the Claims Process specifically addresses the infirmities identified in *Coit* because the Receiver does not make findings of fact or issue binding judgments, *id.* § 1821(d)(3), (d)(5), and the statute sets a reasonable time limit for the Claims Process, *id.* § 1821(d)(5)-(6).

The Claims Process conflicts with neither the procedural provisions of the PSLRA nor the Seventh Amendment. Plaintiffs' assertion of constitutional infirmity does not preclude dismissal here.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** FDIC's motion to dismiss for lack of subject matter jurisdiction. The Court does not reach the remaining motions to dismiss and **TERMINATES** them as moot. The action is **DISMISSED** with prejudice and the clerk is instructed to close the file.

**IT IS SO ORDERED.**

Dated: June 9, 2025

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**